The Honorable Barbara J. Rothstein

1
2
3
4
5
          **UNITED STATES DISTRICT COURT**
6
          **WESTERN DISTRICT OF WASHINGTON**

**MARLI BROWN** and **LACEY SMITH**,
7
         *Plaintiffs*,
8
9
    v.                      No. 2:22-cv-00668-BJR

10
**ALASKA AIRLINES, INC.**, and         **AMENDED COMPLAINT**
**ASSOCIATION OF FLIGHT**
11
**ATTENDANTS-CWA, AFL-CIO**,      JURY DEMANDED
12
         *Defendants*.
13

14       Plaintiffs Marli Brown and Lacey Smith, by and through counsel, and for their Amended

15  Complaint against Defendants Alaska Airlines, Inc. ("Alaska Airlines" or "the Airline") and the

16  Association of Flight Attendants-CWA, AFL-CIO ("AFA" or "the Union"), hereby state as

17  follows:

18                     **INTRODUCTION**

19  1.  Plaintiffs Marli Brown and Lacey Smith were exemplary flight attendants for Alaska

20      Airlines. Yet when their faith compelled them independently to ask a question about the

21      Airline's support for federal legislation that would remove protections for religious

22      employees and women in the workplace, Alaska Airlines fired them. To make matters

23      worse, their Union not only failed to vigorously represent and defend Marli and Lacey

24      against the Airline's religious discrimination but also discriminated against them because

25      of their religious beliefs and actively undermined their ability to assert their federal and

26      state protections against such discrimination.

27

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

2. On February 25, 2021, Alaska Airlines posted an article about its support for the Equality Act to an internal employee message board and solicited employee comments. The Equality Act is proposed legislation that would add "sexual orientation and gender identity" as protected classes to a variety of federal statutes and would curtail the applicability of the Religious Freedom Restoration Act.

3. In response, Marli and Lacey felt compelled by their Christian faith to post one comment each, asking about the impact of the Equality Act on civil rights for religion and women in the workplace.

4. Alaska Airlines responded to Marli and Lacey's posts by immediately removing Marli and Lacey from their flight schedules, terminating their employment, and disparaging their religious expression and beliefs as "discriminatory," "hateful," and "offensive."

5. When Marli and Lacey—both union members—faced termination because of their religious practices and beliefs, AFA failed to effectively represent them, ignoring civil rights laws prohibiting both employers and unions from discriminating on the basis of religion.

6. Alaska Airlines' treatment of Marli and Lacey and its various public statements show that it does not tolerate employees who hold biblically-based, traditional religious beliefs on issues of sexual morality. Countless people of faith consider gender identity and sexual orientation to be moral issues and the Supreme Court recognized that many people of faith hold beliefs about gender identity and sexual orientation "based on decent and honorable religious or philosophical premises," *Obergefell v. Hodges*, 576 U.S. 644, 672 (2015), yet according to the Airline, "Defining gender identity or sexual orientation as a moral issue" is "a discriminatory statement" that justifies termination.

7. A corporation and employee union may actively promote and support social and political causes, but in doing so they may not discriminate against employees who are members of a federally protected class. To put a finer point on it, federal law prohibits corporations like Alaska Airlines and unions like the AFA from discriminating against employees because

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

of their religion, which includes all aspects of religious observance and practice, as well as belief.

8. Despite Alaska Airlines' claimed commitment to an inclusive culture and its frequent invitations to employees to dialogue and express a diversity of perspectives, Alaska Airlines created a work environment that is hostile toward religion, and AFA reinforced that company culture. Alaska Airlines and AFA cannot wield their social advocacy as a sword to unlawfully discriminate against religious employees and instead must remain mindful of their legal obligation to "do the right thing" towards all employees, including religious employees. The Court must hold Alaska Airlines and the AFA accountable for their discrimination.

## JURISDICTION AND VENUE

9. This civil rights action raises federal claims under Section 706(f)(1) and (3) and (g) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1) and (3) and (g), and state claims under Washington's Law Against Discrimination, Wash. Rev. Code Ch. 49.60 and Oregon's Unlawful Discrimination in Employment provisions, Or. Rev. Stat. § 659A.030.

10. The Court has original jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1337, and 1343.

11. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12. The Court has authority to award the requested monetary relief pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 2000e-5(g); the requested equitable relief pursuant to 28 U.S.C. §§ 2001-02 and 42 U.S.C. § 2000e-5(g); and costs and attorneys' fees under 42 U.S.C. § 2000e-5(k).

13. The Court also may award monetary and equitable relief and attorneys' fees pursuant to Wash. Rev. Code § 49.60.030(2) and Or. Rev. Stat. § 659A.885.

14. Venue lies in this district under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because Defendants reside in this district, Alaska Airlines has its principal office in this district, and the unlawful employment practices alleged herein occurred in the district.

15. Plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC") and received Notices of Right to Sue dated March 11, 2022. Plaintiffs filed their Original Complaint (Dkt. No. 1) within 90 days of receipt of said notices. *See* Ex. 1, Marli's Notice of Right to Sue Alaska Airlines; Ex. 2, Marli's Notice of Right to Sue AFA; Ex. 3, Lacey's Notice of Right to Sue Alaska Airlines; Ex. 4, Lacey's Notice of Right to Sue AFA.

16. Plaintiff Marli Brown filed her charges with the EEOC and the Washington State Human Rights Commission. *See* Ex. 5, Marli's Notification & Acknowledgement of Dual-Filed Charge against Alaska Airlines; Ex. 6, Marli's Notification & Acknowledgement of Dual-Filed Charge against AFA.

17. Plaintiff Lacey Smith filed her charges with the EEOC and the Washington State Human Rights Commission. *See* Ex. 7, Lacey's Notification & Acknowledgement of Dual-Filed Charge against Alaska Airlines; Ex. 8, Lacey's Notification & Acknowledgement of Dual-Filed Charge against AFA.

**PARTIES**

18. Plaintiff Marli Brown is a Christian female who worked as a flight attendant for Alaska Airlines and was a member of AFA. Marli was at all times material to this action a resident of King County, Washington.

19. Plaintiff Lacey Smith is a Christian female who worked as a flight attendant for Alaska Airlines and was a member of AFA. Lacey was at all times material to this action a resident of Multnomah County, Oregon.

20. Defendant Alaska Airlines, Inc. is a subsidiary of Alaska Air Group, Inc., a Delaware corporation with its principal place of business in Seattle, Washington. Alaska Airlines maintains its corporate headquarters at 19300 International Blvd., Seattle, WA 98188.

21. At all relevant times, Defendant Alaska Airlines has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g), and (h).

22. Alaska Airlines is an employer under Wash. Rev. Code § 49.60.040(11).

23. Alaska Airlines is an employer under Or. Rev. Stat. § 659A.001(4)(a).

24. At all relevant times, Alaska Airlines had more than 500 employees.

25. Defendant AFA is a labor organization located at 501 3rd Street NW, Washington, DC 20001.

26. At all relevant times, Defendant AFA has continuously been a labor organization engaged in an industry affecting commerce within the meaning of Sections 701(d), (e), (g) and (h) of Title VII, 42 U.S.C. § 2000e-(d), (e), (g), and (h).

27. Under the Railway Labor Act, AFA is the certified representative for the purpose of collective bargaining of Alaska Airlines' flight attendants.

28. At all relevant times, AFA has had more than 15 members.

29. AFA is a labor organization subject to Washington's Law Against Discrimination because it "exists for the purpose, in whole or in part, of dealing with employers concerning grievances or terms or conditions of employment, or for other mutual aid or protection in connection with employment." Wash. Rev. Code § 49.60.040(16).

30. AFA is a labor organization under Or. Rev. Stat. § 659A.001(7) because it is an "organization which is constituted for the purpose, in whole or in part, of collective bargaining or in dealing with employers concerning grievances, terms or conditions of employment or of other mutual aid or protection in connection with employees."

31. AFA has members at nineteen different airlines. Within each airline, the union has a Master Executive Council ("MEC"), made up of Local Executive Councils ("LECs"). The MEC is responsible for coordinating the activities of AFA across an entire airline.

32. The AFA council to which Alaska Airlines flight attendants belong is known as "AFA Alaska." AFA Alaska includes LECs at Alaska Airlines' hubs in Seattle and Portland, as

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

well as four other Alaska Airlines hubs. Each LEC President sits on the AFA Alaska MEC as the voting member for the members of the Local Council that they represent.

33. AFA Alaska is the local or subordinate body through which flight attendants at Alaska Airlines may enjoy membership or become affiliated with AFA within the meaning of 42 U.S.C. § 2000e-(e)(4)(2).

34. The Master Executive Council for AFA Alaska maintains its office at 18000 International Blvd., Seattle, WA 98188.

## FACTUAL BACKGROUND

### Alaska Airlines' History and Culture

35. Alaska Airlines had a long history of respect and tolerance for diverse religious beliefs among its employees and customers.

36. In 1949 and 1950, Alaska Airlines' crews flew more than 430 flights from Aden, Yemen to Tel Aviv, airlifting more than 49,000 Yemenite Jews to the new nation of Israel.[1]

37. For many years, the Airline placed "prayer cards" on passengers' meal trays. Each card contained a picturesque landscape and a quote from a psalm in the Old Testament. Alaska Airlines was known for these comforting prayer cards, and flight attendants frequently heard passengers' appreciation of the cards.[2]

38. Alaska Airlines' practice of providing prayer cards ended in 2012.

39. The removal of prayer cards was an early indication of the coming cultural shift at Alaska Airlines from one that is welcoming of employees with religious beliefs to its current culture of hostility toward religion.

40. When Alaska Air Group acquired Virgin America, Inc. in 2016, flight attendants noticed a cultural change at the Airline, including lax enforcement of the dress code, the use and

---

[1] Alaska Airlines, Inc., "Operation Magic Carpet," *available at* https://www.alaskaair.com/content/about-us/history/magic-carpet; Caitlin Goettler, "From the archives: How Alaska Airlines evacuated 49,000 Yemenite Jews to Israel 'on the wings of eagles,'" Alaska Airlines, Inc., Sept. 22, 2017, *available at* https://news.alaskaair.com/community/on-eagles-wings/.

[2] Melissa Allison, "Alaska Airlines to stop handing out prayer cards to passengers," *Seattle Times*, Jan. 26, 2021, https://www.seattletimes.com/business/alaska-airlines-to-stop-handing-out-prayer-cards-to-passengers/.

tolerance of profanity by flight attendants, and the widespread acceptance of sexual activity as an appropriate topic of conversation within the workplace.

41. As a result of this culture change, many Christian flight attendants at Alaska Airlines fear admitting to any coworkers that they are Christians or to engaging in any discussion about religious and moral beliefs. They warn each other to watch what they say at work.

42. Over the past few years, Alaska Airlines dramatically increased its social advocacy for LGBTQ+ causes, while at the same time excluding, silencing, and ostracizing employees of faith who hold religious beliefs on issues of sexual morality.

43. Alaska Airlines brands itself as a supporter of the LGBTQ+ community.

44. The Airline engages in public policy advocacy, corporate giving, and public messaging supporting the LGBTQ+ community.

