The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARLI BROWN and LACEY SMITH,
Plaintiffs,

v.

ALASKA AIRLINES, INC., and
ASSOCIATION OF FLIGHT ATTENDANTS-
CWA, AFL-CIO,
Defendants.

NO. 2:22-cv-668

**ORDER GRANTING DEFENDANT ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO'S MOTION TO DISMISS**

### I.  INTRODUCTION

This matter comes before the Court on a Motion to Dismiss filed by Defendant Association of Flight Attendants, CWA, AFL-CIO ("AFA" or the "Union"). AFA seeks dismissal of two of Plaintiffs' three claims against it: (1) the Eighth Cause of Action, which is a claim by Plaintiff Marli Brown against AFA, based on the Washington Law Against Discrimination, RCW §§ 49.60.010, *et seq*.; and (2) the Eleventh Cause of Action, a claim by Plaintiff Lacey Smith against AFA, based on Oregon's Unlawful Discrimination in Employment law, OR Rev. Stat. § 659A.030(c). AFA argues that both state-law claims are preempted by the federal duty of fair representation, which is grounded in the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151, *et seq*. Having reviewed the parties' briefs and the relevant caselaw, the Court finds and rules as follows.

II.     BACKGROUND

Plaintiffs Marli Brown, a resident of Washington, and Lacey Smith, a resident of Oregon, were flight attendants employed by Defendant Alaska Airlines ("Alaska"). Am. Compl., ¶ 1, Dkt. No. 39. In February 2021, Alaska initiated disciplinary proceedings against both women, based on comments the women posted on a company-wide intranet site known as "Alaska's World." The comments were in response to a statement Alaska made expressing support for the Equality Act, proposed federal legislation that would "add 'sexual orientation and gender identity' as protected classes to a variety of federal statutes." Am. Compl., ¶ 2. According to Plaintiffs, the legislation "would curtail the applicability of the Religious Freedom Restoration Act." *Id*. Brown and Smith independently posted comments they claim were grounded in their religious convictions, criticizing the Equality Act and challenging Alaska's statement of support.[1] Alaska removed the comments and suspended Plaintiffs pending further investigation, asserting that the comments had violated the company's anti-discrimination policies.

Defendant AFA is the certified union for Alaska Airlines flight attendants, with exclusive authority to represent the flight attendants, including Plaintiffs, in the grievance procedures set forth in the parties' governing collective bargaining agreement ("CBA"). Am. Compl., ¶ 27 (citing RLA); ¶¶ 131-37. After Alaska suspended Plaintiffs, representatives of AFA contacted Plaintiffs and attended meetings with Alaska on their behalf. According to Plaintiffs, during

---

[1] Brown wrote, "Does Alaska support: endangering the Church, encouraging suppression of religious freedom, obliterating women rights and parental rights? This act will Force [sic] every American to agree with controversial government-imposed ideology on or be treated as an outlaw. The Equality Act demolishes existing civil rights and constitutional freedoms which threatens constitutional freedoms by eliminating conscience protections from the Civil Rights Act. The Equality act would affect everything from girls' and women's showers and locker rooms to women's shelters and women's prisons, endangering safety and diminishing privacy. Giving people blanket permission to enter private spaces for the opposite sex enables sexual predators to exploit the rules and gain easy access to victims. This is Equality Act [sic][.]" Am. Compl., ¶¶ 73, 117. Smith wrote, "as a company, do you think it's possible to regulate morality?" *Id*., ¶ 219.

ORDER GRANTING DEFENDANT AFA'S
MOTION TO DISMISS

- 2

Brown's meeting, "AFA said little in Marli's defense," and "did not advocate for Marli's rights as a member of a protected class not to face discrimination on the basis of religion." *Id*., ¶¶ 147-48. During Smith's meeting, Plaintiffs allege, AFA "did not advocate for Lacey's right to be free from discrimination on the basis of religion." *Id*., ¶ 243.

In March 2021, after meeting with the two flight attendants and their union representatives, Alaska terminated both women, citing the women's "Alaska's World" posts and the company's employment policies prohibiting discrimination and harassment. Am. Compl., ¶¶ 156, 252. AFA appealed the terminations on both Plaintiffs' behalf, and represented Plaintiffs at the subsequent hearings. *Id*., ¶¶ 163, 259-60. However, after Alaska denied Plaintiffs' appeal of their terminations, AFA made a determination it would no longer represent Plaintiffs in the grievance process, including arbitration proceedings. *Id*., ¶¶ 194, 282.

