The Honorable Barbara J. Rothstein

1

2

3

4        **UNITED STATES DISTRICT COURT**
5       **WESTERN DISTRICT OF WASHINGTON**
            **AT SEATTLE**
6
**MARLI BROWN** and **LACEY SMITH**,
7
                *Plaintiffs*,
8
9        v.                                  No. 2:22-CV-668-BJR

10  **ALASKA AIRLINES, INC.**, and           **PLAINTIFFS' MOTION FOR SUMMARY**
    **ASSOCIATION OF FLIGHT**                **JUDGMENT**
11  **ATTENDANTS-CWA, AFL-CIO**,

12                *Defendants*.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Pls.' Motion for Summary Judgment
*Brown v. Alaska Airlines*, No. 2:22-CV-668-BJR

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

# TABLE OF CONTENTS

Table Of Contents ......................................................................................................... 1

Introduction ................................................................................................................. 1

Statement of Undisputed Facts ................................................................................... 2

    I.   Plaintiffs are Christians with a demonstrated track record of love toward the vulnerable and compassion for others ................................................................. 2

    II.  Plaintiffs were exceptional flight attendants at Alaska Airlines. ................................ 3

    III. Alaska Airlines encouraged a culture of open dialogue. ................................ 4

    IV. Despite encouraging open and critical dialogue, Alaska Airlines fired Plaintiffs for their comments on an Equality Act Article. ........................................... 5

Standard of Review ..................................................................................................... 7

Argument ..................................................................................................................... 7

    I.   Disparate Treatment: Alaska Airlines discriminated against Plaintiffs because of their religious beliefs and practices. ........................................................ 7

    II.  Disparate Impact: Alaska Airlines' policies have a disparate impact on religious employees. ....................................................................................... 20

    III. Retaliation: The Company retaliated against Marli Brown for complaining of religious and sex discrimination and requesting a religious accommodation............ 21

    IV. The Union discriminated because of Plaintiffs' religious beliefs. .............................. 24

    V.  Hostile Work Environment: Alaska Airlines' working environment is hostile toward religion in general and Christianity in particular. ........................................... 27

Conclusion ................................................................................................................ 30

PLS.' MOTION FOR SUMMARY JUDGMENT - 1

BROWN V. ALASKA AIRLINES, 2:22-CV-668-BJR

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

**INTRODUCTION**

Alaska Airlines, Inc. ("the Company" or "Alaska Airlines") fired two exceptional flight attendants because of their religious beliefs. Plaintiffs Marli Brown and Lacey Smith are Christians who hold traditional Christian beliefs, including the belief that everyone should be treated with kindness and the belief that there are only two sexes.

Promising a culture of open dialogue, Alaska Airlines encouraged employees to ask questions, have difficult, courageous conversations with each other, and share their diverse perspectives. Yet, when Plaintiffs relied on that promise and posted a comment on the Company's employee-only message board questioning the Company's support of the proposed Equality Act, Alaska Airlines disparaged their religious beliefs, treated them as safety risks, and terminated them. The Company then refused to reinstate them, treating them worse than flight attendants who were reinstated after making racist remarks in front of passengers, telling a coworker to expose her breasts to a passenger, and inappropriately touching a woman on a plane. The Company's disdain for employees with traditional Christian beliefs is evident.

Under *Bostock*'s but-for causation test, courts are directed "to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020). Applying that test, if changing Plaintiffs' religious beliefs would change the outcome such that Alaska Airlines would not have fired them, then religious discrimination occurred. Alaska Airlines did not investigate or discipline other employees for comments expressing their religious or moral beliefs when those beliefs aligned with the Company's. Thus, but-for Plaintiffs' religious beliefs, the Company would not have fired them. This is religious discrimination, plain and simple.

The Company admits it fired Plaintiffs because of their comments on an internal company website called Alaska's World. It fired Marli for expressing her concern as a Christian woman about the rights, safety, and privacy of women and people of faith. It fired Lacey for suggesting that she holds traditional Christian beliefs about morality. The Company's extreme reaction to Plaintiffs' comments contradicted the Company's treatment of other employees, including

employees who made racist comments on Alaska's World, who direct-messaged harassing comments to a coworker, and who made a threat of violence against a protected class.

Title VII forbids employers from regulating the religious or moral belief systems of their employees under penalty of termination. Employers may not condition employment on sharing the Company's beliefs when those beliefs conflict with an employee's religious faith. Title VII protects these employees from discrimination.

Plaintiffs seek summary judgement as to liability on their claims that Alaska Airlines and the Association of Flight Attendants ("AFA" or "the Union") discriminated against Plaintiffs on the basis of religion, and that the Company retaliated against Marli, implemented policies that caused a disparate impact, and cultivated a hostile work environment.[1]

STATEMENT OF UNDISPUTED FACTS

**I.** **PLAINTIFFS ARE CHRISTIANS WITH A DEMONSTRATED TRACK RECORD OF LOVE TOWARD THE VULNERABLE AND COMPASSION FOR OTHERS.**

Marli Brown is a Christian who seeks to live in accordance with the tenets set out in the Bible, including its instruction to "do justice, love mercy, and walk humbly with [her] God," Micah 6:8. Excerpt of Record ("ER") ER0002-03 ¶¶2-5, 9-10; ER0037-41, ER0048, 49:1-53:16, 223:5-8. Before joining Alaska Airlines, she attended Rhema Bible College and Oral Roberts University. ER0030-32, 37:19-39:2. She previously worked caring for children and others through Child Protective Services, volunteering at a psychiatric hospital, and as a nanny, in addition to retail employment. ER0030-35, ER0049-50, 37:5-8, 39:20-40:3, 41:5-42:21, 232:15-233:12. She was introduced to Alaska Airlines while volunteering with Make-A-Wish. *Id.* at 47:2-11. Marli counts among her friends flight attendants of all beliefs and backgrounds. ER0002-4 ¶¶5, 8, 11-16.

Lacey Smith is a Christian. ER0119-120, ¶¶1-8; ER0224 ¶18. Her moral beliefs reflect her Christian worldview. ER0119 ¶3; ER0149-58, 34:21-38:7, 106:9-107:13, 110:18-111:16. Lacey wore a cross necklace and cross ring at work as a sign of her religious faith. ER0269-70, 191:16-192:8 (union attesting to habit and reputation); ER0120 ¶8. Lacey attended Northwest Nazarene

---

[1] Plaintiffs do not seek summary judgment as to damages or remedies, requesting those issues be set for trial.

PLS.' MOTION FOR SUMMARY JUDGMENT - 2

*BROWN V. ALASKA AIRLINES*, 2:22-CV-668-BJR

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

University, where she graduated with a communications degree and an emphasis in social work. ER0119, ¶4. Before joining Alaska Airlines, she worked at a behavioral home for disadvantaged girls. ER0146-47, ER0153, 27:3-15, 28:22-29:6, 38:18-39:9.

## II.   PLAINTIFFS WERE EXCEPTIONAL FLIGHT ATTENDANTS AT ALASKA AIRLINES.

Plaintiffs channeled their Christian beliefs about caring for others to provide exceptional customer service as flight attendants. Plaintiffs were both members of AFA, a labor organization.[2]

### A.   Plaintiff Marli Brown had no prior discipline.

Marli was an exceptional flight attendant for 8 years with Alaska Airlines. *See* AS Ans. ¶¶18, 89, 91-92; AFA Ans. ¶¶18, 89, 91-92. Marli had "78 kudos" (compliments from guests) and "no guest concerns." ER0880; ER0423-25, 101:3-103:1; ER0451-52, 210:20-211:14; ER0539-49. She had "no documented performance concerns or coaching." ER0875. Tiffany Lewis, Marli's supervisor for 3-years, testified that Marli was "upbeat, friendly, kind," "respectful of others," "hard worker, gave great customer service to our guests," and she was always courteous and kind to her coworkers. ER0418-25, 93:13-94:14; 96:24-97:15, 100:10-24; 102:7-9; 103:2-105:6.

Marli had no prior formal discipline. ER0073-74, AS RFA-MB 13-14[3]; ER0480, 48:11-15. One false charge had been leveled against her, but it was not substantiated and resulted only in a Record of Discussion ("ROD"). ER0875; ER0875; ER0501-02, 222:1-223:25. RODs are not considered discipline under the Collective Bargaining Agreement ("CBA"). ER0102, AFA RFA-MB 17; ER0652. The ROD was not added to Marli's personnel file until March 30, 2021, eleven days after her Notice of Discharge. ER0999; ER0581. The ROD was only added after Marli asked for evidence that she had been exonerated from the false charge. ER0443-46, 178:7-179:7; 182:6-183:10; ER0457-58, 244:16-245:1; ER0495, 110:8-9.

---

[2] Def. Ass'n of Flight Attendants-CWA's Answer to Am. Compl. & Defenses Thereto" (Dkt. No. 68) ("AFA Ans.") ¶¶5, 18-19, 26-28; Def. Alaska Airlines, Inc.'s Answer to Pls.' Am. Compl. ("AS Ans.") (Dkt. No. 47) ¶¶5, 11.

[3] Alaska's Responses to Marli Brown and Lacey Smith's Requests for Admission are "AS RFA-MB" and "AS RFA-LS." AFA's responses are labeled "AFA RFA-MB" and "AFA RFA-LS."