45. On or about June 15, 2021, Alaska Airlines unveiled the "Pride in the Sky" livery in support of the LGBTQ+ community.[3]



---

[3] Ali Garbino, "Alaska Airlines takes Pride to the skies with Delight Flights & first-ever LGBTQ+ inspired plane," Alaska Airline, Inc., June 16, 2021, *available at* https://news.alaskaair.com/alaska-airlines/pride-plane/.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

46. According to the Airline, "The Airbus A320 features vibrant airplane decals with iconic rainbow stripes and inclusive colors, winglets, and the words 'Fly with Pride' adorned on the side."[4]

47. In 2021, Alaska Airlines started selling pronoun pins employees can wear on their uniforms saying "He/Him," "She/Her," and "They/Them."

48. Alaska Airlines may lawfully engage in social advocacy, but it must not do so in a manner that discriminates or creates a hostile work environment against protected classes.

**Alaska Airlines' Diversity Statements Fail to Include Religion as a Protected Class**

49. Title VII prohibits discrimination based on race, sex, religion, color, and national origin. Other federal statutes prohibit discrimination based on age and disability.

50. Alaska Airlines affirms its disregard for religion as a protected class by its repeated statements of support for other protected classes while omitting the protected class of religion.

51. On February 18, 2021, Alaska Air Group announced its commitment to a more inclusive workforce by 2025. The announcement began: "At Alaska, we believe every person deserves respect regardless of race, ethnicity, capability, age, gender or sexual orientation...."[5]

52. Alaska Airlines omitted religion from its February 18, 2021, "inclusive workforce" statement.

53. On April 23, 2021, Alaska Airlines posted an article in Alaska World entitled "Diversity, Equity & Inclusion progress on our journey to a more inclusive workforce." As the company touted its diversity policies and progress, it stated, "At Alaska, we believe every

---

[4] Alaska Airlines, Facebook (June 15, 2021, 6:40 PM), https://m.facebook.com/story.php?story_fbid=10159260223972486&id=28488837485; "Alaska Airlines, Inc., Pride in the Skies Livery," *available at* https://www.alaskaair.com/content/travel-info/our-aircraft/a320-pride.

[5] Ali Garbino, "Alaska Air Group commits to a more inclusive workforce by 2025," Alaska Airlines Inc., Feb. 18, 2021, *available at* https://news.alaskaair.com/diversity-equity-and-inclusion/diversity-equity-inclusion-goals/.

person deserves respect, to feel like they belong and to have equal opportunity regardless of race, ethnicity, disability, age, gender, gender identity or sexual orientation."[6]

54. Alaska Airlines omitted religion from its April 23, 2021, statement on Diversity, Equity, and Inclusion.

55. On April 27, 2021, an Alaska Airlines "Our Commitment" aircraft made its inaugural flight. The aircraft is painted to embody the partnership between Alaska Airlines and the United Negro College Fund ("UNCF"). A plaque inside the airplane greets passengers "Welcome aboard" and explains, "This special aircraft symbolizes our journey to making Alaska a place where everyone feels like they belong…." The plaque also states: "At



[6] Ali Garbino, "Diversity, Equity & Inclusion progress on our journey to a more inclusive workforce," Alaska Airlines, Inc., Apr. 23, 2021, *available at* https://news.alaskaair.com/diversity-equity-and-inclusion/dei-progress-april-2021/.

AMENDED COMPLAINT - 9

No. 2:22-CV-00668-BJR

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

1  Alaska, we believe every person deserves respect, to feel like they belong and have equal
2  opportunity regardless of race, ethnicity, disability, age, gender or sexual orientation."

3  56.  Alaska Airlines omitted religion from its equal opportunity statement on the UNCF aircraft.

4  57.  Alaska Airlines' website also highlights its partnership with UNCF. The first sentence on
5  the page is: "At Alaska, we believe every person deserves respect, to feel like they belong
6  and have equal opportunity regardless of race, ethnicity, disability, age, gender or sexual
7  orientation." [7]

8  58.  Alaska Airlines omitted religion from its statement about respect on its UNCF webpage.

9  **Alaska Airlines' Training Ignores Protections for Religious Employees**

10  59.  Alaska Airlines' extensive diversity trainings focus on other protected classes while staying
11  silent or nearly silent about discrimination based on religion.

12  60.  In the third quarter of 2021, Alaska Airlines required flight attendants to watch a training
13  in which an Alaska Airlines trainer explaining that he was "gender fluid under the umbrella
14  terms of transgender and nonbinary." The trainer taught that employees should seek
15  clarification about someone's pronouns and apologize if they make a mistake. The trainer
16  emphasized the importance of treating LGBTQ+ individuals with courtesy and respect.

17  61.  Alaska Airlines' employee training emphasizes other protected classes and minimizes or
18  entirely neglects training on religion as a protected class.

19  62.  Alaska Airlines hosts listening sessions for employees to talk about their diverse
20  experiences. Employees of faith do not feel comfortable expressing their beliefs in these
21  sessions.

22  63.  As a result of the current culture at Alaska Airlines, Christian flight attendants fear
23  termination or discipline if they mention their religious beliefs at work.

24  **The Union Minimizes the Rights of Religious Employees**

25  64.  Similarly, AFA champions the rights of LGBTQ+ employees in the workplace.

26

27  [7] Alaska Airlines, Inc., "Our Commitment," *available at* www.alaskaair.com/content/about-us/esg/people/uncf?int=as_vanity_uncf||20210426||-prodid:awareness.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

65. On December 11, 2020, AFA Alaska's MEC adopted a resolution supportive of non-binary and gender non-conforming individuals.[8]

66. AFA proactively asked that Alaska Airlines review "frontline employee uniform and appearance standards … first as they are one of the most significantly impactful areas of inequality for those who are non-binary and/or gender non-conforming."[9]

67. At the same time, AFA ignores or minimizes the rights of religious employees in the workplace.

68. Both Alaska Airlines and AFA in practice fail to treat religion as a protected class.

69. Religious flight attendants report that when they file complaints of harassment or report offensive social media posts, the Airline and the Union dismiss their concerns while at the same time aggressively advocating for employees who raise complaints not based upon religion.

70. As a result, some religious flight attendants are working fewer hours to avoid facing the hostile work environment and consequently are earning less income.

**Alaska Airlines' Purported Culture of Open Communication**

71. As of early 2021, Alaska Airlines encouraged open communication between management and employees.

72. Even with over 20,000 employees, Alaska Airlines created a culture where employees felt free to email vice-presidents and even the CEO if they had questions or concerns.

73. "Alaska's World" is an internal communication network available only to Alaska Airlines employees.

74. Flight attendants pass through Alaska's World to access "bulletins," which are required reading for flight attendants.

---

[8] AFA, Master Executive Council Resolution, Subject: Gender Equality, Dec. 1, 2020, https://afaalaska.org/wp-content/uploads/2020/12/2020.12.01-MEC-Resolution-Gender-Equality.pdf.

[9] AFA Update, MEC Resolution on Gender Equality, Dec. 11, 2020, https://afaalaska.org/mec/afa-update-december-11-2020.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

75. Other articles are categorized as "Water Cooler" reading and are optional for flight attendants.

76. Alaska Airlines encouraged employees to comment on Alaska's World articles.

77. The Airline provided a "Submit Comment" button at the end of each article.

78. Before posting a comment, employees had to check a box affirming that the comment complied with policies governing Alaska's World.

79. The rules governing Alaska's World specifically allowed for respectful disagreement, stating:

> Our differences make us better when we support and respect each other, allowing each of us to be who we are. Comments are here for us to openly and constructively share ideas, ask respectful questions, and understand one another and our company. You can disagree respectfully….

80. The rules encouraged employees, "**Ask questions**" (emphasis in original).

81. The rules concluded by explaining the consequences of posting something that did not comply with the rules:

> **Three strikes and you're out**: If a comment doesn't follow the rules, it will be removed at the discretion of the Corporate Communications team. If three of your comments are deleted, we will block you from future commenting.

(emphasis in original).

82. On February 18, 2021, Ben Minicucci, Alaska Airlines' President and incoming CEO, affirmed the importance of diverse perspectives, stating:

> Alaska's values—own safety, do the right thing and be kind-hearted—are the foundation of who we are and what drives us to be the airline people love. Diversity, equity and inclusion are about valuing each person's uniqueness and life experiences so the world can see, learn and benefit from diverse perspectives. Our success depends on it.[10]

83. Alaska Airlines' employee handbook, entitled "Our People Policies," affirmed the company's openness to discussion, even on sensitive topics like diversity and inclusion.

---

[10] Garbino, *supra* note 5.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

84.  In setting out the Airlines' harassment policy, Our People Policies explained "What is NOT harassment?" by stating:

> Alaska Airlines promotes healthy and honest discussions in the workplace on issues of diversity and inclusion. These conversations are a vital part of learning and seeking to understand as well as providing equal access to opportunity and creating a workplace that embraces individuality and uniqueness.

Our People Policies, p. 13.

85.  On February 18, 2021, as it announced its diversity, equity, and inclusion goals, the Airline reiterated its commitment to dialogue among employees and management, stating, "We will continue to strive for a safe space culture where employees feel empowered to have open and critical dialogue with their peers and leaders—creating a culture where we seek to understand."[11]

**Alaska Airlines Posts "Alaska supports the Equality Act" Article**

86.  On or about February 25, 2021, Alaska Airlines posted in Alaska's World a Water Cooler article entitled "Alaska supports the Equality Act."

87.  The article described the company's support for the proposed Equality Act legislation, which was pending in Congress.

88.  Alaska Airlines opened the article for employees to comment and ask questions.

**Marli Brown's Employment History with Alaska Airlines**

89.  Marli Brown began her employment as a flight attendant for Alaska Airlines on February 6, 2013.

90.  She completed her training on or by March 20, 2013.

91.  Initially, she was based in Los Angeles, and on or around June 2013, she transferred to the Seattle base.

92.  Marli continued in that position as flight attendant until the Airline fired her on March 19, 2021.

---

[11] *Id.*

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

93. Marli's employment record was exemplary.

94. "Kudos" from the Airlines' guests fill Marli's personnel file, describing her as "amazing," among the "kindest and most thoughtful," "excellent," "friendly," "accommodating," "OUTSTANDING," "SUPER FRIENDLY," "SUPER GREAT," "exceptional," "one of the very best and friendliest flight attendants I have had," "so nice," "so welcoming," and providing "service in the top 1% of any flight I have ever been on."

95. Marli received six Golden Service Awards for excellence in service to Alaska Airlines' MVP, Gold, 75K, and Million-Miler passengers.

96. Marli prides herself on being respectful and kind-hearted.

97. She stands by Alaska Airlines' stated values of being respectful and inclusive of those with other beliefs and values.

98. Marli counts among her friends at Alaska Airlines flight attendants of all beliefs and backgrounds.

99. In early January 2021, less than two months before firing her, the Airline highlighted Marli's exceptional customer service in an article published in Alaska's World. The article commended Marli for exemplifying the Airlines' core values by her attentive care of an elderly female guest who was flying for the first time as she relocated from Seattle to the East Coast. The Airline praised Marli's kindness and compassion.

100. Marli is a practicing Christian and seeks to live her life in accordance with the tenets set out in the Bible, including its instruction to "do justice, love mercy, and walk humbly with [her] God." Micah 6:8.