Plaintiffs filed the instant lawsuit against both Alaska Airlines and the AFA. The essence of the Amended Complaint is that Defendants discriminated against the Plaintiffs on the basis of their Christian faith. In their suit against the Union, Plaintiffs claim that "[b]ecause of [Plaintiffs'] religious beliefs, AFA did not defend [Plaintiffs] as vigorously as it defends other flight attendants." Am. Compl., ¶¶ 133, 242. This motion pertains to only two of the three claims against AFA, seeking dismissal of Brown's WLAD claim against AFA, and a similar claim under the Oregon Unlawful Discrimination in Employment law, brought by Smith.[2]

---

[2] In its Motion to Dismiss, AFA briefly references the third claim against it, the "Second Cause of Action," brought under Title VII of the federal Civil Rights Act of 1964, but makes no argument for why that claim should be dismissed.

ORDER GRANTING DEFENDANT AFA'S
MOTION TO DISMISS

- 3

### III. DISCUSSION

#### A. *Motion to Dismiss Standard*

The allegations in a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). On a motion to dismiss under Federal Rule 12(b)(6), a complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). Well-pled allegations in the complaint are assumed to be true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001).

#### B. *Whether Plaintiffs' State-Law Claims Are Preempted by Federal Law*

> 1. *The Duty of Fair Representation Preempts State-Law Claims That Are Based on Union's Role as Collective Bargaining Representative*

AFA seeks dismissal of the two state-law claims against it, arguing that they are preempted by the "duty of fair representation," an implied cause of action grounded in the RLA. *See Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192 (1944); *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979).[3] That duty serves as a check on a union's authority, under the

---

[3] The Supreme Court has also "recognized on numerous occasions that '[t]he duty of fair representation is ... implicit in the National Labor Relations Act.'" *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 67 (1981) (citing *Electrical Workers v. Foust*, 442 U.S. 42, 46, n. 8). There appears to be no relevant distinction in the interpretation of this duty,

ORDER GRANTING DEFENDANT AFA'S
MOTION TO DISMISS

- 4

RLA, to act as the exclusive bargaining representative of its members. *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 600 (9th Cir. 2019) ("[T]he union's authority as exclusive bargaining representative carries with it a correlative duty … to represent fairly the interests of all bargaining-unit members during the negotiation, administration, and enforcement of collective-bargaining agreements.") (cleaned up, citing *Foust*, 442 U.S. at 46). Under the duty of fair representation, a union has an obligation to "represent all members ... without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Jones v. Union Pac. R.R.*, 968 F.2d 937, 941 (9th Cir. 1992) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). The duty "applies to all representational activity in which the union engages, including the 'negotiation, administration, and enforcement of collective bargaining agreements.'" *Madison v. Motion Picture Set Painters & Sign Writers Loc. 729*, 132 F. Supp. 2d 1244, 1256 (C.D. Cal. 2000) (quoting *Foust,* 442 U.S. at 47; *Airline Pilots Ass'n v. O'Neil,* 499 U.S. 65, 67 (1991)). Relevant to the instant case, "[t]he duty to investigate and file grievances is a core function of union representation." *Thompson v. Int'l Bricklayers & Allied Craftworkers Union, Loc. 1 of Washington*, No. C12-2066Z, 2013 WL 3865073, at *4 (W.D. Wash. July 24, 2013) (citing *Tenorio v. N.L.R.B.*, 680 F.2d 598, 601 (9th Cir.1982)).

      Federal courts, including the Ninth Circuit, have held that the federal duty of fair representation preempts state-law claims that arise out of the union's role "as its members'

---

whether it be derived from the NLRA or the RLA. *See Foust*, 442 U.S. at 47 ("The duty of fair representation is also implicit in the National Labor Relations Act, . . . because that statute, like the Railway Labor Act, affords unions exclusive power to represent all employees of a bargaining unit."); *Sisco v. Consol. Rail Corp.,* 732 F.2d 1188, 1192 (3d Cir. 1984) ("[T]he [Supreme Court] characterized the source of the duty of fair representation under the NLRA as identical to that under the RLA.") (citing *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151 (1983)).