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

**B.      The Company previously disciplined Plaintiff Lacey Smith because she created a petition about her working conditions.**

Lacey was an excellent flight attendant for over 6 years. AS Ans. ¶¶19, 195, 197-198; AFA Ans. ¶19, 195, 197-198. Lacey had "58 kudos" and no guest concerns. ER1202-03. The "kudos" from guests described her as friendly, caring, cheerful, attentive, warm, and engaging. ER0121 ¶14. Lacey had minor discipline before 2020, but the Company admits that this played no role in its decision to terminate her. ER0177, AS RFA-LS 16.

In 2020, Plaintiff created a petition titled "Depoliticizing Alaska Airlines." ER0699-701, -702-03. The petition pointed out safety and other concerns raised by Alaska Airlines' perceived support for the Black Lives Matter organization, which called for defunding the police, a matter of particular concern to airlines. *Id.*; ER 0124-25 ¶¶30-34. The petition affirmed that signers supported racial equality and opposed the BLM organization. ER0699-700. For Lacey, the petition reflected her opposition to an organization she understood to have an anti-Christian, Marxist ideology. ER0161-62, 121:13-122:13. Alaska Airlines gave Lacey a 30-day suspension because of the petition. ER0534, 61:1-2.

**III.     ALASKA AIRLINES ENCOURAGED A CULTURE OF OPEN DIALOGUE.**

Promising a culture of open dialogue, Alaska Airlines encouraged employees to have difficult, courageous conversations with each other and share diverse perspectives to the conversations it was initiating. AS Ans. ¶¶71, 83, 84; ER0872; ER0824 (encouraging employees "to have open and critical dialogue with their peers and leaders").

As of early 2021, Alaska Airlines' commitment to open dialogue meant that it allowed critical comments on its internal employee-only communication network, Alaska's World, responding to many as an opportunity to educate. *See, e.g.*, ER0691-98; ER0848; ER0850; ER1103-1112; ER0266-68, 175:18-177:7; ER0888; ER0382, 106:6-12. At the time, the Company even allowed comments that other employees found to be offensive, racist, or hurtful, without subjecting the commenters to discipline. ER0393, 131:19-22; ER0380-81, 104:4-25, 105:17-24. For over three years prior to February 2021, Alaska Airlines did not terminate or discipline any

PLS.' MOTION FOR SUMMARY JUDGMENT - 4

*BROWN V. ALASKA AIRLINES*, 2:22-CV-668-BJR

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

other employee for commenting on Alaska's World. ER0073, AS RFA-MB 10. Comments that violated Company policy would simply be removed. ER0578; ER0483-84, 25:4-26:2.

## IV. DESPITE ENCOURAGING OPEN AND CRITICAL DIALOGUE, ALASKA AIRLINES FIRED PLAINTIFFS FOR THEIR COMMENTS ON AN EQUALITY ACT ARTICLE.

On February 25, 2021, Alaska Airlines posted an article in support of the Equality Act on Alaska's World and allowed employees to comment and ask questions. AS Ans. ¶¶73, 76-77, 87-88, 108. Understanding the Company's promises of open dialogue, Lacey posted a simple question: "As a company, do you think it's possible to regulate morality?" ER0705-06, 25:4-27:3. As the Company discussed how to respond, the Union's MEC President Jeff Peterson reached out to the Company about her comment, expressing his disapproval. ER0994-97; ER0727. Alaska Airlines chose not to remove the comment, but instead to engage in dialogue. ER0886-90. Andy Schneider (Senior Vice President of People), on behalf of the Company, posted a response to Lacey's question. *Id.*; AS Ans. ¶109. Her response emphasized that the Company's values require it to support the Act and it "expect[s] our employees to live by these same values." ER0706; ER0483-05.

When Marli saw the article, she decided to research the Equality Act. ER0005 ¶¶23-27. What she found concerned her, particularly the Act's purported impact on women, girls, and people of faith. ER0005-8 ¶¶27-39. She spent the day researching and praying. ER0005 ¶28; ER0056-59, 25:5-28:14; ER0023-27. She saw that Schneider responded to Lacey's question about the Equality Act on Alaska's World and hoped the Company would respond to her concerns as well. ER0006 ¶32. She posted the following comment:

> Does Alaska support: endangering the Church, encouraging suppression of religious freedom, obliterating women rights and parental rights? This act will Force every American to agree with controversial government-imposed ideology on or be treated as an outlaw. The Equality Act demolishes existing civil rights and constitutional freedoms which threatens constitutional freedoms by eliminating conscience protections from the Civil Rights Act. The Equality act would affect everything from girls' and women's showers and locker rooms to women's shelters and women's prisons, endangering safety and diminishing privacy. Giving people blanket permission to enter private spaces for the opposite sex enables sexual predators to exploit the rules and gain easy access to victims. This is Equality Act

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

*Id.* at ¶35; ER0554; AS Ans. ¶¶117-18, 125; ER0711-12.

When Union representative Terry Taylor (LEC President in Seattle) saw Marli's comment, she posted it in a Google Chat with other union reps and wrote, "Can we PLEASE get someone to shut down comments, or put Marli and Lacey in a burlap bag and drop them in a well.... She needs to go!" ER0968-69.[4] In response, Union President Peterson immediately alerted the Company to Marli's post.[5] The Company then deleted Marli and Lacey's comments from the article, shut down further comments, and launched an investigation into both Plaintiffs. ER089399; MBLS00007695; AS Ans. ¶¶126, 227.

On March 4, 2021, Marli met with Tiffany Lewis (Inflight Performance Supervisor). AS Ans. ¶145; ER0433-40, 158:15-165:16; ER0447-48, 184:4-185:11; ER556-65; ER0685-89. Marli gave a statement and requested a religious accommodation. ER0681-83; ER0688. The Company prepared a Fact Finding Report, which serves as the basis for disciplinary decisions. ER0566-76; ER0879-84. According to the report, during the meeting, "Marli identified herself as a Christian who would be connected to the religious protected class," "Marli shared she loves her LBGTQ co-workers and that the company support[s] equity as it relates to them," and Marli's intent was to ask about the impact of the Equality Act on other protected classes, namely religious people, women, and children. ER0882-83; ER0433-40, 158:15-165:16. Lewis believed Marli was sincere. ER0449, 193:6-10; ER0460-61, 257:25-258:12. She recommended Marli be given no discipline. ER0453, 212:9-22.

On March 11, 2021, Lacey met with the Company. ER0669-77; ER0760-64; ER0326-29, 81:21-84:25. The investigators repeatedly asked Lacey what her comment meant. ER0673; ER0761. Lacey explained it was a philosophical question about the law and morality. *Id.* The aggressive questioning brought Lacey to tears. *Id.*; ER0131-33 ¶¶ 69-84.

Carmen Williams (Vice President of Inflight) made the ultimate decision to terminate Plaintiffs. ER0512-13 7:3-8:11. On March 19, 2021, Alaska Airlines gave Plaintiffs their Notices

---

[4] Terry Taylor later served as Marli's union representative. ER0099-100, AFA RFA-MB 6-7.
[5] ER0968-69; ER0892-94; ER0262, 167:1-169:15.

PLS.' MOTION FOR SUMMARY JUDGMENT - 6

*BROWN V. ALASKA AIRLINES*, 2:22-CV-668-BJR

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

of Discharge. ER0581-83; ER0665-67. Under the CBA, termination is not final until the union's grievance of the termination is denied. ER0645-50, §§ C.1 & C.7.

The Union filed grievances. Marli wanted to give a statement at her grievance hearing about religious discrimination, but the Union convinced her not to. ER0016-17 ¶¶80-86; ER0242-44, 27:18-29:5; *see* ER0593-96. At Marli's grievance hearing, the Union did not make any arguments about religious discrimination. ER0099-100, AFA RFA-MB 7; AS Ans. ¶155. During Lacey's grievance hearing, she explained that the Company was engaging in religious discrimination and asked Alaska Airlines for a religious accommodation. ER0742; *see* AS Ans. ¶261; ER-738-39.

Alaska Airlines denied Plaintiffs' grievances on April 13 and May 10, 2021 and refused to grant them a Last Chance Agreement ("LCA") to be reinstated with certain conditions. AS Ans. ¶¶185, 274; ER0903; ER0901; ER0516-17 27:16-28:1, 28:16-24. The Union refused to represent Plaintiffs at arbitration. ER1230; ER0105, AFA RFA-MB 25; ER1227; ER0208, AFA RFA-LS 25; AFA Ans. ¶¶185, 282. Plaintiffs timely filed their EEOC charges, state charges, and Complaint. Dkt. No. 1, Exs. 5, 6, 7, 8.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is warranted on claims, or parts of claims, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## ARGUMENT

### I.   DISPARATE TREATMENT: ALASKA AIRLINES DISCRIMINATED AGAINST PLAINTIFFS BECAUSE OF THEIR RELIGIOUS BELIEFS AND PRACTICES.

Plaintiffs seek summary judgment as to liability on their claims under Title VII and the analogous state laws. Am. Compl. (Dkt. No. 39), Causes of Action 1, 5, 9. Plaintiffs brief these claims together.[6] Title VII's disparate treatment provision prohibits Alaska Airlines[7] from

---

[6] "Courts analyze claims for religious discrimination under ORS § 659A.030 and Title VII together." *Brown v. NW Permanente, P.C.*, No. 3:22-CV-986-SI, 2023 WL 6147178, at *3 (D. Or. Sept. 20, 2023). Washington courts look to Title VII to interpret the Washington Law Against Discrimination ("WLAD"), and WLAD provides "greater employee protections." *Poe v. Waste Connections US, Inc.*, 371 F. Supp. 3d 901, 909 (W.D. Wash. 2019).