101. Marli always carried her Bible with her while flying.

102. When Marli worked in first class or on long-haul flights, if she had downtime, which was not uncommon, she would read either the Bible or a Christian book.

103. Tiffany Lewis, who in 2021 worked in the Airline's Human Resources Department as Marli's Inflight Performance Supervisor, had previously been Marli's Flight Attendant supervisor.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

104. Lewis knew Marli was a Christian.

105. For many years, including 2021, Marli's Flight Attendant supervisor was Kaliko Howell. When Marli faced a challenging situation during a flight, such as an unruly passenger, she would often seek out Howell afterwards to discuss the incident. She explained to him that because of her faith, she wanted to treat everyone with kindness.

106. Howell knew Marli was a Christian.

107. On January 27, 2021, Marli met with Lewis and Terry Taylor (President of the AFA LEC, Seattle). During the meeting, both Lewis and Taylor, unprompted, told Marli not to talk about religion at work.

**Marli's Questions About Alaska Airlines' Post Supporting the Equality Act**

108. When Marli Brown logged in to Alaska's World on the morning of February 25, 2021, she noticed and read the article about Alaska Airlines' support for the Equality Act.

109. When Marli read the article, she also read a question another employee (Lacey Smith) posted and a response posted by Andy Schneider, Vice-President of People. Seeing this question and response confirmed Marli's understanding that Alaska's World was an appropriate forum to pose questions about company policies.

110. Marli supports equality for all and agrees that everyone should be treated with kindness and respect.

111. Reading Alaska Airlines' article prompted Marli to research the Equality Act. Marli learned that the Equality Act would remove protections offered by the federal Religious Freedom Restoration Act and that it would impact who is allowed to enter single-sex spaces. *See* The Equality Act of 2021, H.R. 5, 117th Congress, 1st Session (2021).

112. In her research about the Equality Act, Marli read an article by The Heritage Foundation entitled "11 Myths About H.R. 5, the Equality Act of 2021."[12]

---

[12] Heritage Foundation, "11 Myths About H.R. 5, the Equality Act of 2021," Feb. 24, 2021, https://www.heritage.org/gender/report/11-myths-about-hr-5-the-equality-act-2021.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

113. After learning more about the Equality Act, Marli was concerned about the impact the Equality Act would have on vulnerable groups, including women who are survivors of sexual abuse and young girls, as well as people of faith, including minority faiths.

114. Marli had questions about the impact the Equality Act would have on vulnerable groups and the values she believed Alaska Airlines held.

115. After praying throughout the day about whether to post a comment to the article, Marli's sincerely held religious beliefs compelled her to respectfully express her concerns when Alaska Airlines' comment section invited her to provide input.

116. Believing Alaska Airlines' assurances that it welcomed respectful disagreement and invited questions, on the evening of February 25, 2021, Marli checked the box affirming her compliance with the commenting rules and, at 7:56 p.m., posted a question in Alaska's World asking for clarification of the company's support of the Equality Act.

117. Marli asked:

> Does Alaska support: endangering the Church, encouraging suppression of religious freedom, obliterating women rights and parental rights? This act will Force [sic] every American to agree with controversial government-imposed ideology on or be treated as an outlaw. The Equality Act demolishes existing civil rights and constitutional freedoms which threatens constitutional freedoms by eliminating conscience protections from the Civil Rights Act. The Equality act would affect everything from girls' and women's showers and locker rooms to women's shelters and women's prisons, endangering safety and diminishing privacy. Giving people blanket permission to enter private spaces for the opposite sex enables sexual predators to exploit the rules and gain easy access to victims. This is Equality Act [sic][.]

118. The end of Marli's question was cut off due to character limitations in the comment feature. She intended to end by asking another question, such as whether this was the Equality Act that Alaska Airlines supported when some of the provisions seemed to conflict with the company's values.

119. Marli's comment referenced many of the concerns she read about in the above-cited article on "11 Myths about H.R. 5."

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

120. Marli's question reflected her belief that the Equality Act would result in the violation of legal protections in the Civil Rights Act for religious people and for females. She wrote her comment to oppose discrimination based on religion or sex.

121. Marli was concerned that changes to policies that protect the safe spaces of women could be exploited by people who are not the intended beneficiaries of the rule, to the harm of women.

122. This concern is a common critique of the Equality Act, which Congress has considered numerous times but never enacted.

123. At Alaska Airlines, female flight attendants sometimes change clothes in the women's restrooms. Marli believed that the Equality Act would make women lose privacy and protection in women's restrooms such as these, and the result could be a hostile environment for women.

124. At 10:32 p.m. on the night of February 25, 2021, the Airline, through alaskasworld.comments@alaskaair.com, sent Marli an email informing her that her comment had been removed due to violation of unspecified company policies and procedures.

125. The next morning, on February 26, Marli responded to the Airline through alaskasworld.comments@alaskaair.com, inquiring:

> Per the commenting rules I do not see where I broke them. I stayed on the topic, all questions and statements can be verified. I did not disrespect anyone and was very civil about the questions I asked. I truly want to understand if our company supports this and if they truly understand the severity of this law?
> Don't get me wrong. I am happy that our company supports gender equality.
> I feel the questions which I asked is [sic] concern to many and should be answered and anyone who has done their research about the equality act should be asking the same questions.

126. When Marli landed in Seattle on the evening of February 26, she was met at the plane by her Flight Attendant Supervisor, Kaliko Howell, and a Union representative, Jake Jones (MEC Scheduling Committee Chairperson). Howell and Jones had her sign a document

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

acknowledging that she would be withheld from service for two weeks pending an investigation.

127. Howell also took Marli's badge. Without her badge, she would not be able to enter the airport to work.

128. After Howell took her badge, Jones escorted Marli to her car.

129. Jones opined that Alaska Airlines would either give Marli "a slap on the wrist" or "make an example" of her.

130. AFA representative Terry Taylor later told Marli that she had never helped anyone else whose badge had been taken during an investigation.

**Grievance Procedures under Alaska Airlines and AFA's Collective Bargaining Agreement**

131. The AFA is a union that represents flight attendants. It has a duty to defend and represent flight attendants, including during grievance procedures.

132. The collective bargaining agreement between AFA and Alaska Airlines includes a "no discrimination" clause, stating:

> Neither the Company nor the Association will discriminate in any way against any employee based on that employee's inclusion in any classification protected from discriminatory treatment by Company Policy and State or Federal Law, including but not limited to sex, race, color, religion, sexual orientation, national origin or age, marital status, creed, presence of any sensory, mental or physical disability, disabled veterans' status, Vietnam Era veteran's status and ancestry.

Alaska 2018-2021 Joint Collective Bargaining Agreement Association of Flight Attendants-CWA, § 1.B.

133. Because of Marli's religious beliefs, AFA did not defend Marli as vigorously as it defends other flight attendants.

134. Section 19 of Alaska Airlines' joint collective bargaining agreement with AFA sets out "Grievance Procedures."

135. Section 19.A delineates the timing within which a notice of disciplinary action must be given, protocol for investigatory or work performance meetings, and states, "No

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

investigatory or work performance meeting will be conducted until the Flight Attendant has had an adequate opportunity to obtain Union representation."

136. Section 19.A also explains that after discipline is issued, a flight attendant has a right to a hearing with the division leader of Inflight Services or her/his designee. If that decision is unsatisfactory to the Flight Attendant, the matter may be appealed to the Board of Adjustments.

137. Section 19.C explains that any discipline decision that is not appealed will be final and binding.

**Marli's Preliminary Conversation with AFA**

138. After Marli received news of her suspension and upcoming investigatory meeting, she was contacted by AFA representative Terry Taylor (President of the AFA LEC, Seattle).

139. In conversations from March 1 through March 4, 2021, Taylor told Marli that the information she learned from her research on the Equality Act was false.

140. Taylor told Marli that women and children have not actually been attacked in formerly sex-segregated private spaces that had been opened up, implying that Marli was wrong to be concerned about the impact on women and children.

141. Marli explained to Taylor that her comment on the Alaska World article was rooted in her religious beliefs.

142. Marli also mentioned to Taylor that she prayed about the issue before posting.

143. Taylor told Marli that she did not have "freedom of speech" in the workplace.

144. Taylor demonstrated her hostility toward Marli's religious beliefs by telling Marli that if she punched someone in the face on an airplane and it was captured on video, it would not be possible to offer much defense. In giving this example, Taylor implied that Marli's respectful question was equivalent to hitting someone in the face on video and was proof that she was guilty.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

**Marli's Investigation and Termination**

145.  On March 4, 2021, Marli met with Tiffany Lewis (Inflight Performance Supervisor), Heidi Neidlinger (Human Resources Coordinator), and Howell, along with AFA representatives Taylor and Stephanie Adams (AFA MEC Grievance Committee Chairperson).

146.  In that meeting, Marli expressed her support for diversity and inclusion and explained that she had posted her questions based on her religious convictions and concern for potentially oppressed groups, such as religious individuals and women.

147.  During the March 4 meeting, AFA said little in Marli's defense. Taylor merely explained that she had talked with Marli, who had hoped to receive an answer from Schneider after asking her question in that forum. Adams simply took notes.

148.  Even though Taylor knew that Marli's question was rooted in her religious beliefs, during the March 4 meeting, Taylor did not advocate for Marli's rights as a member of a protected class not to face discrimination on the basis of religion.

149.  Following the March 4 meeting, Marli spoke by phone with Adams and Taylor, who again told her that the facts she read in her research were incorrect. Taylor and Adams failed to acknowledge that even if the Union disagreed factually with Marli's research, it still had a duty to oppose discrimination on the basis of her religion.

150.  Adams or Taylor told Marli that the Equality Act would not affect her job, and Marli responded that she was concerned about how the proposed legislation would affect her co-workers.

151.  At Taylor's request, Marli prepared a statement explaining her actions, which Taylor forwarded to Lewis and Neidlinger on March 5, 2021.

152.  Marli's statement expressed her fear that the company was singling her out for discrimination because of her religious beliefs. She asked for a religious accommodation to be allowed to express her religious beliefs on an equal basis as others.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

153. Marli's statement also expressed her concern about the impact the Equality Act may have on vulnerable groups, including women who are survivors of sexual abuse, as well as people of faith, including minority faiths.

154. AFA knew that prohibited religious discrimination may have occurred.

155. AFA failed to assert a religious discrimination claim in the grievance and arbitration process.

156. On March 19, 2021, Marli received a Notice of Discharge, signed by Lewis, stating that her comment on Alaska's World violated Alaska's Airlines' "Our People Policies," covering harassment and discrimination, and sections 6.300 and 7.100 of the *Flight Attendant Manual*, covering personal conduct.

157. The Notice of Discharge called Marli's post "hateful," "offensive," and "discriminatory," asserting that it contributed to a hostile work environment. *See* Ex. 9 – Marli's Notice of Discharge.

158. The Notice of Discharge explained that Alaska Airlines discharged Marli because of her post on the Alaska's World article.

159. The Notice of Discharge did not give any reason for terminating Marli's employment other than Marli's post.

160. Alaska Airlines terminated Marli's employment because of her religion.

161. On March 19, 2021, Lewis called Marli and read her the Notice of Discharge. After the conclusion of the meeting, Lewis personally expressed to Marli that she was an exceptional employee.