ORDER GRANTING DEFENDANT AFA'S
MOTION TO DISMISS

- 5

exclusive collective bargaining representative." *See Adkins v. Mireles*, 526 F.3d 531, 539-40 (9th Cir. 2008) ("The federal statutory duty which unions owe their members to represent them fairly . . . displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative.").[4] *Adkins* did not involve state-law antidiscrimination claims, and the Ninth Circuit has not expressly addressed whether the duty of fair representation preempts claims under a state's antidiscrimination statute. However, nothing in *Adkins* suggests that the duty should preempt certain state-law claims arising in the context of the union's representation, but not others; to the contrary, the preemptive scope of the duty of fair representation is described in *Adkins* as being quite broad: "the duty of fair representation occupies the field of regulation of union-member relations when a union carries out its representational functions."[5] *Adkins*, 526 F.3d at 541–42.

Furthermore, numerous district courts in the Ninth Circuit, including this Western District of Washington, have applied *Adkins* to hold that the duty of fair representation preempts claims brought under state antidiscrimination statutes, where those claims arose in the context of the union's representation of the employee in the grievance process. *See, e.g., Thompson*, 2013 WL 3865073, at *4 (plaintiffs' WLAD claims "are preempted because they are based on conduct that falls squarely within the Union's duty not to discriminate within "the normal incidents of the union-employee relationship.") (quoting *Adkins*, 526 F.3d at 539–40); *Wright v. N. Am. Terrazo*,

---

[4] In claiming that the Ninth Circuit has allowed a WLAD claim against a union to be adjudicated on substantive grounds, Plaintiffs misrepresent the holding in *McClain v. Int'l Ass'n of Machinists & Aerospace Workers* 606 Fed. Appx. 858, 859-60 (9th Cir. 2015). As AFA notes, that case affirmed dismissal of a WLAD claim *against the employer*, not against the union.

[5] This language belies Plaintiffs' assertion that *Adkins* was based on a conflict preemption, rather than a field preemption, analysis. The preemption doctrine that *Adkins* observed "has not been rigidly applied" was the preemption of NLRB jurisdiction under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244–45 (1959), not preemption by the duty of fair representation. *See Adkins*, 526 F.3d at 539.

ORDER GRANTING DEFENDANT AFA'S
MOTION TO DISMISS

- 6

1  No. C12-2065JLR, 2013 WL 441517, at *6 (W.D. Wash. Feb. 5, 2013) ("Mr. Wright brings a

2  claim for discrimination on the basis of race under the WLAD. . . . The substance of Mr. Wright's

3  WLAD claim is that the Union discriminated against him, an action that falls under the duty of

4  fair representation. . . . As such, Mr. Wright's claim for racial discrimination under WLAD is

5  preempted by the duty of fair representation, and the court grants the motion and dismisses Mr.

6  Wright's claim with prejudice."). Pursuant to the reasoning of these cases, it is clear that the duty

7  of fair representation will preempt any state-law claims—including statutory antidiscrimination

8  claims—arising out of a union's performance of its role as collective bargaining representative.

9        *2.  Whether Plaintiffs' WLAD and Oregon Antidiscrimination Claims Are Preempted*

10        Plaintiffs are correct that not all state-law claims against a union are preempted by the

11  duty of fair representation. Under *Adkins*, however, "[t]o bring a successful state law action,

12  aggrieved workers must make a showing of additional duties, if they exist, beyond the normal

13  incidents of the union-employee relationship. Such duties must derive from sources other than the

14  union's status as its members' exclusive collective bargaining representative, such as an express

15  provision of the collective bargaining agreement or a collateral contract." *Adkins*, 526 F.3d at

16  539–40 (citing *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 374 (1990)).

17        Plaintiffs here have failed to allege any "additional duties, . . . beyond the normal incidents

18  of the union-employee relationship," giving rise to their claims. Under the RLA, the Union

19  already owes Plaintiffs a duty not to treat them in any way that is "arbitrary, discriminatory, or in

20  bad faith." *Jones*, 968 F.2d at 941. Plaintiffs fail to explain in what way this duty is distinct from

21  obligations under the state-law antidiscrimination statutes. Instead, the only interactions Plaintiffs

22  have alleged they had with AFA and its representatives took place within the context of AFA

acting as Plaintiffs' "exclusive collective bargaining representative," representing Plaintiffs in the disciplinary and grievance procedures with Alaska. For example:

- "During the March 4 [grievance] meeting [with Alaska], AFA said little in Marli's defense," Am. Compl., ¶ 147;

- "[AFA representative] Taylor did not advocate for Marli's rights as a member of a protected class not to face discrimination on the basis of religion," *id.*, ¶ 148;