[7] Alaska Airlines admits it has more than 500 employees, it is a covered employer under Title VII and Washington and Oregon state employment discrimination laws, it resides in Washington, this Court has jurisdiction, and venue is proper in this district. AS Ans. ¶¶10-14, 21-24, 318, 404, 414.

PLS.' MOTION FOR SUMMARY JUDGMENT - 7

*BROWN V. ALASKA AIRLINES*, 2:22-CV-668-BJR

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

"discharg[ing] any individual, or otherwise [] discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e-2(a)(1). The statute defines "religion" broadly to include "all aspects of religious observance and practice, as well as belief." *Id.* at § 2000e(j); *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015). Employers must accommodate the religious beliefs and practices of their employees unless doing so would cause "undue hardship," substantial increased costs, to the business. *Groff v. DeJoy*, 600 U.S. 447 (2023).

In *Bostock*, the Supreme Court clarified the causation standard for disparate treatment employment discrimination claims. 140 S. Ct. at 1739. Title VII prohibits employers from taking certain actions "because of" religion, sex, race, color, or national origin. The *Bostock* Court elaborated that "Title VII's 'because of' test incorporates the 'simple' and 'traditional' standard of but-for causation." *Id*. "That form of causation is established whenever a particular outcome would not have happened 'but for' the purported cause…. In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Id*. If changing an employee's sex would change the outcome, then sex discrimination occurred. Applying that test here, if changing Plaintiffs' religious beliefs means that Alaska Airlines would not have fired them, then religious discrimination occurred. The undisputed evidence shows that Alaska Airlines fired Plaintiffs because of their religious beliefs and would not have fired Plaintiffs if their religious beliefs were different.

## A. Alaska Airlines fired Marli Brown because of her religious beliefs.

The undisputed direct and circumstantial evidence establishes that Alaska Airlines terminated Marli because of a comment that was an expression of her religious beliefs. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) (Plaintiffs can establish disparate treatment through direct and circumstantial evidence, without *McDonnell Douglas*).

### 1. Marli Brown was fired only because of her comment on Alaska's World.

It is undisputed that the Company terminated Marli's employment for no reason other than her comment on Alaska's World. The Notice of Discharge sets out the alleged reasons for her

termination. ER0067-68, AS RFA-MB 1-2; ER0519-20 30:15-31:17. The Notice of Discharge only discusses Marli's comment on Alaska's World. ER0581-83; ER0464-65 271:19-272:16 (no other reason for termination). Williams, the ultimate decisionmaker, testified that she saw no evidence in anything she reviewed of any other alleged discriminatory statement or conduct by Marli toward any protected class. ER0525-26 36:5-37:3; ER0884 ("no pattern of behavior concerns"). Marli was an exceptional flight attendant for 8 years, with no prior formal discipline, no guest complaints, and many guest compliments. *See* ER0418-25, 93:13-97:15, 100:10-105:6; ER0451-52, 210:20-211:14; ER0540-49; ER0073-74, AS RFA-MB 13-14.

### 2. Marli Brown's comment on Alaska's World was an expression of her religious beliefs, as admitted by the Ultimate Decisionmaker, her Supervisor, Alaska Airlines' Internal Investigation, and the Union.

Defendants admit that Marli's comment is an expression of her religious beliefs. Williams testified that she knew Marli was asserting religious concerns. She testified, "if you read her comment, you can -- you can tell that she's talking about religious concerns that she may have." ER0514 16:4-8. She repeated this testimony. "The way I read that post is that she was concerned about religious rights being impacted by the act, as well as others, and was asking if Alaska supported that." ER0521-23 32:22-33:9, 33:10-34:2. Williams also understood that Marli's expression was religious because she reviewed Marli's file and considered Marli's statement and religious accommodation request.[8] *See* ER0514-15 16:14-17:19; ER0896-99.

Tiffany Lewis, the supervisor who signed Marli's Notice of Discharge at the direction of Williams, knew Marli was expressing her views as a Christian woman and believed her to be sincere. ER0460-61, 257:25-258:12; ER0428, 117:10-24 (Marli explained "where she stands as a Christian woman in regards to the Equality Act"); ER0433-34, 158:15-159:3 (Marli posted "her

---

[8] Marli requested a religious accommodation to be treated equally with regard to expression at work. ER0681-83. Marli's request mirrors EEOC guidance that employers "allow religious expression among employees to the same extent that they allow other types of personal expression that are not harassing or disruptive." "Best Practices for Eradicating Religious Discrimination in the Workplace," EEOC, No. EEOC-NVTA-2008-1, https://www.eeoc.gov/laws/guidance/best-practices-eradicating-religious-discrimination-workplace. Alaska Airlines failed to consider whether Marli's religious beliefs could be accommodated in any other way. *Groff*, 600 U.S. at 473 (requiring consideration of other options). Allowing her to remain employed would not have been an undue hardship. *See id.* at 472-73. The Company's treatment of her request independently violates Title VII.

Pls.' Motion for Summary Judgment - 9

*Brown v. Alaska Airlines*, 2:22-cv-668-BJR

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

views on the Equality Act as a Christian woman"); ER0583. Lewis plainly acknowledged that Marli's comment expressed her sincere concern about women, religious organizations, and religious people. ER0429-30, 121:14-122:7. The Union also found Marli's comment to be "self-evident[ly]" from her religious convictions. ER0265, 170:11-24.

Alaska Airlines' internal investigation reported that "Marli identified herself as a Christian who would be connected to the religious protected class" and Marli's intent with her question was to ask about the impact of the Equality Act on other protected classes, namely religious people, women, and children. ER0883-84; ER0433-40, 158:15-165:16.

### 3. The Company disparaged Marli Brown's Christian beliefs as discriminatory, hateful, and offensive.

Although Alaska Airlines knew Marli was sincerely expressing her concerns as a Christian woman about the Equality Act, it disparaged her beliefs as "hateful," "offensive," and "discriminatory." ER0582. Disparaging statements about an employee's religious beliefs are direct evidence of discrimination. *See Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1095 (9th Cir. 2005) (explaining "clearly sexist, racist, or similarly discriminatory statements or actions by the employer" are "direct evidence" of discrimination); *see also Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005) ("discriminatory remark[s]" are evidence of "discriminatory animus").

For instance, Williams testified that Marli's comment was discriminatory because her comment referred to sex as binary. ER0523-24 34:18-35:5. She testified that it is discriminatory "[b]ecause she's talking about it in terms of one sex or another… She says the opposite sex, so she's talking about either male or female." *Id.* Marli's belief in two sexes is a widely-shared Christian belief based in Genesis. ER1288-90 ¶¶2-4, 9; ER0002-3 ¶¶2-5, 9-10. It absolutely is religious discrimination to disparage this fundamental religious belief as discriminatory, to subject employees to discipline because they hold this religious belief, and to deny an accommodation.

Williams also testified that Marli's comment was discriminatory because of her "safety concerns" about the Equality Act. ER0523-24 34:3-35:5. Marli's comment voiced her religious

beliefs about protecting women and girls from "sexual predators" who may "exploit the rules" to gain access to female safe spaces, such as locker rooms and changing rooms. ER0554; ER0043-47, 156:5-160:13; ER0007-8, -14 ¶¶37-38, 72-73; ER0436-37, 161:19-162:10; ER0454-55, 216:6-217:11; ER0476-77, 312:5-313:8. Marli explained that she was concerned with predatory biological males, regardless of gender identity. ER0595; ER0748. Still, several supervisors testified that there was no way for Marli to raise her concerns about the Equality Act's impact on women's safety without violating company policy. ER0523-24 34:9-35:5 (still discriminatory even without "sexual predator" phrase); ER0337, 148:2-20; ER0459, 246:11-21. To disparage Marli's sincere religious beliefs as "hateful" is clear evidence of religious discrimination.

### 4. Alaska Airlines knew the Equality Act raised legitimate, non-discriminatory religious concerns, but it maliciously fired Plaintiffs for expressing them.

Alaska Airlines maliciously fired Plaintiffs for raising religious concerns, despite knowing that the Equality Act raised religious concerns for many people of faith. The company's Social Issues Engagement Platform stated: "We understand this issue [the Equality Act] touches on religious freedom concerns for some, and respect that there are differing interpretations of the legislation on that point." ER0846. This official talking point from the Company's Platform was repeated multiple times. ER1179-80; ER1182-84; ER1197-98; ER1186-88, ER1190; ER1192-94; *see also* ER0797 (noting impact on Religious Freedom Restoration Act). "[W]e knew that there [were] religious concerns that were continuing to come up." ER0376-78, 80:12-82:21; ER0811.

Alaska Airlines understood that religious concerns about the Equality Act are legitimate and non-discriminatory. Executive Joseph Sprague, the President of Horizon Air, a member of the Alaska Air Group, wrote to Schneider and other Executives:

> I've heard that some AS employees recently raised concerns... [T]here do appear to be aspects of the Equality Act that, at a minimum, raise legitimate questions about whether religious freedoms are being impaired through the legislation. It is interesting that our stated position on the Equality Act in the engagement criteria document references two specific aspects of the bill that supports while also acknowledging the religious freedom concern.... However, if a piece of legislation touches on something like religious freedom that is actually very important to a very large percentage of our employees and guests, I wonder if we need to pretty clearly and specifically call that out in any public position we take.... For those that

PLS.' MOTION FOR SUMMARY JUDGMENT - 11

*BROWN V. ALASKA AIRLINES*, 2:22-CV-668-BJR

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

have the religious freedom concerns, the concern is real.