162. Alaska Airlines provides all employees a right to appeal disciplinary decisions at a grievance hearing. If the flight attendant or AFA do not appeal the decision within the time limit prescribed in the Flight Attendant Manual, the decision is final and binding.

163. AFA timely appealed Marli's Notice of Discipline.

**Marli's Grievance Hearing and AFA's Counsel**

164. On March 29, 2021, Marli spoke with Taylor about her upcoming grievance hearing, scheduled for the next day.

165. Marli asked if Taylor would advocate for her during the meeting.

166. In response, Taylor replied that she would report that, in her conversations with other employees about Marli, everyone Marli ever worked with really cared about her and knew that Marli was kind and respectful to all employees and guests.

167. Taylor described Marli as "an exemplary employee."

168. Taylor also told Marli that she had read the Equality Act.

169. Taylor said that Marli's research about the Equality Act, such as the Act removing religious liberty protections, was wrong.

170. Taylor said that Alaska Airlines would think Marli's research was wrong too.

171. Taylor told Marli that what she did was wrong and hurtful, and people could view it as harassing.

172. Marli mentioned again that she was a Christian and has religious protections.

173. Taylor said that Marli had no religious protections because what she did was wrong.

174. On March 30, 2021, prior to her grievance hearing with Michael Link (Program Manager, Labor Relations), Marli emailed Taylor a statement she planned to submit to Link. The statement explained Marli's request that she be allowed to express her religious concerns on the same basis that others were allowed to comment, pointing out that while the legislation at issue is called the Equality Act, it actually takes away a number of protections for religious people and others.

175. Marli's statement also pointed out that the Notice of Discharge grossly mischaracterized both her statement and her character.

176. Marli's statement explained,

> I was (and am) concerned about how the bill would eliminate many decades-old civil rights protections for religious liberty and freedom of conscience. As I stated

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

in my comment, I wanted to know if Alaska wants religious rights to be treated as second-class.

177. Marli also explained:

I asked my question out of a growing concern that some of Alaska's employees are finding the environment increasingly hostile to religious voices. Your responses of suspending me and removing my comment from the discussion of the Equality Act appear to confirm that concern.

178. After Marli emailed the statement to Taylor, Taylor and Adams called Marli.

179. On the call, Taylor and Adams told Marli that she should neither read her statement nor submit it to Link during the meeting. They repeated that Marli's research was incorrect.

180. On March 30, 2021, Marli attended a grievance hearing with Link and Karen Themelis (Sr. Labor Relations Business Partner). Union representatives Taylor and Adams attended as well.

181. During the March 30 grievance hearing, Taylor affirmed that Marli's employment record was outstanding and nothing indicated that she had acted with discriminatory intent. Taylor explained to Link that if she (Taylor) had read Marli's comment, she too would be concerned, but that in her opinion Marli was "not beyond salvation" and was simply misinformed in her research.

182. Taylor opined that she believed Marli would never again post on Alaska's World.

183. Taylor failed to point out in the grievance hearing that even if Marli were misinformed in her research, she still had a right not to be discriminated against on the basis of religion.

184. Relying on Taylor and Adams, Marli did not submit her statement and said little during her grievance hearing.

185. On April 13, 2021, Link denied Marli's grievance, making final the Airline's decision to terminate her.

186. AFA discriminated against Marli on the basis of religion by labeling her beliefs as hurtful and wrong and refusing to assert her protections as a member of a protected class.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

187. As a result of Alaska Airlines' and AFA's actions, Marli suffered a loss of income, loss of benefits, emotional harm, reputational harm, mental anguish, and great inconvenience.

188. Defendants Alaska Airlines' and AFA's acts of discrimination were performed with malice or reckless indifference to Marli's protected civil rights.

**Marli's Pre-arbitration Screening by AFA**

189. Following the denial of her grievance, Taylor informed Marli that she could pursue arbitration, but the Union would first decide whether it was willing to represent her during the arbitration. If the Union decided to represent her, the Union would pay half the arbitration fees and the Airline would pay the other half. If AFA declined to represent Marli, she would be responsible for half of the arbitration fees.

190. Taylor repeated her statement that if there were a videotape of Marli hitting someone on the airplane, her guilt would be obvious. Marli understood Taylor to say that the Union believed there was clear evidence of her wrongdoing.

191. On May 13, 2021, Marli met by Zoom with Adams and Kimberly Chaput (Attorney, AFA) regarding whether the Union would represent her in arbitration. Chaput rolled her eyes multiple times when Marli explained her research and her religious beliefs that motivated her to raise her concerns.

192. Marli's meeting with Adams and Chaput lasted about fifteen minutes.

193. It appeared to Marli that the Union was just going through the motions.

194. After nearly a month of delays in decision-making, on June 11, 2021, Adams informed Marli that the Union would not represent her further.

**Lacey Smith's Employment History with Alaska Airlines**

195. Lacey began her employment as a flight attendant for Alaska Airlines on October 27, 2014.

196. She completed her training on or by December 10, 2014.

197. Initially, she was based in Seattle. On or around July 1, 2016, she transferred to the Portland base.

198. Lacey continued in that position until the Airline fired her on March 19, 2021.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

199. Lacey's employment record was exemplary.

200. "Kudos" from the Airline's guests fill Lacey's personnel file, describing her as "amazing," "awesome," "fantastic," "[f]riendly, attentive, happy," "engaging, humorous, accommodating and professional," "warm and welcoming," "hands down the most friendly and cheerful flight attendant we have met," "exceptional," "best experience ever on Alaska Air," and "People like Lacey make Alaska airlines stand apart from the competition."

201. During the summer of 2020, Alaska Airlines awarded Lacey a service pin because she had received 50 kudos from passengers.

202. Lacey prides herself in making everyone feel welcomed, heard, and valued. She seeks to help others as much as she can in any place she finds herself.

203. Alaska Airlines states in its Our People Policies:

> Our legacy is the result of unique, hard-working people with varied backgrounds, experiences, perspectives and know-how. We not only provide safe and dependable service, we've also built our airline with genuine and caring relationships, community involvement and cultural celebration. Guided by our deeply held values, our goal is to create a diverse and inclusive environment where people of all abilities can thrive in their quest to deliver an exceptional customer experience for everyone.

Our People Policies, p. 7.

204. Lacey stands by Alaska Airlines' stated values of being respectful and inclusive of those with other beliefs and values, without exception.

205. Lacey is a practicing Christian and seeks to live her life in accordance with the tenets set out in the Bible, pursuing, as Jesus said, that God's "will be done on Earth as it is in Heaven" and treating others as she would like to be treated.

206. Lacey's religious and moral convictions guided her in showing kindness and courtesy to all Alaska Airlines' guests and coworkers including those who may have had differing moral guidance or cultural values.

207. Lacey believes that discrimination is an issue of morality, and she is compelled by her religious beliefs to treat everyone with respect and to oppose illegal discrimination.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

208. As a sign of her religious faith, Lacey consistently—at work and at other times—wore a ring that displayed a cross.

209. Lacey attended church in Portland with several other Alaska Airlines flight attendants.

210. When traveling as a flight attendant, Lacey attended church during some of her layovers.

211. Alaska Airlines knew Lacey was a Christian.

**Lacey Smith's Question About Alaska Airlines' Support for the Equality Act**

212. On February 25, 2021, Lacey Smith was "on reserve," meaning that she would be scheduled for a trip if Alaska Airlines needed her to work.

213. Soon after waking up, Lacey logged into her account on Alaska's World to see if she had been called in to work that morning.

214. When Lacey logged into Alaska's World, she saw the Airline's post "Alaska supports the Equality Act" and read it.

215. Alaska Airlines' article explained the Airline's belief that the legislation would further the important principle of equality for all. Lacey fully supports equality and agrees that everyone should be treated with kindness and respect. She wondered if the Equality Act was the best means to ensure equality.

216. Specifically, Lacey had questions about whether Alaska Airlines would treat employees with various religious and moral beliefs with equality and not discriminate against them because of their beliefs.

217. Before posting her question, Lacey read through Alaska Airlines' rules for leaving a comment or question. Because rule four said, "Ask a question," she felt confident that it was okay to ask a question. She saw that the rules said that if for any reason at all Alaska Airlines did not like her question, it would simply take it down.

218. Believing Alaska Airlines' assurance that the company welcomed respectful disagreement, encouraged questions, and would simply remove any comment deemed objectionable, Lacey asked a question that stemmed from her own religious, philosophical, and moral convictions.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

219. After checking the box affirming her compliance with the commenting rules, at 8:35 a.m., Lacey posted the question: "As a company, do you think it's possible to regulate morality?"

220. She wanted to know if the Airline thought that it was possible or good for employers to require employee conformity with employer beliefs on moral issues that conflict with the religious or moral beliefs of many.

221. When an employee posts a comment in Alaska's World, other employees have an opportunity to "like" the comment. At least 17 other employees "liked" Lacey's question on Alaska's World.

222. At 11:31 a.m., Alaska Airlines' Senior Vice President of People Andy Schneider posted the following response:

> Supporting the Equality Act is not about regulating morality. It's about supporting laws that allow our LGBTQ+ employees and guests, no matter what state they live in or fly to, to be protected against discrimination. Our values are our guide, and we strongly believe that doing the right thing and being kind-hearted require us to support this act. As we said above, we aren't the kind of company that stands by and watches – we're going to use our voice and be a leader on these issues.
> We also expect our employees to live by these same values. Our differences are to be respected. As stated in our People Policies, harassment and discrimination will not be tolerated.

223. By responding to Lacey's question, Schneider validated the question as appropriate.

224. Lacey saw Schneider's response around 12:30 p.m. and "liked" it with the intent of thanking her for offering insight into Alaska Airlines' position. Seeing Schneider's response to her question confirmed Lacey's understanding that Alaska's World was an appropriate forum for questions about company policies.

225. Around 2:00 p.m. on February 25, Lacey checked her Alaska Airlines email and saw that she had a message from her Inflight Performance Supervisor Noelle Berner. When Lacey called Berner, Berner said that they needed to meet regarding the question Lacey had posted about the Equality Act article.

226. On February 25, 2021, Alaska Airlines removed Lacey's question and Schneider's response from its website.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

227. Also on the afternoon of February 25, 2021, Alaska Airlines removed Lacey from duty through March 9, cancelling her upcoming trips pending investigation of her comment.

228. At 10:45 p.m. on February 25, 2021—over 14 hours after she posted her comment and at least 10 hours after Schneider responded—Lacey received an email from "Alaskasworld Comments" informing her, "Just letting you know your comment was deleted because it violates our commenting terms."

**Internal Alaska Airlines Communications about Marli and Lacey's "Similar" Posts**

229. A string of emails from February 25 and 26, 2021, demonstrates that Alaska Airlines viewed Lacey and Marli's posts as similar.

230. On February 25, 2021, at 10:39 p.m., Taylor Ball (Associate General Counsel, Labor & Employment) emailed Alaska Airlines employees Tiffany Dehaan (Managing Director, Culture, Learning, and Inclusion), Alexa McCann (Managing Director, Communications), Schneider, Kyle Levine (Senior Vice-President, Legal, and General Counsel), and Tami Becker Gomez (Senior Attorney, Labor and Employment), stating:

> We need to pull down this [Marli's] comment ASAP. I'd also recommend turning off further comments immediately. We should also pull down the earlier comment about "immorality." … These are offensive viewpoints (regardless of politics) and employees should not be using our platform to take positions that are directly contrary to the Company's stated position and goals.