- "AFA failed to assert a religious discrimination claim in the grievance and arbitration process," *id.*, ¶ 155;

- "AFA discriminated against Marli on the basis of religion by labeling her beliefs as hurtful and wrong and refusing to assert her protections as a member of a protected class," *id.*, ¶ 186;

- "Because of Lacey's religious beliefs, AFA did not defend Lacey as vigorously as it defends other flight attendants," *id.*, ¶ 242

- "[AFA representative] Maller did not advocate for Lacey's right to be free from discrimination on the basis of religion," *id.*, ¶ 243

- "The Union declined to represent Lacey further in arbitration, continuing to ignore the company's religious discrimination and retaliation against her," *id.*, ¶ 282.

"To determine whether [a plaintiff's] state law claims assert rights separate from those secured by the federal duty of fair representation, the court must look to the conduct at the heart of the controversy." *Madison*, 132 F. Supp. 2d at 1257 (C.D. Cal. 2000) (citing *Chaulk Services, Inc. v. Massachusetts Comm'n Against Discrimination,* 70 F.3d 1361, 1365 (1st Cir.1995). All of the Union's conduct outlined above is alleged to have occurred during the course of the grievance process, and thus "relates to the Union's duty to fairly represent its members." Plaintiffs have not alleged any conduct other than that occurring within the scope of AFA's representation; and they have not identified any potential source of a duty AFA had towards them, outside the duty of fair representation. Their state-law claims are therefore preempted by the RLA duty of fair

ORDER GRANTING DEFENDANT AFA'S
MOTION TO DISMISS

- 8

representation. *Adkins*, 526 F.3d at 541 (where "[c]onduct was inseparable from [union representatives'] performance of their role as collective bargaining representatives, . . . [state-law claim] is inextricably linked to [union representatives'] performance of duties owed in their capacity as union representatives" and therefore preempted.).

Plaintiffs have attempted to distance some of their allegations against AFA from AFA's role as union representative. For example, Plaintiffs aver that AFA "not only failed to vigorously represent and defend Marli and Lacey against the Airline's religious discrimination but also discriminated against them because of their religious beliefs and actively undermined their ability to assert their federal and state protections against such discrimination." Am. Compl., ¶ 1. Digging only slightly deeper into the facts alleged in the pleading, however, demonstrates that *how* AFA is alleged to have discriminated against Plaintiffs is rooted exclusively in the role AFA played in Plaintiffs' grievance process, and cannot be severed from AFA's role as Plaintiffs' bargaining representative. Where Plaintiffs allege that "AFA reinforced th[e] company culture" that was "hostile toward religion," the only allegations supporting this claim concern either AFA's alleged failure to fairly and rigorously advocate for them during the grievance hearings, or its decision not to represent them in arbitration. *Id*., ¶ 8. Because "this conduct [is] inseparable from [AFA's] performance of [its] role as collective bargaining representative," and "[b]ecause the duty of fair representation occupies the field of regulation of union-member relations when a union carries out its representational functions," Plaintiffs' state-law claims are preempted. *Adkins*, 526 F.3d at 541–42.

### C. Plaintiffs' State-Law Claims Against AFA Are Dismissed With Prejudice

Customarily, a court should liberally allow amendment of a complaint if such amendment

ORDER GRANTING DEFENDANT AFA'S
MOTION TO DISMISS

- 9

is not demonstrably futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In this case, however, it is undisputed that the six-month statute of limitations on any duty of fair representation claim has run. *Delcostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 169–70 (1983); *Kelly v. Burlington N.R. Co.*, 896 F.2d 1194, 1197 (9th Cir. 1990) (statute of limitations on breach of duty of fair representation claim is six months). Such claim accrues when the plaintiff knew or should have known that the union breached its duty. *Galindo v. Stoody Co.,* 793 F.2d 1502, 1509 (9th Cir.1986). The *latest* offending action alleged in the Amended Complaint is AFA's decision not to represent Plaintiffs in arbitration, events that took place on June 11, 2021 (Brown) and July 1, 2021 (Smith). Am. Compl. ¶¶ 194; 282. This lawsuit was filed on May 17, 2022, well past expiration of the six-month limitations period. Plaintiffs' two state-law claims are therefore dismissed with prejudice and without leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant AFA's Motion to Dismiss. Causes of Action Eight and Eleven are DISMISSED with prejudice.

DATED this 23rd day of November, 2022.

Barbara Jacobs Rothstein
U.S. District Court Judge