ER0812; ER0816-19. In response, Schneider acknowledged, "These issues are complex and polarizing and therefore important to explore." ER0811.

The retiring CEO of Alaska Airlines, Brad Tilden, also viewed religious concerns about the Equality Act as legitimate. After a Christian pilot, "Pilot G.," wrote to Brad Tilden in support of Marli, Tilden specifically advised Schneider not to censor Christians in the comment section. ER0852 ("His [Brad Tilden's] message to me is that we not sensor [sic] people for having conservative Christian views"); ER0788-90 (Pilot G. email to CEO); *see also* ER0374-75, 76:6-77:21. Schneider promptly disregarded that message. She approved changes to the Commenting Rules to expressly prohibit future "religious" comments and changes that meant that comments from "conservative Christians" like Pilot G. would not be permitted. AA00003057-60; AA00003061-64; ER1205-07; ER1209-11; ER0777; ER0621-22; ER0072, AS RFA-MB 6-8.

Alaska Airlines fired Marli and Lacey even though it knew that many people of faith have legitimate, non-discriminatory concerns about the Equality Act. Their public terminations sent a message. ER0234-35 ¶16. Alaska Airlines leadership knowingly and maliciously ensured the two Christians who posted about the Equality Act were censored, investigated, terminated, and their grievances denied, refusing even to grant a LCA to be reinstated. *See* ER0538 (asking for time for Managing Directors and Vice Presidents "to respond with their buy-in as an outcome"); ER0338, 164:10-23; ER0499-500, 193:18-194:23; ER0512-13 7:24-8:11 (not typical for Vice President of Inflight to be decisionmaker); ER0535-36 68:25-69:6 (Schneider supported firing Plaintiffs); ER0769-75.

### 5. The Company's extreme reaction to Marli's religious comment contradicted its promises about open dialogue, its Commenting Rules, its rules about progressive discipline, and its treatment of other employees.

First, the Company's treatment of Plaintiffs violated the expectations it set with its Alaska's World Commenting Rules. Under the Commenting Rules' "Three Strikes" policy, if the Company disliked a comment, the comment would be removed. ER0578-79; ER0184, AS RFA-LS 25. If

three comments were removed, the employee would be barred from commenting. *Id.* If Alaska Airlines followed this policy, the Company would have given Plaintiffs at most one strike. ER0431, 124:5-13.[9]

At the time, Alaska Airlines had a pattern of allowing critical and even offensive comments on Alaska's World without disciplining the commentor. *See, e.g.*, ER0691-98 (BLM Article); ER1103-12 (DEI Racial Equity Article); ER0848, ER0850; ER1220 (2019 Equality Act Article); ER0706-07 (M.S. comment). Alaska Airlines received complaints that comments on previous Alaska's World articles were perceived as offensive, racist, or hurtful. *See id.*; ER1109 (T.G. comment complaining about the "thinly veiled racist" comments on racial equity article); ER0379-83, 101:1-11, 104:4-25, 105:17-24, 108:12-17; ER0393, 131:19-22 (racial equity article comments made employees feel hurt or unsafe); AA00003029; ER1177. But Alaska Airlines did not terminate or even discipline any employee other than Plaintiffs for commenting on Alaska's World.[10] ER0072-73, AS RFA-MB 9-10. The Company's disproportionate treatment of Plaintiffs shows religious discrimination.

Marli's Inflight Supervisor Lewis, who had over 20 years of experience with the Company and was thoroughly knowledgeable about Alaska Airlines' practices, recommended that Marli receive no discipline – only a ROD. ER0453, 212:9-22; ER0463, 260:2-3. But the Company was determined to terminate. ER0456, 229:1-22. Lewis cried when she told Marli that Alaska Airlines was terminating her. *Id.*

Second, the Company bypassed its normal rules, skipping all levels of progressive discipline, and proceeded straight to termination. *See* ER0652. Proceeding from no formal

---

[9] In response to Plaintiffs' comments, the Company changed its Alaska's World Commenting Rules. ER0621-22; ER0072, AS RFA-MB 6-8. The updated rules removed the "Three Strikes" policy and prohibited "religious" comments. *Id.* The Company later falsely claimed to the EEOC that Plaintiffs violated the updated Commenting Rules. ER1249; ER1256; ER1251; ER1258; ER0174-75, AS RFA-MB 5-8;  ER0292-99, 204:13-211:8; *compare* ER0551-52 & ER0578-79 *with* ER0905-06. Advocating against Plaintiffs based on this false claim shows malicious or negligent treatment of Plaintiffs' charges.

[10] For at least three years prior to February 2021, the Company disciplined no employees for Alaska's World comments. ER0176, AS RFA-MB 13. One flight attendant ("L.B.") was disciplined for her Alaska's World posts in 2016 and 2017. ER1095, ER1097. But, unlike Marli, she was given multiple opportunities to correct. *Id.*; ER0508-09, 263:25-264:9.

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

discipline straight to termination is exceedingly rare and would only be done in the most serious of cases, such as testing positive for cocaine at work. ER0406-12, 42:6-43:7, 48:7-51:15, 54:3-5; ER0489, 44:19-45:23; ER0503-04, 251:9-252:19.

Third, the Company's decision to terminate was vastly out of step with how the Company treats allegations of anti-Christian discrimination or harassment. When a flight attendant ("J.R.") was accused of anti-Christian "hate speech" and making a "direct threat of violence" on his social media using the Alaska Airlines logo for his social media cover photos, he was given the lowest level of discipline, a confirmation of oral warning. ER0758 (posting "Any Christian that thinks like this should have their teeth kicked in!," leading to a customer complaint); ER0752 ("Confirmation of Oral Warning"); ER0757 *id.* ("[J.R.] is posting what many would consider hate speech"); AA00002474 (customer asking if J.R. represents Company's views, writing "to openly call for violence is disturbing"); ER1003 (union rep considering it an Implied "direct threat of violence"); ER0104-05, AFA RFA-MB 24. Similarly, when a flight attendant ("H.B.") harassed a coworker on social media because of her religious beliefs and taunted her about praying, he was investigated by Berner, but given no discipline. ER0331-32, 116:19-117:22; ER0341-45, 179:15-183:20; ER0936-50.

Fourth, the Company showed discriminatory animus by treating Plaintiffs as a safety risk when it prevented them from working during the investigation. Prohibiting a flight attendant from flying is only done when necessary due to the "[r]isk posed by the accused's continued presence in the workplace." *See* Investigator's Process Reference, ER0567-76, at ER0568; ER0432, 132:1-12 (Lewis took badges away only 10% of the time); *id.* at 142:13-145:9 (she does not know why Marli's badge was taken); ER0493-94, 105:23-106:10 ("The company only does that… when they feel that the behavior is particularly egregious").[11] The decision to treat Plaintiffs as security threats, without any basis whatsoever, shows an extreme level of negative stereotyping.

Finally, Alaska Airlines refused Plaintiffs a LCA to be reinstated. ER0516-18 27:16-29:12.

---

[11] The company further discriminated against Lacey by removing her Known Crewmember ("KCM") airport security clearance without any basis when she received her Notice of Discharge. ER0339-40, 167:3-168:15.

PLS.' MOTION FOR SUMMARY JUDGMENT - 14

*BROWN V. ALASKA AIRLINES*, 2:22-CV-668-BJR

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

The Company allegedly refused due to fear that the "behavior would continue" and cause future harm. *Id.* at 29:3. And yet, another employee who threatened to strangle someone got his job back. ER0413-15, 76:1-78:24. A flight attendant fired for race discrimination who called the plane "a slave ship" in front of passengers got her job back. ER1213-14; ER0505-07, 258:10-260:15. A flight attendant ("D.T.") fired for telling another flight attendant to show "a little tittie" got his job back. ER0952-54; ER1041; ER0876 (listing D.T. as comparator for Marli). And a male employee terminated for inappropriately touching a woman got his job back. ER0416-17, 79:14-80:6; ER0958-61; ER0956. The decision to treat Plaintiffs as more of a risk shows anti-Christian bias. And all this took place against the larger backdrop of hostility to religion at the Company.[12]

### 6. But for Marli's religious beliefs, the Company would not have terminated her.

If Plaintiffs' religious beliefs were different, Alaska Airlines would not have fired them. *See Bostock*, 140 S. Ct. at 1739. Other employees commented expressing their moral or religious beliefs in response to the Equality Act article. ER0706-09; ER0711-20. If their beliefs aligned with the Company's, they were not investigated or disciplined. For instance, S.K. called supporting the act "morally the right thing to do." ER0716; *see also* ER0713 ("A.T." comment). Neither were investigated or disciplined. ER0069-70, AS Suppl. RFA-MB 3-4; AS Ans. ¶290, ¶293.

### B. Alaska Airlines fired Lacey Smith because of her religious beliefs.

The direct and circumstantial evidence shows that if Lacey's religious beliefs about morality were different, the Company would not have fired her.

### 1. Lacey Smith was known as a Christian at Alaska Airlines, and her comment on Alaska's World revealed her Christian beliefs about morality.