231. At 10:39 p.m., February 25, Alexa McCann responded, "This [Marli's comment] has been removed and comments are turned off."

232. The next morning, on February 26, 2021, at 8:48 a.m., David Henrich (Manager, Web Development) emailed McCann asking, "Just confirming someone from HR is reaching out to these two employees this morning with guidance on why we deleted the comments, correct?"

233. Several emails looped additional recipients in to Henrich's query, including McCann, Dehaan, Ball, Becker Gomez, and Currier. At 10:51 a.m., Currier replied, "we'll take it

from here," and at 10:54 a.m., Taylor Ball answered, "I should have looped you in last night at 10:30 instead of letting Tami hog all the fun!"

234.  At 10:57 a.m., Currier responded to Ball, saying:

> Oh the joy…
> Taylor, you mentioned these two employees. Is there a second one I missed? Is it Lacey Smith?

235.  At 10:57 a.m., Ball responded affirmatively.

236.  At 11:28 a.m., Currier emailed Neidlinger, explaining,

> I have a new one for you. It hasn't made it to Performance yet but a similar one (Laci Smith) has…. I'm going to pull us together briefly to chat through these and some additional info from Legal on next steps before we connect with Performance so we can get consistent on approach.

**Lacey's Preliminary Conversation with AFA**

237.  On March 4, 2021, Lacey spoke with her AFA representative, Steve Maller (President of the AFA LEC, Portland).

238.  Maller reminded Lacey that Alaska Airlines' management had always said it encouraged open dialogue.

239.  Maller also mentioned that Alaska Airlines had deleted another comment posted by a flight attendant at a different base. Maller was referring to Marli Brown's post.

**Lacey's Investigation and Termination**

240.  On March 11, 2021, Lacey met with Berner, Nicole O'Neal (Human Resources Business Partner), and Kristie Stafford (Portland Base Manager).

241.  Lacey was accompanied by two AFA representatives—Maller and Krystle Berry (AFA LEC Vice President, Portland).

242.  Because of Lacey's religious beliefs, AFA did not defend Lacey as vigorously as it defends other flight attendants.

243.  Maller did not advocate for Lacey's right to be free from discrimination on the basis of religion.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

244. Maller noted that Alaska Airlines failed to follow its own policies, which stated that a comment deemed inappropriate would be taken down. He also pointed out that the company responded to Lacey's question and left it up for several hours.

245. At Maller's request, Lacey prepared a statement explaining her actions, which Maller forwarded to Berner.

246. When Stafford asked what her posted question meant, Lacey described the complexity of the Equality Act and explained that one can support equality while not supporting the Act.

247. Lacey affirmed that she supports human rights and diversity, sharing Alaska Airlines' stated values. Lacey questioned the means Alaska Airlines endorsed for reaching those ends.

248. Lacey explained that her post related to deeper questions such as whether we are inherently good people, a quintessentially religious question.

249. Given the changing culture at Alaska Airlines, Lacey feared retaliation if she expressly referenced her religious beliefs.

250. As Stafford and Berner aggressively questioned her, Lacey received the impression that she must ignore her religious and moral convictions in order to conform to Alaska Airlines' moral convictions if she wanted to keep her job.

251. The conversation with Stafford and Berner made Lacey feel hopeless and frustrated. Their hostile questioning brought Lacey to tears, at which point Maller suggested that they take a brief break.

252. On March 19, 2021, Lacey received a Notice of Discharge, signed by Berner, explaining that she violated Alaska Airlines' "Our People Policies," covering harassment and discrimination, and sections 6.300 and 7.100 of the *Flight Attendant Manual*, covering personal conduct.

253. Among other things, the letter states:

> Defining gender identity or sexual orientation as a moral issue, or questioning the Company's support for the rights of all people regardless of their gender identity or sexual orientation, is not a philosophical question, but a discriminatory

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

statement…. Your posting was offensive, discriminatory, and did not align with Alaska Airline's values....

*See* Ex. 10 – Lacey's Notice of Discharge.

254. The Notice of Discharge also states the company received concerns that her comment "carried the message that being LGBTQ was immoral or wrong."

255. The Notice of Discharge mischaracterizes Lacey's question and her motivation, revealing the hostility pervasive at Alaska Airlines towards those the Airline views as holding traditional religious beliefs about sexuality.

256. Categorically saying that "[d]efining gender identity or sexual orientation as a moral value is … a discriminatory statement" is itself a discriminatory statement.

257. Many people view issues surrounding sexuality as religious or moral questions.

258. Alaska Airlines terminated Lacey's employment because of her religion.

259. AFA timely appealed Lacey's Notice of Discipline.

**Lacey's Grievance Hearing**

260. On April 27, 2021, Lacey met with Michael Link for her grievance hearing. Alaska Airlines' Themelis and AFA representatives Maller and Berry also attended the meeting.

261. During the grievance hearing, Lacey asked Link for a religious accommodation that she be allowed to politely express beliefs motivated by her religion in the same way that others were allowed to express beliefs related to other protected characteristics.

262. In a written statement submitted to Link and to Maller, Lacey explained that she asked her question to seek clarification about whether Alaska Airlines believes employees with different religious and moral beliefs should be treated equally and not face discrimination because of their beliefs.

263. In her statement, Lacey explained to Link that in her March 11 investigatory meeting, she felt pressured to assure the company she would never raise a question like that again because it could offend someone, suggesting that she must ignore her religious and moral convictions and instead agree with the company's moral convictions to keep her job. Her

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

statement explained that Alaska is cultivating a hostile work environment for people of faith. For the company to discipline religious employees for being concerned about religious discrimination demonstrates hostility toward people of faith.

264. Lacey also gave Link and Maller a print-out of a screenshot of website defining morality, which stated:

> Morality is the differentiation of intentions, decisions and actions between those that are distinguished as proper (right) and those that are improper (wrong). Morality can be a body of standards or principles derived from a code of conduct from a particular philosophy, religion or culture, or it can derive from a standard that a person believes should be universal. Morality may also be specifically synonymous with "goodness" or "rightness".

265. Referencing the rules for Alaska's World, Lacey's statement reminded Link of Alaska Airlines' commitment that employees "be allow[ed] to be who we are," and she asked that he "[r]emember that even though we might not agree, we can still be a community that supports and respects one another."

266. Following the grievance hearing, Lacey walked to the parking lot with AFA's Berry. As Lacey expressed her frustrations because she thought she "had a right…," Berry finished Lacey's sentence saying, "A right not to be discriminated against?"

267. Berry then explained that in working for the Union for about a year, nearly all her work involved representing Christians and conservatives in meetings like Lacey's, meetings in which they were being investigated and/or disciplined for postings the Airline found offensive.

268. Berry also expressed that, while she wasn't personally religious, she could see that it seemed Alaska Airlines was persecuting religious employees.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

269. And Berry shared that, while she herself was not religious, she counseled her own mother, a Catholic flight attendant, not to post on social media about her beliefs because Berry wanted her mom to be able to retire rather than get fired.

270. Despite Berry's perspective that Alaska Airlines persecuted religious employees like Lacey, AFA did not speak up to defend Lacey's right to be free from religious discrimination in the workplace.

271. AFA knew Lacey was religious.

272. AFA knew that prohibited religious discrimination may have occurred.

273. AFA failed to assert a religious discrimination claim in the grievance and arbitration process.

274. On May 10, 2021, Link denied Lacey's grievance, thereby making final the Airline's decision to terminate Lacey.

275. As a result of her termination, Lacey suffered a loss of income, loss of benefits, emotional harm, reputational harm, mental anguish, and great inconvenience.

276. In discriminating against Lacey, defendants Alaska Airlines and AFA acted with malice or reckless indifference to Lacey's protected civil rights.

**Lacey's Pre-arbitration Screening by AFA**

277. On June 29, 2021, Lacey met by telephone with Adams and Chaput for "pre-screening" to determine if the Union would represent her during arbitration.

278. During the phone call, Lacey faced hostile questions from Chaput and Adams, who were aggressive and argumentative.

279. Chaput first said that she disagreed that laws regulate behavior and morality, but then Chaput said that plenty of laws regulate morality and that Lacey would agree with them, citing some civil rights laws as examples.

280. Chaput told Lacey she didn't have "free speech" rights at work, ignoring Lacey's rights as a religious employee.

281. One of the union representatives challenged Lacey, asserting that what her post had really meant was that LGBT people are not moral.

282. On July 1, 2021, the Union declined to represent Lacey further in arbitration, continuing to ignore the company's religious discrimination and retaliation against her.

**Similarly Situated Employees Who Commented on the Equality Act Post But Were Not Disciplined**

283. When, on February 25, 2021, Alaska Airlines posted on Alaska's World about its support for the Equality Act, it did not discipline other employees who posted comments questioning the company's position but did not raise religious concerns or who raised moral values but agreed with the Airline's position.

284. On February 25, 2021, Michael Saporito (Alaska Airlines Line Avionics Technician, Anchorage) posted a comment on Alaska's World questioning why Alaska Airlines supported the Equality Act which, in his opinion, simply "reinvent[s] the wheel." He stated:

> I thought that we had this already and it is call Equal Employment Opportunities. Is this just the same book with another cover? Why do companies and our government have to reinvent the wheel when the EEOC was established July 2 1965 and it appears we have not accomplished much if we are still trying to fix the same issues we had 56 years ago????

285. At least 26 employees "liked" Saporito's comment, and Susan Morlary (Manager, HR Compliance) responded to it.

286. Although Saporito, like Marli and Lacey, questioned whether Alaska Airlines' support for the Equality Act was the best means of achieving its goals of equality, Saporito's comment—which did not touch on religious concerns—was not removed.

287. On information and belief, Alaska Airlines did not discipline Saporito.

288. On February 25, 2021, Steven Kimball (Alaska Airlines Flight Attendant, Portland) posted a comment on Alaska's World stating that supporting the Equality Act is the "morally right thing to do."

289. Kimball's post revealed that he considered gender identity and sexual orientation to be moral issues.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

290. Alaska Airlines did not remove the post or discipline Kimball.

291. On February 25, 2021, Arnold Tharp (Alaska Airlines Flight Attendant, Portland) posted a comment stating: "I think this entire national and company conversation has done one thing for me – it has shown me who really, truly has values…. The truth always wins out, the honorable values (or lack thereof) always shows itself eventually."

292. Tharp's post and use of the term "honorable values" revealed that he considered gender identity and sexual orientation to be moral issues.

293. Alaska Airlines did not remove the post or discipline Tharp.

294. On February 25, 2021, Alberto Panay (Alaska Airlines Flight Attendant, Los Angeles) posted a comment on Alaska's World saying, "Very proud of my company. Hope leadership continues to enforce the 0 tolerance policy, and follows up with those employees who continue to question or resist this stance."

295. Such comments also reflect the company's culture of hostility and intolerance toward people with different religious views.

**Similarly Situated Employees Who Were Disciplined Less Severely for Comments Alaska Airlines Disliked**

296. Alaska Airlines' policy and practice is that when it concludes its employees have violated its social media policies, they receive oral warnings or suspensions of up to five days.