It is undisputed that Lacey is a Christian. ER0119-20 ¶¶1-8; ER0224 ¶18; ER0269-70, 191:16-192:8 (Union attesting to habit and reputation); ER0120 ¶8. Her beliefs about morality reflect her Christian worldview. ER0119 ¶3. When Lacey read Alaska Airlines' article about its

---

[12] Plaintiff incorporates all arguments made in the Hostile Work Environment and Lacey Smith sections, including the argument that the Company's training and DEI messaging were so deficient in teaching about religious discrimination that, at the time of her deposition, Lewis confidently testified that religion was not a protected class. ER0466-67, 277:20-278:16.

PLS.' MOTION FOR SUMMARY JUDGMENT - 15

*BROWN V. ALASKA AIRLINES*, 2:22-CV-668-BJR

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

support for the Equality Act, she had questions about whether the Company believes employees with religious and moral beliefs should also be treated equally and not face discrimination. ER0129-30 ¶¶53-56, 61. She commented, "As a company, do you think it's possible to regulate morality." ER0130 ¶60. Her comment suggested she may have moral beliefs that differed from the Company's moral beliefs on issues of sexual morality.

### 2. Alaska Airlines responded to Lacey's comment, showing it did not consider the comment to be discriminatory or a policy violation.

The Company discussed internally how to respond to Lacey's comment. ER0886-90. It is Alaska's practice to remove comments deemed discriminatory. ER0392, 123:4-7; ER0483-84, 25:4-26:2. The Company chose not to remove her comment, but, instead, to engage in dialogue. ER0886-90; ER0384-86, 113:23-115:10; ER0390-91, 120:20-121:5; AS Ans. ¶109. There are no other instances in which an Alaska's World comment was responded to by the Company and then the commenter was later fired for the comment. ER0176, AS RFA-LS 14. The undisputed fact that the Company responded to Lacey's comment is evidence that the Company did not view It as a violation of company policies. Lacey's comment was not removed until after Marli posted about her religious beliefs. *Compare* ER0554 *with* MBLS00007695.

### 3. The Ultimate Decisionmaker "100% Agree[d]" that employees do not have a right to have different beliefs from the Company on this issue.

During the Company's internal discussions about how to respond to Lacey's comment, Alexa McCann Rudin (Managing Director of Communications) asked Tiffany Dehaan (Managing Director of Culture, Learning, and Inclusion), "do you want to use this as an opp[ortunity] to educate on the concept of everyone having a right to have their own beliefs? What this person feels is moral is not necessarily the same definition that others have." ER0888. In response, Taylor Ball from the Legal Department wrote, "We should stay away from 'everyone has a right to have their own beliefs' in this case because the 'belief' is actually discrimination. Employees actually do not have the right to believe that LGBTQ rights are 'immoral.'" ER0886. Williams, the ultimate decisionmaker, wrote, "I 100% agree." *Id.* Instead of acknowledging employees have a right to

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

their own beliefs, the official Company response to Lacey's comment on Alaska's World emphasized that the Company's values require it to support the Act and it "expect[s] our employees to live by these same values." ER0706.

### 4. The Company fired Lacey because of its perception of her moral beliefs.

If Lacey had not posted her comment on Alaska's World, the Company would not have fired her. ER0325-26, 80:22-81:2; ER065-67; ER0170-71, AS RFA-LS 1-2. The Notice of Discharge explained that the Company fired Lacey because it perceived her moral beliefs about gender identity or sexual orientation to be discriminatory. ER065-67; *see also* ER0527-28 38:3-39:3, 41:1-42:1, 43:2-44:14, 55:9-25; ER0324-25, 79:21-80:15. According to the Notice of Discharge, "Defining gender identity or sexual orientation as a moral issue ... is not a philosophical question, but a discriminatory statement." ER065. Noelle Berner, Lacey's supervisor, affirmed that it violates Company policy for employees to say they believe that being LGBTQ is immoral. ER0335-36, 146:3-147:12. When asked where they would be allowed to express their moral beliefs on this issue, she responded, "At home without any other employees being, you know, there to hear it. That would be okay." *Id.*

### 5. The Company would not have terminated Lacey if her religious beliefs about morality were different.

If Lacey held different religious beliefs about sexual morality, then the Company would not have fired her. *Bostock*, 140 S. Ct. at 1739; *see supra* I.A.6. This is all that is needed to show religious discrimination. Plaintiff contends that Alaska Airlines knew, or at least suspected, that Lacey's moral beliefs were religious or Christian from the beginning. The Company denies that it had actual knowledge that Lacey's moral beliefs were specifically Christian until the grievance hearing. This motion can still be resolved in Plaintiff's favor for several reasons.

First, actual knowledge that Lacey's moral beliefs were religious or Christian is not required. According to the Supreme Court, an employer discriminates by making rules that turn on a protected class, even if the employer never learns the employee's protected class. *Bostock*, 140 S. Ct. at 1746 ("By intentionally setting out a rule that makes hiring turn on race or religion,

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

the employer violates the law, whatever he might know or not know about individual applicants."); *id.* ("Any way you slice it, the employer intentionally refuses to hire applicants in part because of the affected individuals' sex, even if it never learns any applicant's sex.").

Second, Alaska Airlines had actual knowledge of Lacey's *moral beliefs* or, at a minimum, fired her because of its perception of Lacey's moral beliefs. Employees' moral beliefs on issues of sexuality are protected against religious discrimination, whether they derive from a source such as Christianity or from a non-religious worldview. The EEOC defines "religious practices" to "include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." 29 C.F.R. § 1605.1; *see also Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993) (emphasizing broad definition of religion). Alaska Airlines itself defined religious harassment as harassment based upon employees' "belief systems" or "lack of [belief system]." ER0964.

Finally, the undisputed facts show that the Company *did* have actual knowledge that Lacey's moral beliefs were Christian before her termination was final. Under the CBA, a termination is not final until the grievance is denied. ER0645-50, §§ C.1 & C.7. During the grievance hearing, Lacey gave a statement complaining of illegal religious discrimination and asking for a religious accommodation. ER0738-39. At a minimum, at that point, Alaska Airlines was on notice that it cannot discriminate and that a religious accommodation may be required. *See Abercrombie*, 575 U.S. at 775 (when accommodation needed as an aspect of religious practice, it is "no response" that adverse action was "due to an otherwise-neutral policy"). Yet, Alaska Airlines failed to engage in any interactive dialogue, failed to consider whether she could be accommodated without undue hardship, and failed to provide a response. *Groff*, 600 U.S. at 473 (requiring consideration of other options). Allowing her to remain employed would not have caused an undue hardship. *See id.* at 472-73. The Company's treatment of Lacey's religious accommodation request also independently violates Title VII's disparate treatment provision.

### 6. The response to Lacey's comment shows the Company's extreme level of intolerance toward people of faith.

PLS.' MOTION FOR SUMMARY JUDGMENT - 18

*BROWN V. ALASKA AIRLINES*, 2:22-CV-668-BJR

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

As explained, *supra* I.A.5, the Company's treatment of Lacey contradicted its promises about open dialogue, its Commenting Rules, its treatment of other employees.[13]  Alaska Airlines should have given Lacey no discipline. *See* ER0652; ER0488, 34:18-24.

### C. In the alternative, Plaintiffs succeed under *McDonnell Douglas*.

The first three elements of *McDonnell Douglas* cannot be disputed. Plaintiffs are Christians, Plaintiffs were qualified to be flight attendants, and Plaintiffs' terminations were adverse employment actions. *See supra*, I-IV (facts). The fourth element can be proven by "comparison to similarly situated individuals, or any other circumstances surrounding the adverse employment action [that] give rise to an inference of discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (internal quotation marks omitted). *See supra*, I.A and I.B (argument).

Alaska Airlines cannot meet its burden to demonstrate a legitimate, non-discriminatory defense. It is not legitimate or non-discriminatory to fire Plaintiffs for expressing their religious beliefs because other employees find those beliefs offensive. *Groff*, 600 U.S. at 472-73 (coworker "bias or hostility to a religious practice" is no defense). To claim that Plaintiffs' isolated comments themselves constitute severe or pervasive harassment is absurd. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("conduct must be extreme to amount to a change in the terms and conditions of employment"). Merely being exposed to the different religious beliefs of a colleague is not harassment. *See Ricci v. DeStefano*, 557 U.S. 557, 584 (2009) (holding desire to avoid disparate impact liability does not excuse actual disparate treatment of other employees); *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2432 (2022) ("concerns about phantom constitutional violations" cannot "justify actual violations of an individual's First Amendment rights" in the Free Exercise context). Alaska Airlines' asserted rationale is *itself* discrimination because it labels Plaintiffs' expression of their religious beliefs as hateful, offensive, discriminatory, and a terminable offense. *Bostock*, 140 S. Ct. at 1734 ("[I]t is irrelevant what an employer might call its discriminatory practice, how others might label it, or what else might motivate it."). There is also

---

[13] Plaintiff incorporates all arguments regarding Hostile Work Environment and Marli Brown.