297. Alaska Airlines' policy and practice is to give oral warnings to left-leaning political posts that the company deemed violated its policies.

298. Alaska Airlines' policy and practice is to give 3- or 5-day suspensions to right-leaning political posts that the company deemed violated its policies.

299. The company takes the drastic step of terminating employees only when they express religious beliefs with which the company disagrees.

300. In July 2020, Mary McChesney (Alaska Airlines Flight Attendant, Portland) posted on her personal Facebook page a picture of a racially diverse group of smiling people

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

accompanied by the words, "Lives Matter. If you need a color in front of those two words … you're a racist. We are Americans."

301. On July 31, 2020, citing the same policies it cited in firing Marli and Lacey, Alaska Airlines issued McChesney a Notice of Discipline with a 3-day suspension. The Airline said that she had violated company policy because the post "did not align with Alaska Airlines' values and was divisive rather than inclusive."

302. On April 20, 2021, following the Derek Chauvin verdict, Jenn Duvall (Alaska Airlines Flight Attendant, Portland) posted to her personal Facebook page several hashtags such as #BLUELIVESMATTER, #supportpoliceofficers, #georgefloydwasacriminal, #georgefloydwasnotmurdered. Later, after doing more research and talking with a friend who is a police officer, she voluntarily deleted the post, which no longer reflected her changed views on the Chauvin trial.

303. She also posted:

> I'm curious, has BLM helped one black person get a job or an education? Have they cleaned up one city? Built any Rec Centers? Have they really helped any blacks at all?

304. On May 12, 2021, citing the same policies it cited for firing Marli and Lacey, Alaska Airlines issued a notice of discipline to Duvall, suspending her for the two posts she had made on her personal Facebook page.

305. During her grievance and arbitration process, Duvall learned that two other flight attendants, whom she knows to be political conservatives, received 1-day and 5-day suspensions for making political statements on their Facebook pages that Alaska Airlines deemed offensive. She also learned of two flight-attendants, whom she knows to be left-leaning politically, who only received oral warnings when their social media posts offended others.

306. During 2021 and early 2022, many flight attendants noted Alaska Airlines employees posting hostile comments in social media or in-person about flight attendants who were

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

unvaccinated, most of them for religious reasons. On information and belief, management declined to discipline any of the posters.

307. Alaska Airlines ordinarily does not terminate except for serious conduct that could be harmful to the airline industry, such as alcohol consumption while working or arriving at work intoxicated.

**Similarly Situated Employees Whom AFA Treated More Favorably**

308. On information and belief, the Union has zealously advocated for employees who have been terminated for safety violations, public intoxication during layovers, theft, and other misconduct not related to religion. AFA has successfully advocated for many such employees, and they have been returned to their jobs.

309. The Union treated employees disciplined for non-religious reasons better than it treated Marli and Lacey who were facing termination as a result of their religious beliefs or practices.

310. The Airline accused Mary McChesney, Jenn Duvall, and the other flight attendants mentioned above of violating the same policies as it accused Marli and Lacey of violating. But the discipline that McChesney, Duvall, and others faced was not because of their religious beliefs or practices.

311. The Union recognized that the Airline treated McChesney, Duvall, and other flight attendants unlawfully, and the Union advocated to protect the rights of these flight attendants against the Airline.

312. After the Union advocated for them, Mary McChesney and Jenn Duvall received only 3- and 5-day suspensions.

313. Other employees who were accused of violating the same policies as Marli and Lacey received only a 1-day suspension or an oral warning rather than termination.

314. AFA represented Jenn Duvall during arbitration regarding her political social media posts, but it declined to represent Marli and Lacey during arbitration regarding their religious posts.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

**Alaska Airlines Confirms its Policy of Silencing Religious Opinions**

315. After Marli and Lacey posted their comments in Alaska's World and after the company fired them, Alaska Airlines changed Alaska's World's commenting rules to specifically prohibit the expression of religious opinions.

316. While Alaska Airlines encourages employees to speak freely about their views on transgender issues and various sexual orientations, religious employees must hide their religious identities or face adverse consequences.

## FIRST CAUSE OF ACTION

### TITLE VII: RELIGIOUS DISCRIMINATION, DISPARATE TREATMENT

### (MARLI BROWN and LACEY SMITH against ALASKA AIRLINES)

317. Plaintiffs incorporate and adopt by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

318. Alaska Airlines is an employer within the meaning of Title VII. 42 U.S.C. § 2000e(b).

319. Under Title VII, it is an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e-2(a)(1).

320. "Religion" is defined as including "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

321. The Equal Opportunity Employment Commission defines "religious practices" to "include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." 29 C.F.R. § 1605.1.

322. Plaintiffs Marli and Lacey were outstanding flight attendants, well-qualified for their positions.

323. Marli and Lacey are Christians who hold biblically-based, traditional Christian beliefs that marriage is the union of one man and one woman and that male and female are defined by biological difference between the sexes.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

324. Marli and Lacey's religious and moral convictions guide them in showing kindness and courtesy to all customers and coworkers—including those who may have differing moral guidance or cultural values.

325. Marli and Lacey's religious beliefs compel them to treat everyone with respect and oppose illegal discrimination, such as discrimination against women and people of faith.

326. Marli's religious beliefs compel her to seek to protect vulnerable groups, such as women and people of faith, in accordance with Micah 6:8's command to "do justice, love mercy, and walk humbly with [her] God."

327. Alaska Airlines knew Marli and Lacey were Christians.

328. Alaska Airlines discriminated against, withheld from work, and fired Marli and Lacey because of their religion.

329. Alaska Airlines posted on Alaska's World, an internal messaging board, that it supported the Equality Act and encouraged employees to comment.

330. In response to Alaska Airlines' invitation to comment on the article, Marli and Lacey posted comments that reflected their religious concerns about the Equality Act, including concerns about the impact of the proposed legislation on people of faith.

331. Marli's comment also raised concerns about the impact of the proposed legislation on women.

332. Alaska Airlines discharged Marli and Lacey because of the online comments they posted on the Alaska's World article.

333. Alaska Airlines disparaged Marli's and Lacey's religious expression as "offensive" and "discriminatory," and alleged that those beliefs contributed to a hostile work environment. The Airline also described Marli's comment as "hateful."

334. Alaska Airlines fired Marli and Lacey because of their religious beliefs or practices, including that they hold biblically-based religious and moral beliefs that marriage is the union of one man and one woman or that male and female are defined by biological difference between the sexes.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

335. Alaska Airlines fired Marli and Lacey because of their religious beliefs or practices, including the beliefs that compelled them to seek to oppose discrimination or protect vulnerable groups, such as women or people of faith.

336. Alaska Airlines discriminated against Marli and Lacey on the basis of religion by suggesting that they must ignore their religious and moral convictions and conform to the company's moral values in order to keep their jobs.

337. Alaska Airlines discriminated against Marli and Lacey on the basis of religion by removing them from their flight schedules and then terminating them because of their religious beliefs.

338. Alaska Airlines would not have terminated Marli and Lacey in the absence of their religion.

339. In the alternative, Marli and Lacey's religion was a motivating factor for these actions, including their termination.

340. Alaska Airlines discriminated against Marli and Lacey on the basis of religion by treating similarly situated employees more favorably than Marli and Lacey.

341. Alaska Airlines discriminated against Marli and Lacey on the basis of religion by violating its own policies about posts on Alaska's World, namely the Three Strikes policy.

342. Alaska Airlines further discriminated against Marli by ordering her not to speak about religion at work, but not making such orders for other protected classes.

343. Alaska Airlines' discriminatory practices described above denied Marli and Lacey compensation and other benefits of employment to which they are entitled and caused them to suffer emotional distress and great inconvenience.

344. Alaska Airlines' conduct constitutes discrimination on the basis of religion under 42 U.S.C. § 2000e-2(a) or 42 U.S.C. § 2000e-m.

345. Plaintiffs are entitled to front pay, back pay, restitution, compensatory damages, and injunctive relief to be restored to their positions. Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

346. Alaska Airlines' conduct was intentional, and it acted with malice, oppression, or reckless indifference to the protected rights of Plaintiffs Marli and Lacey. Plaintiffs are thus entitled to punitive damages in an amount to be determined at trial. 42 U.S.C. § 1981a.

## SECOND CAUSE OF ACTION

### TITLE VII: RELIGIOUS DISCRIMINATION, DISPARATE TREATMENT
### (MARLI BROWN and LACEY SMITH against AFA)

347. Plaintiffs incorporate and adopt by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

348. AFA is a labor organization engaged in interstate commerce with fifteen or more members. 42 U.S.C. § 2000e-(d).

349. Under Title VII, it is an unlawful employment practice for a labor organization "to exclude or expel from its membership, or otherwise to discriminate against, any individual because of his … religion …." 42 U.S.C. § 2000e-2(c).

350. "Religion" is defined as including "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

351. The Equal Opportunity Employment Commission defines "religious practices" to "include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." 29 C.F.R. § 1605.1.

352. Marli and Lacey were outstanding flight attendants, well-qualified for their positions.

353. Marli and Lacey are Christians who hold biblically-based, traditional Christian beliefs.

354. AFA discriminated against Marli and Lacey on the basis of religion by expressing hostility toward their religious beliefs.

355. AFA discriminated against Marli and Lacey on the basis of religion by failing to advocate for their right to be free from religious discrimination.

356. AFA discriminated against Marli and Lacey by intentionally failing to file grievances concerning religious discrimination and intentionally failing to raise religious discrimination during their grievance and arbitration processes.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

357. AFA discriminated against Marli and Lacey on the basis of religion by acquiescing in and cooperating with a religiously hostile work environment.

358. AFA discriminated against Marli by failing to oppose Alaska Airlines' retaliation against her after she raised concerns about religious and sex discrimination.

359. After Adams and Taylor reviewed Marli's statement for her grievance hearing explaining her concerns about religious discrimination, AFA demonstrated its intent not to defend Marli from religious discrimination by telling her not to submit her statement to Link nor read it during the grievance hearing. In so doing, it acquiesced in and cooperated with a religiously discriminatory work environment.

360. AFA treated employees disciplined for non-religious reasons better than it treated Marli and Lacey who were disciplined because of their religious beliefs and practices.

361. When AFA diligently advocated for Mary McChesney, Jenn Duvall, and other flight attendants who were accused of violating the same policies as Marli and Lacey, those employees received only suspensions rather than terminations.

362. While AFA declined to represent Marli and Lacey during arbitration regarding their religious posts, AFA did represent Jenn Duvall during arbitration regarding political social media posts.

363. In representing Marli and Lacey during the grievance process, AFA discriminated against them on the basis of religion when it failed to assert that Alaska Airlines treated similarly situated employees more favorably than Marli and Lacey.

364. In representing Marli during the grievance process, AFA discriminated against her on the basis of religion when it failed to point to Alaska Airlines' violation of its own policies about posts on Alaska's World, namely the Three Strikes policy.

365. AFA discriminated against Marli on the basis of religion by explicitly counseling her not to speak about religion at work.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

366. AFA discriminated against Marli on the basis of religion by not defending her right to express her religious opinion in the same manner that others were allowed to express their opinions.

367. AFA's discriminatory representation described above resulted in Marli and Lacey being denied compensation and other benefits of employment to which they were entitled and caused them to suffer emotional distress and great inconvenience.