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

evidence of pretext. *See supra*, I.A.4-6 and I.B.6. For instance, Alaska Airlines' termination of Plaintiffs compared with the little-to-no discipline for J.R., H.B., and other allegedly offensive, racist, or hurtful comments on Alaska's World, *see supra* I.A.5, shows that Plaintiffs were treated worse because of their religious beliefs or practices.[14]

## II.    DISPARATE IMPACT: ALASKA AIRLINES' POLICIES HAVE A DISPARATE IMPACT ON RELIGIOUS EMPLOYEES.

Alaska Airlines' policy categorizing expression of certain beliefs about sexuality, such as the belief that there are only two sexes, as discrimination has a disparate impact on religious employees and Christian employees like Marli and Lacey. Am. Compl., Cause of Action 12. Title VII forbids employers from "using a 'particular employment practice that causes a disparate impact on the basis of ... religion' unless the employer can show that the practice is job-related and 'consistent with business necessity.'" *Bolden-Hardge*, 63 F.4th at 1227 (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)).

### A.    Alaska Airlines' policies forbid expressing beliefs on certain issues of sexuality that do not align with the Company's beliefs.

Alaska Airlines' discrimination and harassment policy is enforced in a way that forbids employees from expressing beliefs on issues of sexuality that do not align with the Company's beliefs. *See supra* I.A.3, I.B.4; ER0335-36, 146:3-147:12; ER0869-72. Using the term "opposite sex" or implying that there are two sexes violates this policy. ER0523-24 34:12-35:5. Revealing an employee's moral beliefs about LGBTQ issues or defining sexual orientation and gender identity as moral issues violates this policy when the employee's moral beliefs differ from the Company's. ER065-67; ER0886.

### B.    These policies cause a disparate impact on Christians and employees who hold traditional religious beliefs.

Importantly, the Ninth Circuit has held that statistics are not necessary to support disparate impact claims. *Bolden-Hardge*, 63 F.4th at 1227. "This is particularly true where a disparate impact

---

[14] Religion need not be the only but-for cause for an adverse action, just a but-for cause. *Bostock*, 140 S. Ct. at 1739. Moreover, even if religion was not a but-for cause, Defendants can still be liable if religion was at least a motivating factor. *Id.* at 1740; 42 U.S.C. § 2000e-2(m); *Abercrombie*, 575 U.S. at 772. Both standards are satisfied.

PLS.' MOTION FOR SUMMARY JUDGMENT - 20

*BROWN V. ALASKA AIRLINES*, 2:22-CV-668-BJR

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

is obvious." *Id.* In *Bolden-Hargde*, an employer's requirement that employees take a loyalty oath conflicted with Jehovah's Witness religious beliefs. *Id.* at 1227-28. The court held that the Plaintiff stated a prima facie case of disparate impact on the basis of religion. Other courts have reached similar conclusions. *See*, *e.g.*, *Lewis v. New York City Transit Auth.*, 12 F. Supp. 3d 418, 448 (E.D.N.Y. 2014) (holding that "a reasonable juror could conclude that the Transit Authority's facially neutral [headwear] policies or practices had a disproportionately adverse effect on Muslim women and Sikh men" without statistical analysis).

Alaska Airlines' policies cause a disparate impact on Christians like Marli and Lacey and other employees who hold traditional religious beliefs. It is obvious and well-established that "many Americans still object to certain LGBT causes 'based on decent and honorable religious or philosophical premises.'" *Boudreaux*, 86 F.4[th] at 635 (quoting *Obergefell*, 576 U.S. at 672); *see also* ER1288-91; ER0468-69, 279:12-280:22. "The view that sex is binary and that there is a difference between men and women is a foundational belief of all three Abrahamic religions—Judaism, Christianity, and Islam." ER1288-1290 ¶¶2-5.

### C.  Alaska Airlines' policies are not job related, not consistent with business necessity, and Alaska Airlines ignored available alternatives.

Alaska Airlines bears the burden to show that its policies at issue are both job related and consistent with business necessity. It cannot meet its burden. But even if it could, Plaintiffs still succeed if "the employer refuses to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs." *Ricci*, 557 U.S. at 578. Beliefs on issues of sexual morality have nothing to do with the on-the-job performance of flight attendants. ER0469-71, 280:13-282:4 (testifying some Christians like Marli work well with LGBT employees who hold different beliefs); ER0346, 192:5-8. Alaska Airlines could choose not to discipline employees for suggesting they hold different moral beliefs. Alaska Airlines could simply delete Alaska's World comments, vet comments before they are posted, or bar certain employees from future commenting. *See* ER0621-22. Each alternative poses less of a disparate impact.

### III.  RETALIATION: THE COMPANY RETALIATED AGAINST MARLI BROWN FOR COMPLAINING OF RELIGIOUS AND SEX DISCRIMINATION AND REQUESTING A

1       **RELIGIOUS ACCOMMODATION.**

2       Title VII and WLAD protect employees from retaliation. Am. Compl., Causes of Action

3   4, 7.[15] Alaska Airlines retaliated against Marli because she stood up for the rights and safety of

4   women, girls, and people of faith. Alaska Airlines then subjected Marli to harsher punishment —

5   termination — because she requested a religious accommodation to be treated equally, in a further

6   act of retaliation for engaging in protected activity. Opposing an unlawful employment practice is

7   protected activity. *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006); *Lodis v. Corbis Holdings,*

8   *Inc.*, 292 P.3d 779, 789 (Wash. 2013).

9       **A.      Alaska Airlines retaliated against Marli Brown for opposing discrimination.**

10      Marli was deeply concerned about the Equality Act's impact on the safety and privacy

11  rights of women and girls, nationwide and at Alaska Airlines. She raised these concerns in her

12  Alaska's World comment and in the discussions with the Company that followed. Marli explained

13  to Lewis "that she was concerned about the safety and privacy of women" and Lewis believed her.

14  ER0476, 312:19-24 ("I believed her"). Williams admitted that one of the reasons she decided to

15  fire Marli was because of the "safety concerns" she raised in her comment—concerns she had

16  based on her faith. ER0523-24 34:6-35:5.[16]

17      Marli had a reasonable belief that she was opposing discrimination. ER0007 ¶¶36-37;

18  ER0042 155:14-20; ER0056-62 25:5-28:14; 71:17-73:13; ER0598-600. Concerns about safety or

19  privacy risks from biological men in women's safe spaces are reasonable and the reason why

20  restrooms are usually separated into male and female. ER1269-70, ¶¶ 22-23, ER1275-76 ¶¶30-41;

21  *Kastl v. Maricopa Cnty. Cmty. Coll. Dist.*, 325 F. App'x 492, 494 (9th Cir. 2009) (prohibiting

22  Plaintiff "from using the women's restroom for safety reasons" was legitimate and non-

23

---

24  [15] Title VII and WLAD have different causation standards. Title VII requires "but for" causation. *Nassar*, 570 U.S. at
    360. Under WLAD, Plaintiffs need only show that retaliation was a "substantial factor;" "retaliation need not be the

25  main reason behind the discharge decision but instead need only be the reason that 'tips the scales' toward
    termination." *Currier v. Northland Servs., Inc.*, 332 P.3d 1006, 1013 (Wash. Ct. App. 2014). Both standards are met.

26  [16] Even without these admissions, the timing alone demonstrates causation. *Thomas v. City of Beaverton*, 379 F.3d
    802, 812 (9th Cir. 2004); *see also Currier*, 332 P.3d at 1013. "We have stated that the prima facie case is established

27  if the employee shows that he was discharged following protected activities of which the employer was aware." *EEOC
    v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1012 (9th Cir. 1983) (internal quotation marks omitted).

discriminatory) (Gorsuch, J., sitting by designation); *United States v. Virginia*, 518 U.S. 515, 533, 551 n.19 (1996) (recognizing "[p]hysical differences between men and women" invoke privacy concerns); ER0372-73, 68:5-69:5.

Regardless of whether Marli was correct that the Equality Act's impact on women's safe spaces would in fact create a discriminatory or hostile environment for women, Marli is protected against retaliation based upon her reasonable belief. Title VII "protects an employee who opposes employer conduct in the mistaken but reasonable belief that the conduct is unlawful." *Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir. 2021); *see also Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 525–26 (9th Cir. 1994). Many ways to oppose discrimination are protected. *Archuleta v. Corr. Corp. of Am.*, 829 F. App'x 242, 243 (9th Cir. 2020); *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011); *Thomas*, 379 F.3d at 809.[17] Complaining about sexual harassment is a protected activity, and an employee need not use specific terminology or magic words to be protected from retaliation. The Ninth Circuit has held that "convey[ing] her discomfort" with actions that could reasonably be considered sexual harassment is sufficient to constitute protected activity. *Archuleta*, 829 F. App'x at 244. Marli clearly conveyed her opposition and discomfort with allowing biological males in women's safe spaces because of concern about women's safety and privacy. Alaska Airlines, in response, fired Marli. The Company further confirmed that raising safety concerns related to the Equality Act's impact on women's safe spaces was the issue, not with the specific phrasing. ER0337, 148:2-20; ER0459, 246:11-21:

> Q. How could Marli Brown have expressed her concern that the Equality Act would open women's safe spaces, locker rooms, and shelters to biological males in a way that would be hostile for women? How could she have expressed that, that would have been acceptable? …
> A. I do"t think there would have been a way for her to express that to be acceptable.

### B.   Alaska Airlines disciplined Marli Brown more harshly because she requested a religious accommodation.

---

[17] Under WLAD, "[t]he term 'oppose,' … carries its ordinary meaning: 'to confront with hard or searching questions or objections' and 'to offer resistance to, contend against, or forcefully withstand.'" *Lodis*, 292 P.3d at 788. Marli clearly confronted Alaska Airlines with hard or searching questions about its support of the Equality Act which she believed created a discriminatory and hostile environment for women and people of faith.