368. AFA's conduct constitutes discrimination on the basis of religion under 42 U.S.C. § 2000e-2(c).

369. Plaintiffs are entitled to front pay, back pay, compensatory damages, and injunctive relief. Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

370. AFA's conduct was intentional, and it acted with malice or reckless indifference to the protected rights of Plaintiffs Marli and Lacey. Plaintiffs are thus entitled to punitive damages in an amount to be determined at trial. 42 U.S.C. § 1981a.

### THIRD CAUSE OF ACTION

### TITLE VII: HOSTILE WORK ENVIRONMENT

### (MARLI BROWN and LACEY SMITH against ALASKA AIRLINES)

371. Plaintiffs incorporate and adopt by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

372. Under Title VII, employers may not subject employees to harassment or a hostile work environment based upon religion.

373. Alaska Airlines created an environment that was hostile to Marli and Lacey because of their religion.

374. Several Alaska Airlines' policies omit religion as a protected characteristic of employees.

375. Alaska Airlines' nondiscrimination policies often omit religion as a protected classification.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

376. Alaska Airlines' management and other employees subjected Marli to unwelcome comments about her religion, including disparaging her religious beliefs or instructing her to be silent about religion.

377. Alaska Airlines instructed Marli not to speak about religion at work.

378. Alaska Airlines perpetually advocated for the rights of other protected classes and the rights of individuals in those classes to have their voices heard and respected while failing to teach employees to respect the rights and voices of diverse religious perspectives.

379. Alaska Airlines has made multiple public statements highlighting its respect for members of certain protected classes while omitting the protected class of religion.

380. Alaska Airlines disparaged Marli and Lacey's religious beliefs or conduct as "hateful," "discriminatory," and "offensive."

381. Alaska Airlines terminated Marli and Lacey for raising a question about religious discrimination on Alaska's World.

382. The working environment at Alaska Airlines is hostile to Christians like Marli and Lacey and to other religious employees with traditional views of sexual morality.

383. Other flight attendants in Marli and Lacey's position similarly perceived the working environment at Alaska Airlines to be hostile to employees with traditional religious or Christian beliefs.

384. A reasonable religious flight attendant in Marli and Lacey's position would have perceived Alaska Airlines' conduct to be hostile to religious employees.

385. Alaska Airlines affirmed its commitment to a hostile work environment for religious employees by explicitly prohibiting the expression of religious opinions on Alaska's World.

386. In the alternative, Alaska Airlines knew or should have known of the harassment and failed to act reasonably to prevent it. On the contrary, the Defendant ratified the injury by its response.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

387. This work environment was so severely or pervasively hostile to religion as to affect the terms and conditions of Marli and Lacey's employment.

388. As a result of the hostile work environment Marli and Lacey experienced, they suffered lost wages and other damages in an amount to be proven at trial. Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

389. Defendant Alaska Airlines' conduct was intentional and done with malice or reckless indifference for Marli and Lacey's rights, 42 U.S.C. § 1981a.

### FOURTH CAUSE OF ACTION

### TITLE VII: RETALIATION FOR OPPOSING UNLAWFUL RELIGIOUS AND SEX DISCRIMINATION

### (MARLI BROWN against ALASKA AIRLINES)

390. Plaintiff incorporates and adopts by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

391. Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C.A. § 2000e-3.

392. Religious discrimination is an unlawful employment practice under Title VII.

393. Sex discrimination is an unlawful employment practice under Title VII.

394. Marli opposed an unlawful employment practice, that is, religious discrimination, by raising concerns that the Equality Act would lead to a suppression of religion and conscience protections.

395. Marli opposed an unlawful employment practice, that is, sex discrimination, by raising concerns that the Equality Act would lead to diminished privacy and safety for women.

396. The comment that Marli posted in Alaska's World was based on her good-faith, reasonable belief that the Equality Act would lead to discrimination based on religion and sex.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

397. Alaska Airlines subjected Marli to adverse employment action, first removing her from her flight schedule and then terminating her.

398. Alaska Airlines retaliated against Marli by firing her because of her opposition to an unlawful employment practice, namely religious discrimination.

399. Alaska Airlines retaliated against Marli by firing her because of her opposition to an unlawful employment practice, namely sex discrimination or the creation of a hostile work environment for women.

400. Specifically, Alaska Airlines' conduct constitutes discrimination on the basis of religion and retaliation under 42 U.S.C. § 2000e-3(a).

401. As a result of the retaliation Marli experienced, she suffered lost wages and other damages in an amount to be proven at trial. Additionally, Plaintiff is entitled to the reasonable costs of this lawsuit, including her reasonable attorneys' fees.

402. Defendant Alaska Airlines' conduct was intentional and done with malice or reckless indifference for Marli's rights, 42 U.S.C. § 1981a.

## FIFTH CAUSE OF ACTION

## VIOLATION OF WASHINGTON'S LAW AGAINST DISCRIMINATION

## (MARLI BROWN against ALASKA AIRLINES)

403. Marli incorporates and adopts by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

404. Alaska Airlines is an employer within the meaning of the Washington Law Against Discrimination, having more than eight employees. Wash. Rev. Code § 49.60.040(11).

405. The State of Washington guarantees "[t]he right to obtain and hold employment without discrimination." Wash. Rev. Code § 49.60.030.

406. The State of Washington also provides that it is an unlawful employment practice "to discriminate against any person in … terms or conditions of employment because of … creed." Wash. Rev. Code § 49.60.180.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

407.   Washington courts have long equated the term "creed" in the Washington Law Against Discrimination with the term "religion" in Title VII of the Civil Rights Act of 1964.

408.   Defendant Alaska Airlines took adverse employment action against Marli by removing her from her flight schedule and subsequently firing her.

409.   Marli's religion was a substantial factor in Alaska Airlines' decision to fire her.

410.   Alaska Airlines' discriminatory practices described above denied Marli compensation and other benefits of employment to which she is entitled and caused her to suffer emotional distress.

411.   Specifically, Alaska Airlines' conduct constitutes discrimination on the basis of religion under Washington Revised Code §§ 49.60.030 and 49.60.180.

412.   Marli is entitled to front pay, back pay, compensatory damages, and injunctive relief to be restored to her position. Additionally, Marli is entitled to the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## SIXTH CAUSE OF ACTION

### VIOLATION OF WASHINGTON'S LAW AGAINST DISCRIMINATION—WORKPLACE HARASSMENT

### (MARLI BROWN against ALASKA AIRLINES)

413.   Marli incorporates and adopts by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

414.   Alaska Airlines is an employer within the meaning of the Washington Law Against Discrimination, having more than eight employees. Wash. Rev. Code § 49.60.040(11).

415.   The State of Washington guarantees "[t]he right to obtain and hold employment without discrimination." Wash. Rev. Code § 49.60.030.

416.   The State of Washington also provides that it is an unlawful employment practice "to discriminate against any person in … terms or conditions of employment because of … creed." Wash. Rev. Code § 49.60.180.

417. Washington courts have long equated the term "creed" in the Washington Law Against Discrimination with the term "religion" in Title VII of the Civil Rights Act of 1964.

418. Flight attendants at Alaska Airlines faced hostile language and conduct because of their religion as Alaska Airlines sought to silence religious voice and opinions in the workplace.

419. Marli opposed Alaska Airline's language and conduct silencing religious employees, regarding it as undesirable and offensive to her as a Christian employee.

420. Alaska Airlines management participated in the conduct and language.

421. This work environment was so severely or pervasively hostile to religion as to affect the terms and conditions of Marli's employment.

422. Alaska Airlines management knew, through complaints or other circumstances, of this conduct and language, and failed to take reasonably prompt and adequate corrective action reasonably designed to end it.

423. Specifically, Alaska Airlines' conduct constitutes discrimination on the basis of religion under Washington Revised Code §§ 49.60.030 and 49.60.180.

424. Marli is entitled to front pay, back pay, compensatory damages, and injunctive relief to be restored to her position. Additionally, Marli is entitled to the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF WASHINGTON'S LAW AGAINST RETALIATION

## (MARLI BROWN against ALASKA AIRLINES)

425. Marli incorporates and adopts by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

426. Alaska Airlines is an employer within the meaning of the Washington Law Against Discrimination, having more than eight employees. Wash. Rev. Code § 49.60.040(11).

427. The State of Washington provides that "[i]t is an unfair practice for any employer … discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter…." Wash. Rev. Code § 49.60.210.

428. In her comments responding to Alaska Airline's announcement of its support for the Equality Act, Marli opposed what she reasonably believed to be discrimination on the basis of religion.

429. In her comments responding to Alaska Airline's announcement of its support for the Equality Act, Marli opposed what she reasonably believed to be discrimination on the basis of sex.

430. A substantial factor in Alaska Airline's decision to terminate Marli was her opposition to what she reasonably believed to be discrimination.

431. Specifically, Alaska Airlines' conduct constitutes discrimination for opposing discrimination under Washington Revised Code § 49.60.210.

432. Marli is entitled to front pay, back pay, compensatory damages, and injunctive relief to be restored to her position. Additionally, Marli is entitled to the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF WASHINGTON'S LAW AGAINST DISCRIMINATION

## (MARLI BROWN against AFA)

433. Marli hereby incorporates and adopts by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

434. AFA is a labor organization subject to Washington's Law Against Discrimination because it "exists for the purpose, in whole or in part, of dealing with employers concerning grievances or terms or conditions of employment, or for other mutual aid or protection in connection with employment." Wash. Rev. Code § 49.60.040(16).

435. The State of Washington provides that "[i]t is an unfair practice for any labor union or labor organization: (1) To deny … full membership rights and privileges to any person because of … creed…." Wash. Rev. Code § 49.60.190.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

436. The State of Washington also provides: "It is an unfair practice for any labor union or labor organization: … (3) To discriminate against any member … because of … creed…." Wash. Rev. Code § 49.60.190.

437. AFA discriminated against Marli on the basis of religion by expressing hostility toward her religious beliefs.

438. AFA discriminated against Marli on the basis of religion by failing to advocate for her right to be free from religious discrimination.

439. AFA discriminated against Marli by failing to oppose Alaska Airlines' retaliation against her after she raised concerns about religious and sex discrimination.

440. AFA discriminated against Marli on the basis of religion by acquiescing in and cooperating with a religiously hostile work environment.

441. After Adams and Taylor reviewed Marli's statement for her grievance hearing explaining her concerns about religious discrimination, AFA demonstrated its intent not to defend Marli from religious discrimination by telling her not to submit her statement to Link nor read it during the grievance hearing. In so doing, it acquiesced in and cooperated with a religiously discriminatory work environment.

442. AFA treated employees disciplined for non-religious reasons better than it treated Marli, who was facing termination because of her religious beliefs or practices.

443. When AFA advocated for Mary McChesney, Jenn Duvall, and other flight attendants who were accused of violating the same policies as Marli, those employees received only suspensions rather than terminations.

444. While AFA declined to represent Marli during arbitration regarding her religious post, AFA did represent Jenn Duvall during arbitration regarding political social media posts.

445. In representing Marli during the grievance process, AFA discriminated against her on the basis of religion when it failed to assert that Alaska Airlines treated similarly situated employees more favorably than Marli.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

446. In representing Marli during the grievance process, AFA discriminated against her on the basis of religion when it failed to point to Alaska Airlines' violation of its own policies about posts on Alaska's World, namely the Three Strikes policy.