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

Requesting a religious accommodation is protected activity. *Enriquez v. Gemini Motor Transp. LP*, No. CV-19-04759-PHX-GMS, 2021 WL 5908208, at *7 (D. Ariz. Dec. 14, 2021). Marli requested a religious accommodation to be allowed to respectfully speak on equal terms as other employees. ER0681-83. The request was considered by the Company and denied in Marli's Notice of Discharge. ER0582. Testimony from the Union shows that the Union believed Marli would be and was disciplined more harshly (terminated, grievance denied, and no LCA) because she requested a religious accommodation. ER0585-91. It violates Title VII to impose harsher discipline in retaliation for requesting an accommodation.

### IV. THE UNION DISCRIMINATED BECAUSE OF PLAINTIFFS' RELIGIOUS BELIEFS.

Plaintiffs bring one claim against AFA—disparate treatment (religious discrimination) under Title VII.[18] Labor organizations may not "discriminate against an individual," "adversely affect his status as an employee," or "cause or attempt to cause an employer to discriminate against an individual" "because of" religion. 42 U.S.C. § 20003-I); *see also Groff*, 600 U.S. at 459 n.5. Unions may not "knowingly acquiesce in employment discrimination against their members, join or tolerate employers' discriminatory practices, or discriminatorily refuse to represent employees' interests." EEOC Compliance Manual, §12-I.B. AFA violated Title VII in all these ways: AFA reported Plaintiffs' comments to Alaska Airlines' management and communicated support for Plaintiffs' discipline. AFA repeatedly expressed hostility toward Plaintiffs and their religious beliefs. AFA refused to grieve religious discrimination or challenge their discipline at arbitration. Additionally, AFA displayed its discriminatory intent by vigorously advocating for other employees and failing to provide the same quality of representation for Plaintiffs.

### A. AFA more than acquiesced in Alaska Airlines' religious discrimination by reporting Plaintiffs' comments and colluding with the Company's discipline.

Under Title VII, "[a] union has an affirmative obligation to oppose employment discrimination against its members. If instead it acquiesced or joined in the Company's

---

[18] AFA admits it has more than 15 employees and over 500 members, it is a covered labor organization under Title VII, it resides in Washington, this Court has jurisdiction, and venue is proper in this district. AFA Ans. ¶¶10, 12, 14, 26-27, 348; ER0245, 41:12-14; ER0100, AFA RFA-MB 8.

PLS.' MOTION FOR SUMMARY JUDGMENT - 24

*BROWN V. ALASKA AIRLINES*, 2:22-CV-668-BJR

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

discriminatory practices, it too is liable to the injured employees." *Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297, 130[4] (9th Cir. 1982); *see also Woods*, 925 F.2d at 1200 ("A union may also be liable under Title VII for acquiescing in a [] discriminatory work environment."); *Goodman v. Lukens Steel Co.*, 482 U.S. 666-67 (1987). Here, AFA far more than acquiesced in Plaintiffs' discipline and even "attempted to cause" it. 42 U.S.C. § 20003-2(c)(3). Like a defense attorney who tips the prosecution off to a defendant's alleged offense, AFA MEC President Jeff Peterson himself alerted Alaska Airlines to Plaintiffs' comments, seeking repercussions. *See* ER0994-97; ER0727; *see also* ER0258-61, 140:12-21-143:8 ("I did call Andy to ask what was – if they knew about it [Lacey's comment] and what was the thought process"); ER1006 (Peterson to AFA officials: "there should be repercussions"). AFA's actions and inactions left Alaska Airlines with the understanding that AFA agreed "off the record" with the discipline. ER0787-90.

### B.     AFA failed to grieve the religious discrimination that Plaintiffs suffered and failed to advocate for them on the basis of religion.

A union violates Title VII if it intentionally fails to file grievances concerning alleged Title VII violations. *See Goodman*, 482 U.S. at 664-65 ("[T]he Unions' failure and refusal to assert racial discrimination as a ground for grievances; and toleration and tacit encouragement of racial harassment" violated Title VII); *Woods v. Graphic Commic'ns*, 925 F.2d 1195, 1200 (1991) ("a union may be liable under Title VII for intentionally failing to file grievances concerning a racially hostile work environment"); *Beck v. United Food & Com. Workers Union, Loc. 99*, 506 F.3d 874, 88[2] (9th Cir. 2007). Although AFA filed grievances, AFA failed defend Plaintiffs on religious discrimination grounds. AFA knew that religious discrimination by Alaska Airlines violated the CBA. ER0491-92, 91:16-92:21. Marli raised her concerns about religious discrimination with Taylor. ER0009 ¶46; ER0063-65, 101:8-103:12; ER0496-97, 116:24-117:2. Yet Taylor never argued religious discrimination to the Company. ER0099-100, AFA RFA-MB 7; AS Ans. ¶155. Not only that, but AFA actively dissuaded Marli from raising religion. ER0242-44, 27:18-29:5. At the grievance hearing, AFA instructed her to withhold a written statement about religious discrimination and religious accommodation that she wanted to submit. ER0016-17 ¶¶80-86; *see*

ER0593-96. And AFA entirely failed to consider religious discrimination arguments based upon the Company's regulation of Lacey's moral beliefs, even though the union knew moral beliefs are part of some flight attendants' religions. *See* ER0202-03, AFA RFA-LS 6-10; ER0273, 241:19. AFA was either purposefully blind or hostile to Plaintiffs' concerns about religious discrimination.

### C.    AFA officials repeatedly expressed animosity to Plaintiffs' religious beliefs.

AFA repeatedly expressed its opposition to religious expression at work. ER0251-52, 62:20:63:2. In January 2021, AFA published an email newsletter advising members to "avoid the 'taboo subjects of politics, religion and money in mixed company such as while at work (including layovers)." ER0733. When, in that same month, Lewis counseled Marli not to talk about religion at work, Terry Taylor failed to object. ER0619; ER0004 ¶19. Additionally, the day that Marli and Lacey were fired, AFA published an article to its membership entitled "How the First Amendment Applies in the Workplace," that trivialized protections for religious expression in the workplace. ER659-60; ER1016-20.

AFA's hostility toward Plaintiffs' religious beliefs went further. Peterson repeatedly referred to Marli and Lacey as "bigots"; he drew Alaska Airlines' attention to Plaintiffs' comments; he told a friend "I hate [Lacey]"; and he told others he supported her discipline. ER1169-75; ER0966-70; ER0991-92; ER1006-07; ER1012; ER0657; ER0679; ER0994-97; ER0727. Marli's union representative Taylor suggested that Marli and Lacey be put in a burlap bag and dropped in a well, texted Adams during Marli's investigatory meeting "I may hurl," and expressed to others within AFA her support for Marli's termination. ER0968; ER0606; ER0731 (Taylor hoping Marli will be disciplined); *see also* ER1233 (Taylor: "This is reprehensible"); ER0613-14; ER1169-75. Adams was "disgusted" by Lacey's comment, referred to Marli and Lacey's comments as "shitty" and "BS," and agreed with a friend who said they worked with some "pukes." ER1169-75; ER1236; ER0722-24. Disparaging statements such as these are direct evidence of religious discrimination. *Coghlan*, 413 F.3d at 1095; *Dominguez-Curry*, 424 F.3d at 1038. AFA disparaged Plaintiffs despite knowing that Marli and Lacey held unblemished track records of working well with LGBTQ coworkers and counted LGBTQ individuals among their

PLS.' MOTION FOR SUMMARY JUDGMENT - 26

*BROWN V. ALASKA AIRLINES*, 2:22-CV-668-BJR

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

family and friends. ER0051-53, 308:22-310:3; ER0164-68, 293:16-294:16, 315:16-316:19, 325:1-5; 196:11-16; ER0324, 79:21-25; ER0498, 138:1-11.

> **D.      The Union failed to provide the same quality of representation for Marli and Lacey as it did for other employees.**

Plaintiffs may prove discrimination through circumstantial evidence "that one or more similarly situated individuals outside of the protected class received more favorable treatment." *Beck*, 506 F.3d at 883. AFA's approach to other disciplinary cases not involving religion creates an inference that it intentionally discriminated against Plaintiffs. *See id.* at 884. The Union was able to achieve LCAs for alleged gropers and those who were sexually vulgar, *e.g.,* ER0952-54; ER1041-44; ER0958-61; ER0956. It took to arbitration cases of individuals accused of sexual and racial harassment, including groping and vulgar sexual comments: ER0276-78, 25:5-20, 29:9-11, 33:5-21; ER1048-52; ER1022-29, ER1031-39; ER1054-57; ER1059-91. AFA zealously advocated for others, such as for uniform policy changes on behalf of non-binary and gender nonconforming flight attendants. *See, e.g.*, ER0245-49, 41:21-45:21; ER0642-43; ER0925-33; ER0976-85; ER0253-57, 99:9-103:10. By contrast, AFA advised religious employees to stay quiet. ER0659; ER0733.