447. AFA discriminated against Marli on the basis of religion by explicitly counseling her not to speak about religion at work.

448. AFA discriminated against Marli on the basis of religion by not defending her right to express her religious opinion in the same manner that others were allowed to express their opinions.

449. AFA's discriminatory representation described above resulted in Marli's being denied compensation and other benefits of employment to which she was entitled and caused her to suffer emotional distress and great inconvenience.

450. Specifically, AFA's conduct constitutes discrimination on the basis of religion under Washington Revised Code §§ 49.60.190.

451. Marli is entitled to front pay, back pay, and compensatory damages. Additionally, Marli is entitled to the reasonable costs of this lawsuit, including reasonable attorneys' fees.

### NINTH CAUSE OF ACTION

### VIOLATION OF OREGON'S UNLAWFUL DISCRIMINATION IN EMPLOYMENT PROVISIONS—RELIGIOUS DISCRIMINATION

### (LACEY SMITH against ALASKA AIRLINES)

452. Lacey incorporates and adopts by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

453. Alaska Airlines is an employer within the meaning of the Oregon's Unlawful Discrimination in Employment provisions, having one or more employees. Or. Rev. Stat. § 659.001(4)(a).

454. Under Oregon Revised Code § 659A.030(a) and (b), "It is an unlawful employment practice [f]or an employer, because of an individual's … religion … to … discharge the

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

individual from employment … [or] to discriminate against the individual … in terms, conditions or privileges of employment."

455.  Defendant Alaska Airlines took adverse employment action against Lacey by removing her from her flight schedule and subsequently firing her.

456.  Alaska Airlines discharged Lacey because of the online comments she posted on the Alaska's World article.

457.  Alaska Airlines would not have terminated Marli and Lacey in the absence of her religion.

458.  Alaska Airlines' discriminatory practices described above denied Lacey compensation and other benefits of employment to which she is entitled.

459.  Specifically, Alaska Airlines' conduct constitutes discrimination on the basis of religion under Oregon Revised Code § 659A.030(a) and (b).

460.  Lacey is entitled to front pay, back pay, and injunctive relief to be restored to her position. Additionally, Lacey is entitled to the reasonable costs of this lawsuit, including reasonable attorneys' fees.

### TENTH CAUSE OF ACTION

### VIOLATION OF OREGON'S UNLAWFUL DISCRIMINATION IN EMPLOYMENT PROVISIONS—WORKPLACE HARASSMENT

### (LACEY SMITH against ALASKA AIRLINES)

461.  Lacey incorporates and adopts by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

462.  Alaska Airlines is an employer within the meaning of the Oregon Unlawful Discrimination in Employment provisions, having one or more employees. Or. Rev. Stat. § 659.001(4)(a).

463.  Under Oregon Revised Code § 659A.030(a) and (b), "It is an unlawful employment practice [f]or an employer, because of an individual's … religion … to … discharge the individual from employment … [or] to discriminate against the individual … in terms, conditions or privileges of employment."

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

464. "Any person claiming to be aggrieved" by unlawful employment discrimination under § 659A.030 "may file a civil action in circuit court." Or. Rev. Code § 659A.885. Oregon does not require the exhaustion of administrative remedies.

465. Flight attendants at Alaska Airlines faced hostile language and conduct because of their religion as Alaska Airlines sought to silence religious voice and opinions in the workplace.

466. Lacey opposed Alaska Airline's language and conduct silencing religious employees, regarding it as undesirable and offensive to her as a Christian employee.

467. Alaska Airlines management participated in the conduct and language.

468. This work environment was so severely or pervasively hostile to religion as to affect the terms and conditions of Lacey's employment.

469. Alaska Airlines management knew, through complaints or other circumstances, of this conduct and language, and failed to take reasonably prompt and adequate corrective action reasonably designed to end it.

470. Specifically, Alaska Airlines' conduct constitutes discrimination on the basis of religion under Oregon Revised Code § 659A.030(a) and (b).

471. Lacey is entitled to front pay, back pay, and injunctive relief to be restored to her position. Additionally, Lacey is entitled to the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## ELEVENTH CAUSE OF ACTION

## VIOLATION OF OREGON'S UNLAWFUL DISCRIMINATION IN EMPLOYMENT PROVISIONS—RELIGIOUS DISCRIMINATION

### (LACEY SMITH against AFA)

472. Lacey hereby incorporates and adopts by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

473. AFA is a labor organization subject to Oregon's Unlawful Discrimination in Employment provisions because it is "constituted for the purpose, in whole or in part, of collective bargaining or in dealing with employers concerning grievances, terms or conditions of

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

employment or of other mutual aid or protection in connection with employees." Or. Rev. Stat. § 659A.001.

474. Under Oregon Revised Code § 659A.030(c), "It is an unlawful employment practice [f]or a labor organization, because of an individual's … religion … to … discharge the individual from employment … [or] to discriminate in any way against the individual…."

475. "Any person claiming to be aggrieved" by unlawful employment discrimination under § 659A.030 "may file a civil action in circuit court." Or. Rev. Code § 659A.885. Oregon does not require the exhaustion of administrative remedies.

476. AFA discriminated against Lacey on the basis of religion by expressing hostility toward her religious beliefs.

477. AFA discriminated against Lacey on the basis of religion by failing to advocate for her right to be free from religious discrimination.

478. AFA discriminated against Lacey on the basis of religion by acquiescing in and cooperating with a religiously hostile work environment.

479. AFA treated employees disciplined for reasons other than religion better than it treated Lacey, who was facing termination because of her religious beliefs or practices.

480. When AFA advocated for Mary McChesney, Jenn Duvall, and other flight attendants who were accused of violating the same policies as Lacey, those employees received only suspensions rather than terminations.

481. While AFA declined to represent Lacey during arbitration regarding her religious post, AFA did represent Jenn Duvall during arbitration regarding political social media posts.

482. In representing Lacey during the grievance process, AFA discriminated against her on the basis of religion when it failed to assert that Alaska Airlines treated similarly situated employees more favorably than Lacey.

483. AFA's discriminatory representation described above resulted in Lacey's being denied compensation and other benefits of employment to which she was entitled and caused her to suffer emotional distress and great inconvenience.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

484. Specifically, AFA's conduct constitutes discrimination on the basis of religion under Oregon Revised Code § 659A.030(c).

485. Lacey is entitled to front pay and back pay, compensatory damages, and punitive damages. Additionally, Lacey is entitled to the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## TWELVETH CAUSE OF ACTION

## TITLE VII: RELIGIOUS DISCRIMINATION, DISPARATE IMPACT
## (MARLI BROWN and LACEY SMITH against ALASKA AIRLINES)

486. Plaintiffs incorporate and adopt by reference the allegations in the preceding paragraphs of the Amended Complaint as if fully set forth herein.

487. Alaska Airlines is an employer within the meaning of Title VII. 42 U.S.C. § 2000e(b).

488. Under Title VII, it is an unlawful employment practice for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... religion." 42 U.S.C. § 2000e-2(a)(2).

489. Alaska Airlines had a policy or practice of disciplining employees for expressing, mentioning, or suggesting that they hold traditional beliefs on issues related to sexual morality, sexual orientation, or gender identity.

490. Alaska Airlines' policy or practice was neither job-related for the position in question nor consistent with business necessity.

491. Less discriminatory alternatives, including but not limited to discussions about any concerns rather than disciplining or terminating such employees, existed to achieve Defendants' stated business purposes.

492. This policy has a disparate impact on religious employees and Christian employees, such as Marli and Lacey.

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

493. This policy has a disparate impact on Christian employees with traditional religious views of sexual morality, such as Marli and Lacey.

494. As a direct, legal and proximate result of the discrimination, Plaintiffs have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

495. Plaintiffs are entitled to front pay, back pay, restitution, compensatory damages, and injunctive relief to be restored to their positions. Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A.   Declare that the acts and practices complained of herein are in violation of Title VII, Washington law, and Oregon law;

B.   Enjoin and permanently restrain these violations of Title VII, Washington law, and Oregon law;

C.   Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for Plaintiffs and which eradicate the effects of its past and present unlawful employment practices;

D.   Order Defendant Alaska Airlines to place Plaintiffs in the positions they would have occupied but for Defendant's discriminatory and retaliatory treatment of them, and make them whole for all earnings they would have received but for Defendant Alaska Airlines' discriminatory and retaliatory treatment, including, but not limited to, wages, seniority, and other lost benefits, including interest pre-judgment and post-judgment;

E.   Order Defendant Alaska Airlines to make Plaintiffs whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of herein, including relocating expenses and job search expenses, in amounts to be determined at trial;

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

F. Order Defendant Alaska Airlines to make Plaintiffs whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of herein, including emotional pain and suffering, humiliation, inconvenience, and loss of enjoyment of life, in amounts to be determined at trial;

G. Order Defendant Alaska Airlines to pay Plaintiffs punitive damages for its malicious, oppressive, or reckless conduct, in amounts to be determined at trial;

H. Order Defendant AFA to make Plaintiffs whole for all earnings they would have received but for Defendant AFA's discriminatory treatment, including, but not limited to, wages, seniority, and other lost benefits, including interest prejudgment and post-judgment;

I. Order Defendant AFA to make Plaintiffs whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein, including relocating expenses and job search expenses, in amounts to be determined at trial;

J. Order Defendant AFA to make Plaintiffs whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of herein, including emotional pain and suffering, humiliation, inconvenience, and loss of enjoyment of life, in amounts to be determined at trial;

K. Order Defendant AFA to pay Plaintiffs punitive damages for its malicious, oppressive, or reckless conduct, in amounts to be determined at trial;

L. Award plaintiffs the cost of this action together with reasonable attorneys' fees, against all Defendants, jointly and severally, as provided by § 706(k) of Title VII, 42 U.S.C. § 2000e-5(k), Wash. Rev. Code § 49.60.030, and Or. Rev. Stat. § 659A.885;

J. Grant such other and further relief as this Court may deem just and proper in the public interest.

AMENDED COMPLAINT - 57

No. 2:22-CV-00668-BJR

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

///

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

Respectfully submitted this 26th day of July 2022.

_/s/ Joel B. Ard_

Jeffrey C. Mateer*                          Joel B. Ard
David J. Hacker*                            WSBA # 40104
Stephanie N. Taub*                          ARD LAW GROUP PLLC
FIRST LIBERTY INSTITUTE                      P.O. Box 11633
2001 West Plano Pkwy., Ste. 1600            Bainbridge Island, WA 98110
Plano, TX 75075                             (206) 701-9243
(972) 941-4444                              joel@ard.law
jmateer@firstliberty.org
dhacker@firstliberty.org
staub@firstliberty.org

Sharon Fast Gustafson*
Rebecca R. Dummermuth*
FIRST LIBERTY INSTITUTE
227 Pennsylvania Ave. S.E.
Washington, DC 20003
202-921-4105
sgustafson@firstliberty.org
bdummermuth@firstliberty.org

*Admitted _pro hac vice_

Attorneys for Plaintiffs

AMENDED COMPLAINT - 59

No. 2:22-CV-00668-BJR

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
(206) 701-9243