> **V. HOSTILE WORK ENVIRONMENT: ALASKA AIRLINES' WORKING ENVIRONMENT IS HOSTILE TOWARD RELIGION IN GENERAL AND CHRISTIANITY IN PARTICULAR.**

Alaska Airlines created a hostile work environment on the basis of religion. Am. Compl., Causes of Action 3, 6, 10. Plaintiffs must show that the environment of anti-religious hostility was "sufficiently severe or pervasive to alter the conditions of employment." *Sharp v. S&S Activewear, L.L.C.*, 69 F.4th 974, 978 (9th Cir. 2023)*.* It is sufficient to show that "such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Id.* "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Courts consider the totality of the circumstances. *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 648 (9th Cir. 2021).

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

**A.    Alaska Airlines employees feared for their jobs, self-censored, and retired early because of anti-religious or anti-Christian hostility at Alaska Airlines.**

Christian Alaska Airlines employees fear for their jobs, are afraid to mention their religious beliefs in the workplace, retire early, and talk with each other about the censorship and cancel culture. ER0227-28 ¶¶8-9; ER0234-35 ¶16; ER0224 ¶18; ER0237-28 ¶7; ER0788-90 (Pilot G. email to CEO); ER0021 ¶107; ER0140 ¶123; ER0227-28 ¶¶8-10; ER0234-35 ¶16.

**B.    Alaska Airlines ignored complaints of a religiously hostile work environment.**

Alaska Airlines did nothing to respond to many employee complaints about religious discrimination or a religiously hostile work environment in the 2020 Employee Feedback Survey. ER0300-02, 212:13-214:24; ER1114-22 (complaints); ER0909-20 (complaints); ER0089, AS RFA-MB 35.4; ER0353-54, 25:6-26:20. The Company also ignored complaints from Plaintiffs, Horizon President Joe Sprague, "J.D.," "B.D.", and "Pilot G.," as well as the retiring CEO's directive not to censor "conservative Christian views." *See* ER0852; ER0787-90; ER0802-04; ER0806-09; ER0811-13; ER0816-19; ER0450, 196:4-10; ER741.

**C.    Alaska Airlines systematically pushed employees to agree with its DEI messaging and social advocacy, while silencing dissenters.**

The Company "systematically integrated" DEI into its "business processes and culture." ER0355-61, 28:24-30:19, 36:3-39:21; ER0821-24; ER0829-34; *see also* ER0625-30, ER634-37. Its DEI goals centered on "racial equity" and "gender equity." ER0362, 40:1-14; ER0365-68, 48:12-51:12; ER0396, 141:18-22. The Managing Director in charge of DEI was not aware of anything the Company did to advance religious diversity, except for one holiday party in 2022. ER0363-69, 43:24-44:13, 51:21-52:9; ER0387-89, 116:5-7, 118:21-119:21.

According to EEOC guidance, "if companies are interested in expressing their views on social issues, … [they] may have an obligation to accommodate employees who cannot convey these messages because of religious beliefs." EEOC Compliance Manual, §12-IV-A n.209. Yet, Alaska Airlines took controversial positions on social issues, demanded employee agreement or silence, and failed to respect religious objections. For instance, many Christians such as Lacey

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

viewed the Company's support for the "Black Lives Matter" slogan as synonymous with the BLM organization, a Marxist, anti-family, and anti-Christian organization. ER0856-63; ER0159-63, 119:15-123:2; ER0281- ER0291, 193:15-203:19; ER1139; ER1151; ER1142; ER1285-86 ¶¶2-5. Alaska Airlines punished Lacey for her petition, disparaged her motives, and investigated employees who signed the petition. ER0322-23, 56:14-21; 57:10-18; ER0333-34, 134:25-135:6; ER0349-50, 38:2-39:22; ER0112-28 ¶¶20-51. Similarly, Alaska Airlines supported LGBTQ+ causes without tolerating dissenting religious views. *See supra* I.A.3-6, I.B.3-6; ER0020-21 ¶¶105-07; ER0829-34; ER0843-44; ER0367-71, 50:12-51:12; 56:2-57:6; AS Ans. ¶¶42-47; ER0886-90; ER0230 ¶¶22, 24, 26. Alaska Airlines may not wield its social advocacy to bludgeon employees who hold different religious beliefs.

### D.    Alaska Airlines' malicious or negligent training and messaging about diversity created a culture of intimidation for employees of faith.

According to the EEOC, "Employers should incorporate a discussion of religious expression, and the need for all employees to be sensitive to the beliefs or non-beliefs of others, into any anti-harassment training provided to managers and employees.[19] But Alaska Airlines has maliciously or recklessly created an environment where its own employees and supervisors are ignorant about religious employees' statutory right to be free from religious discrimination. Alaska Airlines' religious discrimination training was so deficient that Marli's supervisor Tiffany Lewis confidently testified that religion was not a protected class during her deposition.[20] ER0466-67, 277:20-278:16. Lewis was a "diversity and inclusion alliance champion" for a year. ER0474-75, 293:8-294:10. In her 22 years at Alaska Airlines, Lewis did not hear Alaska Airlines instruct about religious accommodations, and she was not aware of any other employee who requested one. ER0462-63, 259:24-260:7; *see also* ER0346, 183:22-184:13; ER0300, 212:9-12.

Alaska Airlines failed to treat religion like a protected class. The Company's training,

---

[19] "Best Practices for Eradicating Religious Discrimination in the Workplace," EEOC, No. EEOC-NVTA-2008-1, https://www.eeoc.gov/laws/guidance/best-practices-eradicating-religious-discrimination-workplace.

[20] Lewis only changed her testimony to say that religion was a protected class after speaking with counsel during the lunch break. ER0472-73, 290:2-291:6.

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

diversity statements, and DEI messaging focused almost exclusively on race and gender, often omitting religion entirely. ER0303-19, 215:4-231:14; *see, e.g.*, ER0635 (omitting religion); ER1104 (omitting religion); ER0629 (omitting religion); ER0922-23 (omitting religion); ER0363, 43:2-44:1; ER0394-95, 139:6-140:12. Alaska Airlines' omissions of religion were evidence to its employees that the Company will not protect them from religious discrimination. ER1134; ER1150; ER0229 ¶17; ER0140 ¶¶123-126; ER0021 ¶¶106-07; ER0238 ¶¶9, 12.

### E.    Company supervisors, Union, and policy suppress religious expression.

According to the EEOC, "preemptively banning all religious communications in the workplace or discriminating against unpopular religious views" could itself violate Title VII. EEOC Compliance Manual, §12-III-D. Lewis testified that all eight In-Flight Performance supervisors at Alaska Airlines have advised employees not to discuss religion at work. ER0400-03, 19:21-21:21, 22:5-23:17. Lewis believed this was company policy. ER0404-05, 23:18-24:24. The Union similarly advised employees to avoid discussing religion at work. ER0733. After Plaintiffs were fired, the Commenting Rules were changed to expressly forbid commenting about their religious opinions on Alaska's World. ER0297-99, 209:20-211:7; ER0621-22.

### F.    Alaska Airlines employees regularly demean Christians to one another.

Alaska Airlines cultivated a culture where employees, including and especially union representatives, feel comfortable disparaging Christians. *See, e.g.*, ER1169-75; ER0968 ("Can we PLEASE get someone to shut down comments, or put Marli and Lacey in a burlap bag and drop them in a well."); ER1006-08; ER0657 ("educating a certain faction of our membership that bigotry in the workplace is definitely *not* protected behind a (false) shield of 1st Amendment rights"); ER0679; ER1012 ("Mngmt needs to send her [Lacey's] bigoted ass packing"). Alaska Airlines cultivated a culture of hostility and intolerance toward people of faith that culminated in the ultimate act of hostility, firing Plaintiffs because of their religious beliefs.

### CONCLUSION

The Court should enter summary judgement as to liability in favor of Plaintiffs and against Defendants, setting the damages and remedies portion of the claims for trial.

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1    Respectfully submitted this 16th day of January 2024.

2

3

4                      */s/ Joel B. Ard*

                     **Joel B. Ard**, WSBA # 40104

5                      ARD LAW GROUP PLLC

                     P.O. Box 11633

6                      Bainbridge Island, WA 98110

7                      (206) 701-9243

                     joel@ard.law

8

9                      **Jeffrey C. Mateer** *(Pro Hac Vice)*

                     **David J. Hacker** *(Pro Hac Vice)*

10                    **Stephanie N. Taub** *(Pro Hac Vice)*

                     FIRST LIBERTY INSTITUTE

11                    2001 West Plano Pkwy., Ste. 1600

                     Plano, TX 75075

12                    (972) 941-4444

                     jmateer@firstliberty.org

13                    dhacker@firstliberty.org

                     staub@firstliberty.org

14

15                    **Sharon Fast Gustafson** *(Pro Hac Vice)*

                     **Rebecca R. Dummermuth** *(Pro Hac Vice)*

16                    **Tabitha M. Harrington** *(Pro Hac Vice)*

                     FIRST LIBERTY INSTITUTE

17                    1331 Pennsylvania Ave. N.W., Ste. 1410

                     Washington, DC 20004

18                    (202) 921-4105

19                    sharon.fast.gustafson@gmail.com

                     bdummermuth@firstliberty.org

20                    tharrington@firstliberty.org

21

22                    **Andrew W. Gould** *(Pro Hac Vice)*

                     HOLTZMAN VOGEL BARAN

23                    TORCHINSKY & JOSEFIAK, PLLC

                     2575 East Camelback Road, Suite 860

24                    Phoenix, AZ 85016

                     (540) 341-8808

25                    agould@holtzmanvogel.com

26                    *Attorneys for Plaintiffs*

27