1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

HONORABLE BARBARA J. ROTHSTEIN

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

MARLI BROWN and LACEY SMITH,

        Plaintiffs,

    v.

ALASKA AIRLINES, INC. and
ASSOCIATION OF FLIGHT
ATTENDANTS-CWA, AFL-CIO,

        Defendants.

Case No. 2:22-cv-00668-BJR

DEFENDANT ALASKA AIRLINES,
INC.'S MOTION FOR SUMMARY
JUDGMENT

**ORAL ARGUMENTS REQUESTED**

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA  98104-4041
(206) 946-4910

307443248v.4

1
2

# TABLE OF CONTENTS

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

I.     Introduction ............................................................................................................. 1

II.    Statement of Undisputed Material Facts ................................................................ 1

    A.    Alaska's Policies Against Discrimination, Harassment and Retaliation ......................... 1

    B.    AFA's Representation of Flight Attendants ................................................................. 2

    C.    Lacey Smith .............................................................................................................. 3

        1.    Smith's prior discipline for circulating a public petition knowingly misrepresenting
            the company's stance on Black Lives Matter ............................................... 3

        2.    Smith posts an offensive and discriminatory comment on Alaska's World regarding
            Alaska's support of the Equality Act. ......................................................... 4

        3.    Alaska investigates Smith's comment and terminates her employment. .................. 6

    D.    Marli Brown ............................................................................................................. 8

        1.    Brown makes a discriminatory and offensive comment on Alaska's World in
            response to Alaska's support of the Equality Act ............................................... 8

        2.    Alaska investigates Brown's conduct. ..................................................................... 9

        3.    Alaska terminates Brown for violating its policies against discrimination and
            harassment ............................................................................................... 10

III.   Summary Judgment Standard ............................................................................... 11

IV.    Summary Judgment Must Be Granted on Plaintiffs' First, Second, Fifth, and Ninth Causes
     of Action (Religious Discrimination Against Alaska) ....................................... 11

    A.    Framework for religious discrimination claims. ......................................................... 11

    B.    Plaintiffs' religious discrimination claim fails as a matter of law ................................. 12

        1.    Disparate treatment. ......................................................................................... 12

        2.    Failure to accommodate. ................................................................................... 19

V.     Summary Judgment Must be Granted on Plaintiffs' Third, Sixth and Tenth Causes of
     Action (Hostile Work Environment Against Alaska) ......................................... 25

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

A.   Plaintiffs Cannot Raise a Genuine Issue of Fact ............................................. 25

VI.   Summary Judgment Must Be Granted on Brown's Fourth and Seventh Causes of Action (Retaliation Against Alaska) ............................................................................................ 27

VII.   Summary Judgment Must Be Granted on Plaintiffs' Twelfth Cause of Action (Title VII—Disparate Impact ............................................................................................................. 29

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA  98104-4041
(206) 946-4910

307443248v.4

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Bartholomew v. Washington,* 2023 WL 6471627 (W.D. Wash. Sept. 21, 2003) ...................12, 25

4

*Berry v. Dep't of Soc. Servs.,* 447 F.3d 642 (9th Cir. 2006) ......................................13, 23

5

*Bey v. City of New York,* 999 F.3d 157 (2nd Cir. 2021)..............................................30

6

*Bhatia v. Chevron U.S.A., Inc.,* 734 F.2d 1382 (9th Cir. 1984).....................................24

7

*Bodett v. CoxCom, Inc.,* 366 F.3d 736 (9th Cir. 2004) ............................................16, 17

8

*Bolden-Hardge v. Off. of California State Controller,* 63 F.4th 1215 (9th Cir. 2023) .............23, 30

9

*Bostock v. Clayton Cty.,* 140 S.Ct. 1731 (2020) ...................................................24

10

*Chalmers v. Tulon Co. of Richmond,* 101 F.3d 1012 (4th Cir. 1996)...............................22, 24

11

*Coghlan v. Am. Seafoods Co. ,* 413 F. 3d 1090 (9th Cir. 2005) ....................................13

12

*Diaz v. Eagle Produce Ltd. P'ship,* 521 F.3d 1201 (9th Cir. 2009).................................14

13

*Dixon v. The Hallmark Companies, Inc.,* 627 F.3d 849 (11th Cir. 2010) ............................13

14

*Ervington v. LTD Commodities, LLC,* 555 F.App'x 615 (7th Cir. 2014) ..............................16, 23

15

*Faragher v. City of Boca Rotan,* 524 U.S. 775 (1998) ..............................................25

16

*Groff v. DeJoy,* 600 U.S. 447 (2023)..............................................................22, 23

17

*Harris v. Pameco Corp.,* 12 P.3d 524 (Or. 2000)..................................................25

18

*Hemmings v. Tidyman's Inc.,* 285 F.3d 1174 (9th Cir. 2002) ......................................29

19

*Hittle v. City of Stockton, California,* 76 F.4th 877 (9th Cir. 2023) ..............................13

20

*Hotchkiss v. CSK Auto Inc.,* 918 F.Supp.2d 1108 (E.D. Wash. 2013) ...............................28

21

*Jenning v. Tinley Park Cmty. Consol. Sch. Dist.,* 864 F.2d 1368 (7th Cir. 1988).....................29

22

*Kortan v. California Youth Auth.,* 217 F.3d 1104 (9th Cir. 2000)...................................25

23

*Learned v. City of Bellevue,* 860 F.2d 928 (9th Cir. 1988)........................................28

24

*Liu v. Uber Techs. Inc.,* 551 F.Supp.3d 988 (N.D. Cal. 2021) ....................................30

25

26

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

iii

*Matima v. Celli*, 228 F.3d 68 (2d Cir. 2000)...................................................................................29

*Matthews v. Wal-Mart Stores, Inc.*, 417 F.App'x 552 (7th Cir. 2011)................................16, 17, 24

*McDaniel v. Donahoe*, 2014 WL 4639918 (N.D. Cal. Sept. 17, 2014).............................................14

*McGinest v. GTW Serv. Corp.*, 360 F.3d 1103 (9th Cir. 2004) .....................................................27

*Merrick v. Farmers Ins. Group*, 892 F.2d 1434 (9th Cir. 1990)....................................................19

*Moran v. Selig*, 447 F.3d 748 (9th Cir. 2006).................................................................................14

*Nichols v. Azteca Rest. Enterprises, Inc.*, 256 F.3d 864 (9th Cir. 2001) ......................................25

*Nidds v. Schindler Elevator Corp.*, 113 F.3d 912 (9th Cir. 1996)..................................................19

*Nogowski v. St. Charles Med. Ctr.*, 2023 WL 7003702 (D.Or. Oct. 24, 2023)........................12, 20

*O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756 (9th Cir. 1996)..................................28

*Payne v. Norwest. Corp.*, 113 F.3d 1079 (9th Cir. 1997) ...............................................................28

*Peterson v. Hewlett-Packard Co.*, 258 F.3d 599 (9th Cir. 2004) .................................12, 20, 23, 27

*Rightnour v. Tiffany & Co.*, 354 F. Supp. 3d 511 (S.D.N.Y. 2019) ................................................17

*Rund v. Charter Commc'ns, Inc.*, 319 F.App'x 465 (9th Cir. 2008) (2017)....................................12

*Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033 (10th Cir. 1993) ...........................12

*Shutt v. Sandoz Corp Prot. Corp.*, 944 F. 2d 1431 (9th Cir. 1991) ................................................30

*Snyder v. Arconic Corp.*, 2023 WL 6370785 (S.D. Iowa Aug. 31, 2023)........................16, 21, 22

*Stagger v. Experian Info. Sols., Inc.*, 2021 WL 5299791 (N.D. I11. Nov. 15, 2021)....................26

*Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679 (9th Cir. 1998)..................................................20

*Trans World Airlines, Inc. v. Hardison*, 432 U.S.63 (1977)..........................................................23

*Trujillo v. Cont'l Airlines, Inc.*, 2013 WL 10776600 (C.D.Cal. July 2, 2013) .............................25

*Unt v. Aerospace Corp.*, 765 F.2d 1440 (9th Cir. 1985)................................................................28

*Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993 (9th Cir. 2019) .....................................14

*Williams v. Allied Waste Serv.*, 2010 WL 3257733 (E.D. Tex. June 30, 2010) ............................26

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

*Wilson v. U.S. West Communications*, 58 F.3d 1337 (8th Cir. 1995)..............................................24

**Statutes**

RCW 49.60 ..................................................................................................................................1

RCW 49.60.180 ........................................................................................................................24

**Rules**

42 U.S.C. § 2000e(j) ............................................................................................................12, 28

Cal. Gov't Code § 12940 ..........................................................................................................24

Or. Rev. Stat. § ..........................................................................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## I.    Introduction

This is an employment case brought by Plaintiffs Marli Brown and Lacey Smith against their former employer, Defendant Alaska Airlines, Inc. ("Alaska" or "Company") and former union, Association of Flight Attendants-CWA, AFL-CIO ("AFA"). Plaintiffs filed suit claiming that Alaska and AFA discriminated against them on the basis of religion, and retaliated against Brown, in violation of Title VII, the Washington Law Against Discrimination (RCW 49.60), and Oregon's state antidiscrimination laws. However, there is no triable issue of material facts on any of Plaintiffs' claims and Alaska's Motion for Summary Judgment should be granted.

## II.    Statement of Undisputed Material Facts

### A.    Alaska's Policies Against Discrimination, Harassment and Retaliation

Alaska is an air carrier based in SeaTac, Washington which, together with its regional partner Horizon, employs around 26,000 people. Wonderly Decl., Ex. A at 108:4-7. The nature and complexity of Alaska's operations means that a culture of cooperation, inclusion, and mutual respect among employees is essential. Wonderly Decl., Ex. H at p. 11. Employee morale is particularly important for airlines like Alaska, as employees often work together in close quarters, outside the presence of supervisors, and during stressful situations. Wonderly Decl., Ex. C at 88:21-89:3; Wonderly Decl., Ex. D at 221:21-222:14.

Alaska's employee handbook (called "People Policies") emphasizes that the Company "has *zero-tolerance* for harassment and discrimination in the workplace," including discrimination and harassment "because of … religion, sex/gender, sexual orientation, gender identity or expression…." Wonderly Decl., Ex. H at p. 10 (emphasis in original). The policy explains that "[t]he use of discriminatory or hurtful language or slurs will not be tolerated, regardless of the

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

1

307443248v.4

intent or the context." *Id*. at 13. "[E]mployees who are found to have engaged in inappropriate harassing or discriminatory behavior will be held accountable for their conduct" and "***will*** be subject to discipline, up to and including immediate termination of employment." *Id*. at 14 (emphasis in original). Alaska's prohibition against discrimination based on protected status (including religion) is also reflected in numerous other pronouncements and policies. *See e.g.* Wonderly Decl., Ex. H at 8, Ex. E at 12; Ex. F. at 6 & 9, Ex. G at 2-3;  Ex. B at 27:19-25, 29:13-25, 46:2-16.

As reflected in its People Policies, Alaska has robust procedures in place to receive, investigate, and resolve employee complaints alleging violations of these policies. Wonderly Decl., Ex. H at 9, 13-14. "Additionally, managers, supervisors, and leaders who observe discriminatory or harassing behavior are required to report all such conduct to their HR Business Partner." *Id.* It is undisputed that, during their employment, Plaintiffs were aware of those policies and received extensive training on them. Wonderly Decl., Ex. C at 44:20-45:3, 45:17-47:4, 48:9-49:15, 53:2-54:14, 65:3-11, 81:8-15, 82:16-20, 326:6-14; Ex. I at 61:11-22, 63:17-64:7, 64:20-65:12, 76:8-78:9; 85:4-8, 92:4-93:1, 95:19-99:8.

**B.     AFA's Representation of Flight Attendants**

Alaska flight attendants are covered by a CBA between Alaska and AFA. Wonderly Decl., Ex. J; Amended Complaint (FAC), Dkt. 39, ¶ 131. The CBA provides a framework for discipline and discharge, and establishes a process for grievances and arbitration arising from disciplinary actions. Wonderly Decl., Ex. J. Alaska ordinarily adheres to principles of progressive discipline, except when it determines that an employee's misconduct is sufficiently severe to warrant termination (*e.g.*, a positive drug test, violence, discrimination, or harassment). Wonderly Decl.,

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

2

307443248v.4

Ex. K at 49:19-50:10, 51:10-15; Ex. L at 97:4-11. For purposes of administering progressive discipline, the CBA specifies that disciplinary actions will "roll off" a flight attendant's record after 18 months if no further disciplinary action is taken during that time. Ex. K at 49:19-51:9. But if the employee commits another violation in that 18-month period, the prior violation will be considered for purposes of progressive discipline. Wonderly Decl., Ex. K at 49:19-51:9, 139:11-16; Ex. L at 98:3-99:1; Ex. B at 53:8-54:17; Ex. J at 2.

## C. Lacey Smith

### 1. Smith's prior discipline for circulating a public petition knowingly misrepresenting the company's stance on Black Lives Matter

In August 2020, in the wake of George Floyd's murder, Alaska posted an article on Alaska's World announcing its support of the Black Lives Matter ("BLM") movement. Wonderly Decl., Ex. M at 147:12-24; Ex. N. Smith contacted her Performance Supervisor, Amanda Schmitz,[1] and Alaska's Chief Executive Officer, Brad Tilden, to express her disagreement with Alaska's stance and her (mistaken) concern that Alaska was supporting the BLM political organization. Wonderly Decl., Ex. C at 126:8-13; 384:19-385:12; Exs. O & P. Both Schmitz and Tilden expressly clarified to Smith that Alaska supported the BLM human rights *movement*—not the organization—and even gave her an article from Alaska's Diversity and Inclusion website that explained Alaska's support of BLM as an "international *human rights movement*," "not an issue of politics," and "NOT an anti-police-officer movement." Wonderly Decl., Ex. Q (emphasis added); Exs. O and R; Ex. C at 406:13-407:9, 407:15-17; Ex. L at 49:1-24.

Despite that clear guidance, Smith published an online "Depoliticizing Alaska Airlines"

---

[1] Inflight Performance Supervisors are responsible for, among other things, addressing and investigating flight attendant performance issues. Wonderly Decl., Ex. K at 38:2-8, 199:2-200:5.

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

petition on August 15, 2020, repeatedly mischaracterizing Alaska's stance, claiming that Alaska was supporting the BLM organization. Wonderly Decl., Ex. S, Ex. C at 414:2-16. Smith claimed that the Company was supporting Marxism, approving of "rioting and upheaval," and expressing hostility toward police and the military. *Id.*, Ex. S. Smith encouraged employees to share the online petition with guests and the public (Wonderly Decl., Exs. S & T, Ex. C at 418:1-421:3), and it generated complaints from coworkers who were offended and confusion among members of the public about Alaska's support for the BLM *organization*. *See, e.g.,* Wonderly Decl., Ex. B at 91:15-95:4, 97:9-13; Ex. C at 418:1-421:3, 422:11-423:10; Ex. U.

Alaska began an investigation, led by Smith's Performance Supervisor, Noelle Berner. Wonderly Decl. Ex. C at 132:21-133:13; Ex. L at 48:2-22. Notably, Smith did not claim that the petition expressed a religious message, characterizing it instead as stating "political" beliefs and "safety" concerns. Wonderly Decl., Ex. R at 5; Ex. V at 2. Alaska found that Smith had "published information [she] knew to be false," that the petition was "damaging to the Alaska brand and image" and "inconsistent with Alaska's values," and concluded that Smith had violated Alaska's anti-discrimination and workplace civility policies. Wonderly Decl., Ex. W; Ex. L at 54:11-24.

Alaska ultimately issued Smith a 30-day suspension—the most severe form of discipline short of termination (Wonderly Decl., Ex. L at 98:3-99:3)—and a directive to remove the petition. Wonderly Decl., Ex. W.  Smith was told that any further discipline in the next 18 months would result in termination. Wonderly Decl., Ex. X at 169:15-170:3.

> ### 2. Smith posts an offensive and discriminatory comment on Alaska's World regarding Alaska's support of the Equality Act.

On February 25, 2021, Alaska posted an article on Alaska's World voicing its support for proposed federal legislation that would prohibit discrimination on the basis of sexual orientation

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

4

307443248v.4

and gender identity known as the Equality Act. Wonderly Decl., Ex. Y. Alaska's World is Company-sponsored online platform visible to all Alaska employees. FAC (Third Cause of Action); Wonderly Decl., Ex. Z at 101:18-102:7. Alaska allows employees to comment on some of its news articles, and it published rules instructs employees to, among other things, "be civil and respectful" and to "never post a comment that is disrespectful toward another employee…" Wonderly Decl., Ex. AA at 2; Ex. C at 101:3-16.

At 8:36 a.m., Smith posted a comment in response to the Equality Act article stating: "As a company, do you think it's possible to regulate morality?" Wonderly Decl., Ex. Y; Ex. C at 182:7-183:11, 494:13-494:5, 495:4-13. Smith clicked a pop-up confirming her compliance with the commenting rules before posting her comment. *Id.*, Ex. C at 100:14-20.

In an effort to reinforce the Company's stance and head off similar offensive comments, Andy Schneider, SVP of People, posted the following beneath Smith's comment:

> Supporting the Equality Act is not about regulating morality. It's about supporting laws that allow our LGBTQ+ employees and guests, no matter what state they live in or fly to, to be protected against discrimination. Our values are our guide, and we strongly believe that doing the right thing and being kind-hearted require us to support this act. As we said above, we aren't the kind of company that stands by and watches—we're going to use our voice and be a leader on these issues.

> We also expect our employees to live by these same values. Our differences are to be respected. As stated in our People Policies, harassment and discrimination will not be tolerated.

Wonderly Decl., Ex. Y.

As the day progressed, Alaska received numerous concerns about Smith's post. *Id.*, at p. 2 (Flight attendant Tim Goins commenting: "I feel like I'm in sixth grade again, at recess, being abused by the other kids"); p. 3 (transgender employee commenting: "I ask others to reflect upon

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA  98104-4041
(206) 946-4910

307443248v.4

others before acting to see what their actions do"), pp. 4-5 (gay employee commenting that the forum was "being used as a soapbox (intentionally or not) to further marginalize already marginalized people"); *Id.*, Ex. A at. 40:6-25, 46:1-7, 186:7-187:5; Ex. BB (pilot email to CEO Tilden stating he was "dismayed" by Smith's post and found it "highly offensive"); Ex. L at 31:24-32:21, 36:20-37:1; Ex. B at 141:19-143:2, 151:8-153:21 (Goins called Williams to report he was hurt by Smith's comments; Jeffrey Peterson also reported concerns AFA received).

The backlash Smith's post generated, combined with Brown's offensive comment (discussed below), caused Alaska to reverse course on its initial decision to respond to (rather than remove) Smith's post. Wonderly Decl., Ex. A at 25:4-26:2, 26:16-20, 47:9-48:1, 48:15-49:4; Ex. M at 93:14-95:12, 122:1-18. Alaska deleted Smith's comment that evening and notified her that the Company would follow up regarding her comment. *Id.*, Ex. CC; Ex. C at 193:4-12.

### 3. Alaska investigates Smith's comment and terminates her employment.

On March 11, 2021, Smith attended an investigatory meeting, and when asked why she posted her comment, Smith responded that she read the article on Alaska's World and decided to ask a "philosophical question." Wonderly Decl., Ex. C. at 160:18-161:6, 220:4-6; Ex. L at 63:7-13, 81:18-82:8. ***Smith never claimed during the meeting—or at any other point before her termination—that her comment was motivated by, or an expression of, religious concerns or beliefs.*** *Id.*, Ex. C at 205:5-14, 208:8-209:1, 220:20-221:5, 573:9-574:21, 578:9-15; Ex. L at 125:19-126:7; Ex. DD.

Alaska discussed its investigation findings in its weekly performance review meeting

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

6

(PRM), which included members of Inflight[2] Performance, HR, Labor Relations, and Legal teams. *Id.*, Ex. B at 19:9-16, 74:2-18; Ex. L at 44:2-18, 62:1-21, 86:24-88:8, 163:10-165:4; Ex. Z at 86:12-87:19. While PRM attendees provided input, Carmen Williams (then-Vice President of Inflight) was the final decision-maker. *Id.*, Ex. B  at 7:3-8:15, 10:24-12:10. Alaska determined that Smith's comment violated various anti-discrimination and workplace civility policies. Wonderly Decl., Ex. EE.  Because Smith's 30-day suspension for the anti-BLM petition occurred less than 18 months prior, the next step of progressive discipline was termination, which Williams determined was the appropriate disciplinary response. *Id.*, Ex. B at 13:3-14:9.

Alaska terminated Smith's employment on March 19, 2021. *Id.*, Ex. EE. The Notice of Discharge identified the policies Alaska found Smith had violated, summarized the reasons for her termination, and explained that "[d]efining gender identity or sexual orientation as a moral issue, or questioning the Company's support for the rights of all people regardless of their gender identity or sexual orientation, is not a philosophical question, but a discriminatory statement." *Id*. Alaska also determined that Smith's conduct "created a negative impact on other employees, was made in a public forum, promulgated divisiveness, and undermined the Company's efforts to create an inclusive work environment free of harassment and discrimination." *Id.*

Smith began speaking with attorneys about a possible lawsuit on or before April 16, 2021. Wonderly Decl., Ex. C at 225:13-226:22. Smith grieved her termination and, at her post-termination grievance hearing on April 27, 2021, Smith, ***for the first time,*** discussed her alleged "religious and moral convictions," and read a written statement—prepared with assistance from

---

[2] The Inflight division consists of flight attendants and the management team that supports and manages them. Wonderly Decl., Ex. Z at 22:17-21.

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

7

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA  98104-4041
(206) 946-4910

307443248v.4

her current counsel—asking for a "reasonable accommodation" to "politely express beliefs motivated by my religion in the same way that others are able to express beliefs encompassed by other protected characteristics, such as sexual orientation." Wonderly Decl, Ex. FF; Ex. C at 230:14-231:18, 237:21-238:2; Ex. L at 131:12-25; Ex. D at 111:25-113:14. Smith's grievance was denied and her termination was upheld. Wonderly Decl., Ex. C at 245:18-22.

### D.   Marli Brown

#### 1.   Brown makes a discriminatory and offensive comment on Alaska's World in response to Alaska's support of the Equality Act

On February 25, 2021, at 7:56 p.m., Brown posted the following comment on Alaska's World in response to the Equality Act article:

> Does Alaska support: endangering the Church, encouraging suppression of religious freedom, obliterating women rights and parental rights?
>
> This act will Force every American to agree with controversial government-imposed ideology on or be treated as an outlaw. The Equality Act demolishes existing civil rights and constitutional freedoms which threatens constitutional freedoms by eliminating conscience protections from the Civil Rights Act. The Equality act would affect everything from girls' and women's showers and locker rooms to women's shelters and women's prisons, endangering safety and diminishing privacy. Giving people blanket permission to enter private spaces for the opposite sex enables sexual predators to exploit the rules and gain easy access to victims. This is Equality Act[.]

Wonderly Decl., Ex. GG; FAC ¶ 117.[3] Before posting, Brown affirmatively certified her compliance with the commenting rules. *Id*., Ex. I at 110:11-111:11.

Alaska deleted Brown's comment a few hours after it was posted (at the same time it

---

[3] Brown admitted that some of the words in her post came from the Heritage Foundation website. Wonderly Decl., Ex. I at 181:9-182:1, 182:12-183:9, 185:5-7, 243:19-245:21.

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

removed Smith's post) and notified her that the Company would follow up with her about the comment. Wonderly Decl., Ex. HH; Ex. I at 199:6-201:2. The next morning, February 26, Brown replied to the email, stated that she did not believe she violated the commenting rules, and further argued that "anyone who has done their research about the equality act should be asking the same questions." *Id*., Ex. HH.

Alaska received numerous complaints about Brown's post.  Wonderly Decl., Ex. BB; Ex. A at 123:13-124:19; Ex. B at 69:19-70:6, 141:19-143:2, 151:8-154:6.

### 2.    Alaska investigates Brown's conduct.

On February 26, Brown's comment was referred to Performance Supervisor Tiffany Lewis, and HR Business Partner, Heidi Neidlinger, for investigation. Wonderly Decl., Ex. I at 205:11-22; Exhibit K at 203:3-203:20.

On March 4, Brown attended an investigatory meeting. Wonderly Decl., Ex. I at 215:5-216:3; Ex. K at 154:7-156:19; 186:15-195:14. In explaining her decision to post the comment, Brown stated that, after reading the Equality Act article, she "researched various news sources concerning the bill," some of which she "copied and pasted" into her comment. Wonderly Decl., Ex. II. Brown also acknowledged that her comment offended LGBTQ employees. Wonderly Decl., Ex. JJ at 6 (meeting notes: "I feel it did offend them"); Ex. KK ("well the LGBQ took it and said I offended them, discriminated against them and created a hostel [sic] work environment"). Brown also affirmed she should have "reached out to Andy [Schneider] instead of commenting on Alaska's World." Wonderly Decl., Ex. JJ at. 8; Ex. K at 194:15-18; Ex. Z at 161:9-162:9.

Brown—who had met with her current litigation counsel before the investigatory

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA  98104-4041
(206) 946-4910

307443248v.4

9

meeting[4]—also read from a written statement (which she later submitted to the Company), in which she showed no remorse for her actions, stating that her "respectful, sincere question simply participated in the conversation." Wonderly Decl., Ex. LL; Ex. I at 218:10-221:22, 222:1-223:4; Ex. I at 124:10-126:13, 143:21-145:1. Brown also—for the first time—asked "for a religious accommodation to be allowed to express my beliefs in the same way others are able to express their beliefs encompassed by other protected characteristics, such as sexual orientation or gender identity." Wonderly Decl., Ex. LL; Ex. I at 50:21-51:3; Ex. K at 117:14-118:24.

### 3. Alaska terminates Brown for violating its policies against discrimination and harassment.

Alaska discussed Brown's actions and the related investigation during PRM, with Carmen Williams as the ultimate decision-maker. Wonderly Decl., Ex. K at 246:1-10, 260:8-261:24; Ex. B at 177:4-19, 7:3-8:15, 10:24-12:10; Ex. A at 166:3-168:1. Alaska found that Brown's conduct violated its anti-discrimination and workplace civility policies, and, based on the seriousness of her misconduct, determined that termination was appropriate. Wonderly Decl., Ex. II; Ex. A at 166:3-168:1 (Schneider and Williams "looked at our zero tolerance policy and felt that her statement was so egregious that it warranted termination."); Ex. B at 14:10-20.

Alaska terminated Brown's employment on March 19, 2021. Wonderly Decl., Ex. II. Alaska determined that Brown's comment "reflected the opposite of kindness and adherence to Alaska's values" because it insinuated that "providing equal rights to LGBTQ individuals threatens others," and "equat[ed] LGBTQ individuals to sexual predators"—which Alaska considered

---

[4] Brown testified that, she first contacted her current counsel, First Liberty, on February 26, 2021, and spoke with them between that date and her March 5 investigatory meeting. Wonderly Decl., Ex. I 148:2-150:21, 201:12-202:7, 240:17-242:15.

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

"hateful and discriminatory." *Id.*; *see also id.*, Ex. B at 34:3-17.

Alaska also determined that Brown's conduct would not "be excused by requesting a religious accommodation after the fact." Wonderly Decl., Ex. II.  The Notice of Discharge explained:

> Your request for accommodation would present an undue hardship to Alaska because posts like the one you made are discriminatory and create a hostile work environment for your coworkers. Alaska is not required to provide an accommodation that permits actions that demean and degrade, or are designed to demean or degrade, other employees. …there is no reason to believe future comments would be any different.

*Id.*

Brown grieved the termination. Wonderly Decl., Ex. I at 257:2-258:9, 271:5-273:1. On April 13, 2021, her grievance was denied and her termination was upheld.  Wonderly Decl., Ex. I at 275:21-276:14.

### III.   Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and...the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### IV.   Summary Judgment Must Be Granted on Plaintiffs' First, Second, Fifth, and Ninth Causes of Action (Religious Discrimination Against Alaska)

#### A.   Framework for religious discrimination claims.

Title VII prohibits discrimination "because of ... religion." 42 U.S.C. §2000e-2(a)(1). "Religion" includes "religious observance and practice," as well as "belief." 42 U.S.C. §2000e(j). Two separate and distinct types of religious discrimination claims exist under Title VII: (1) disparate treatment and (2) failure to accommodate religious "observances or practices." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004) (recognizing "disparate treatment" and

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

"failure to accommodate" are "different theories" for religious discrimination under Title VII). For example, an employer cannot fire an employee for his *belief* (*e.g.* because he is Sikh), but it can refuse to accommodate a religious *practice* if it would impose an undue hardship on the employer's business. *See, e.g., Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033, 1037 (10th Cir. 1993).[5]

The FAC asserts only "disparate treatment" claims and neither Plaintiff expressly asserts a failure to accommodate claim. *See generally* FAC, Causes of Action 1-12. The FAC contains only one passing reference to the fact that Brown (but not Smith) "asked for a religious accommodation to be allowed to express her religious beliefs on an equal basis as others." FAC, ¶¶152, 261. Although that allegation is insufficient to assert a failure to accommodate claim, *see* Fed. R. Civ. P. 8; *Rund v. Charter Commc'ns, Inc.*, 319 F.App'x 465, 468 (9th Cir. 2008), and any such claim should be rejected on that basis, this motion addresses any failure to accommodate claim Brown may be asserting.[6]

**B.    Plaintiffs' religious discrimination claim fails as a matter of law**

**1.    Disparate treatment.**

To withstand summary judgment on their disparate treatment claims, Plaintiffs must either (a) produce direct evidence that Alaska's decision to terminate them was motivated by religious

---

[5] The same legal framework governs claims under the Washington Law Against Discrimination ("WLAD") and Oregon law. *Bartholomew v. Washington*, -- F.Supp.3d ---, 2023 WL 6471627, at *5, n.3, 7 (W.D. Wash. Sept. 21, 2023); *Nogowski v. St. Charles Med. Ctr.*, 2023 WL 7003702, at *2 (D.Or. Oct. 24, 2023).

[6] Because the FAC contains no reference to Smith seeking an accommodation, and because it is undisputed that she made no such request during her employment, it is beyond dispute that Smith has not asserted a failure to accommodate claim.

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

animus, or (b) satisfy the *McDonnell Douglas* burden-shifting test by introducing indirect evidence sufficient to reasonably support such an inference. *Hittle v. City of Stockton, California*, 76 F.4th 877, 888 (9th Cir. 2023).

Direct evidence "is that which, 'if believed, proves the fact [of discriminatory animus] without inference or presumption,' *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005)—like a supervisor firing an employee while saying, "You're too religious," *Dixon v. The Hallmark Companies, Inc*., 627 F.3d 849, 854 (11th Cir. 2010). Plaintiffs cannot point to any direct evidence showing that Alaska's decision to terminate them was motivated by their religion.

To survive summary judgment based on indirect evidence, each Plaintiff must first establish that: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for h[er] position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside h[er] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Berry v. Dep't of Soc. Servs*., 447 F.3d 642, 656 (9th Cir. 2006). If each element is satisfied, the burden shifts to Alaska to state a legitimate, non-discriminatory reason for Plaintiffs' terminations. *Id.* At that point, Plaintiffs would then be required to present evidence sufficient to support a finding that Alaska's stated reasons for termination are a pretext for religious discrimination. *Id.*

**(a) Prima facie case.** Smith cannot meet the second element, and neither Plaintiff can satisfy the fourth element.

*First*, Smith cannot establish that she was "qualified" for the job because she was not performing in accordance with Alaska's expectations. Smith had received a 30-day suspension just months prior for an inappropriate and misleading petition, she was warned that future misconduct

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

13

would result in termination, and she again engaged in offensive and divisive conduct through her post on Alaska's World. As such, she cannot satisfy the second element. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1208 (9th Cir. 2008) ("A plaintiff who violates company policy and fails to improve his performance despite a warning has not demonstrated satisfactory performance.'"); *McDaniel v. Donahoe*, 2014 WL 4639918, at *5 (N.D. Cal. Sept. 17, 2014) ("[A] plaintiff who openly violates company policy and continues to do so over an extended period of time, despite a warning, cannot demonstrate satisfactory performance.").

**Second**, neither Plaintiff can identify any "similarly situated" non-Christian whom Alaska treated more favorably. To meet their burden, Plaintiff must identify comparators who were: (1) treated more favorably and (2) were "similarly situated" in "all material respects," *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006), which means, at a minimum, they held "similar jobs and display[ed] similar conduct," *Weil v. Citizens Telecom Servs.*, 922 F.3d 993, 1004 (9th Cir. 2019).

To satisfy this standard, Smith must identify a non-Christian flight attendant who (1) was on their final step of progressive discipline, (2) posted a similarly offensive comment on a Company-sponsored, employee-facing platform; and (3) was not terminated. Smith has not, and cannot, identify a comparator who matches that description. She cannot satisfy the fourth element.

Brown fares no better. Although Brown was not on her final step of progressive discipline, she cannot identify any non-Christian flight attendant who posted an offensive comment on any Company-sponsored, employee-facing platform who was not terminated. Indeed, Plaintiffs have not identified any other flight attendants who made an offensive comment on a Company-sponsored platform. Thus, neither Plaintiff can satisfy the fourth element of the prima facie case.

Plaintiffs might rely on instances where flight attendants were disciplined or investigated

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

14

307443248v.4

(but not discharged) for offensive posts made on their personal social media pages. But those cases are fundamentally different for two reasons.  As an initial mattter, Plaintiffs made their comments on a Company owned and operated website that is designed as a resource for all Alaska employees. By posting their comments in that forum, Brown and Smith were directing their offensive messages squarely at Alaska's and Horizon's 26,000 employees, and using Company resources for the purpose of broadcasting offensive, discriminatory, and harassing messages to each and every one of their coworkers. Alaska has a compelling interest in eliminating and deterring such posts on its own internal website, not only due to their capacity to trigger widespread offense, discord and divisiveness within the Company, but also due to the risk that viewers of that post could develop the misimpression that the Company condones those comments. In contrast, Alaska has a less direct interest in policing content displayed on personal social media accounts. When an employee posts offensive material on their personal social media account, the employee is not misusing company resources, there is little risk that a viewer interprets the post as reflecting Alaska's views or assuming that Alaska condones the message, and while it is possible that some coworkers may see the post, it is not purposefully directed toward Alaska employees.

And the liability risks associated with comments on a Company-sponsored website are considerably greater than statements employees make on their personal social media accounts. The liability Alaska faces when employees use a Company-moderated message board as a means for harassment or discrimination does not exist where off-duty employees post offensive material on their personal social media accounts. Thus, Alaska appropriately viewed Plaintiffs' misconduct as fundamentally different from (and more severe than) conduct by flight attendants who made offensive comments away from work on their private social media accounts. Because those

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA  98104-4041
(206) 946-4910

307443248v.4

categories of offenses are distinct, Plaintiffs cannot establish that flight attendants who were disciplined for offensive statements made outside of work on social media were "similarly situated."

**(b) Alaska's legitimate non-discriminatory reason.** Even assuming Plaintiffs could establish a prima facie case, Alaska has submitted extensive evidence documenting that it terminated Brown and Smith because it determined their comments were offensive and violated its harassment, discrimination and personal conduct policies. And, in the case of Smith, that decision was bolstered by the fact that she was on the final step of progressive discipline following a 30-day suspension. Numerous cases recognize that employers may discipline or terminate employees for "religious" conduct that violates neutral anti-harassment and personal conduct policies. *See e.g. Snyder v. Arconic Corp.*, 2023 WL 6370785, at *9 (S.D. Iowa Aug. 31, 2023) (employer "did not act unreasonably or in bad faith in concluding that [plaintiff's] message [on company intranet calling use of rainbow flag an "abomination"] violated [company's] anti-harassment policy."); *Bodett*, 366 F.3d at 744 (plaintiff's comments to colleague that "homosexuality was against her Christian beliefs" and plaintiff "would be disappointed if [colleague] were dating another woman" were policy violations establishing legitimate nondiscriminatory reason for termination); *Ervington v. LTD Commodities, LLC*, 555 F.App'x 615, 617-18 (7th Cir. 2014) (affirming summary judgment on Title VII religious discrimination claim and upholding discharge of employee "for violating the company's anti-harassment policy" by distributing "gospel tracts" that "were offensive to other employees"); *Matthews v. Wal-Mart Stores, Inc.*, 417 F.App'x 552, 554 (7th Cir. 2011) (not discriminatory to terminate an employee for expressing that gay people will go to Hell); *Rightnour v. Tiffany & Co.*, 354 F. Supp. 3d 511, 525 (S.D.N.Y. 2019) (employer could discipline a practicing Catholic for comment to coworker

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

that "your people killed Jesus").

(c) **No pretext.** "A plaintiff may prove pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Bodett v. CoxCom, Inc*., 366 F.3d 736, 743 (9th Cir. 2004) (quotations omitted). "Such evidence ... must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of [a prohibited ground]." *Id.* Plaintiffs cannot satisfy that standard.

*First,* Plaintiffs contend pretext is shown by Alaska "suggesting that [plaintiffs] must ignore their religious and moral convictions and conform to the company's moral values in order to keep their jobs." FAC, ¶334. No evidence supports that Alaska instructed Plaintiffs to ignore their religious or moral convictions. On the contrary, Alaska supports religious belief and practice as reflected in its policies and practices. Wonderly Decl., Ex. E at. p. 12, Ex. F at 7, 10-11; Ex. A at 144:25-145:11. Alaska also permits *respectful* engagement on topics of interest. Alaska does require, however, that *all* employees—religious and secular—express themselves in a manner that does not demean, harass, or discriminate against others based on immutable, protected characteristics. Wonderly Decl., Exs. E-H. Plaintiffs' comments—questioning the "morality" of LGBTQ individuals (Smith) and equating LGBTQ individuals to sexual predators (Brown) in a workplace forum visible to, and intended for, other employees, including their LGBTQ coworkers—directly conflicted with Alaska's policies. Terminating them on that basis reflects no religious animus.

*Second*, Plaintiffs argue pretext is shown "by [Alaska] violating its own policies about posts on Alaska's World, namely the Three Strikes policy." FAC, ¶334. The "three strikes" policy

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

17

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

was part of the commenting rules for Alaska's World and provided that an employee who had three comments removed would lose their commenting privileges. Wonderly Decl., Ex. AA at 2. The policy, on its face, is neither exclusive nor preemptive—it does not prevent Alaska from disciplining or terminating an employee for violating Alaska's *other* policies. *Id.*; Ex. B. at 78:1-14. As explained, Alaska terminated Smith for violating the harassment and discrimination policies in the handbook, Code of Conduct, and FAM, which govern flight attendant conduct for all purposes of employment (including comments made on a Company-sponsored website). Wonderly Decl., Ex. L at 136:7-19; Ex. EE. Alaska is not required to tolerate three instances of harassing and discriminatory behavior before taking disciplinary action. *Id*., Ex. K at 49:19-51:9; 139:11-16; Ex. L at 98:3-99:1; Ex. B at 78:1-10.

*Third*, Smith failed to show that those involved in the decision to terminate her even knew she was a Christian or interpreted her post to be expressions of religious beliefs at the time of termination. Alaska only learned of Smith's alleged religious motivations during the post-termination grievance process—after she had retained counsel. Wonderly Decl., Ex. C at 205:5-14, 208:8-209:1, 220:20-221:5, 230:14-231:18, 237:21-238:2; 573:9-574:21, 578:9-15; Exs. R, V FF, DD; Ex. L at 125:19-126:7, 131:12-25;  Ex. B at 21:12-24, 51:19-52:5; Ex. Z at 145:20-146:9.

*Fourth*, although Brown's comment included nonspecific references to "the Church" and "religious freedom," the portion of her post that drove Alaska's decision to terminate her—that is, her equating LGBTQ individuals with sexual predators—could not reasonably be interpreted as a religious statement, casting considerable doubt on any claim that animus toward Christians at all motivated Alaska's employment decision.

*Fifth*, Brown alleges that Alaska singled her out "by ordering her not to speak about

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA  98104-4041
(206) 946-4910

18

307443248v.4

religion at work, but not making such orders for other protected classes." FAC, ¶334. Brown testified to one alleged incident: in January 2021, more than a month before her Alaska's World post, Brown was reported to have told a passenger that the COVID vaccine caused AIDS. Wonderly Decl., Ex. I at 124:3-9. Although the report was not substantiated, Brown was coached by her performance supervisor, Tiffany Lewis. *Id*. at 137:7-139:5. Brown alleges that Lewis and her Union representative, Terry Taylor, told her not to talk about her religion on the plane. *Id*. at 69:29-70:21, 121:19-129:4, 130:15-131:11. Lewis explained, however, that in response to Brown's question about when it was appropriate to have such discussions, she simply advised that it was best to avoid sensitive topics like COVID, race, and religion because of people's differing views. Wonderly Decl., Ex. K at 23:19-24:17, 275:25-277:1; Ex. D at 220:14-221:1, 223:3-24 (confirming Lewis gave "three examples of things that could be hot topics" and "did not tell [Brown] not to talk about religion"). Lewis's comment was not targeted at religion, and was a common sense directive about how to comport oneself while on a plane in front of guests. It falls far short of specific and substantial evidence of pretext. Regardless, this single stray comment, unrelated to the disciplinary action at issue, is insufficient to support a finding of pretext. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996) (an ambiguous comment that is not tied directly to an alleged adverse employment action is "weak evidence and not enough to create an inference of [race] discrimination"); *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) (" 'stray' remarks are insufficient to establish discrimination").

In sum, the only reasonable inference on this record is that it was the discriminatory and harassing nature of Plaintiffs' comments that was the basis for Alaska's termination decision.

### 2. Failure to accommodate.

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

"Title VII failure-to-accommodate claims are analyzed under a two-part, burden-shifting framework." *Nogowski v. St. Charles Med. Ctr.*, 2023 WL 7003702, at *2 (D.Or. Oct. 24, 2023). First, the employee must establish a prima facie case by proving that (1) her religious practice "conflicted with an employment duty"; (2) "she informed her employer of the belief and conflict"; and (3) "the employer threatened her or subjected her to discriminatory treatment, including discharge, because of her inability to fulfill the job requirements." *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998). Second, if the employee establishes a prima facie case, "the burden shifts to the employer to show either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.*

### a.      No prima facie case.

Brown cannot establish the first and second elements of her prima facie case. ***First***, she cannot show a "conflict" between any religious practice and her duty to comply with Alaska's anti-discrimination and workplace civility rules. *Tiano*, 139 F.3d at 682–83 (affirming summary judgment: there was no "conflict" with employment duties because plaintiff's religious belief only required her to go on a pilgrimage "at some time" rather than at the specific time she preferred to go); *Peterson*, 358 F.3d at 606 ("we seriously doubt that the doctrines to which Peterson professes allegiance compel any employee to engage in either expressive or physical activity designed to hurt or harass one's fellow employees").

*Snyder v. Arconic Corp.*, 2023 WL 6370785 (S.D. Iowa Aug. 31, 2023) is directly on point. In that case, the plaintiff posted a message on his employer's intranet page that the company's use of a rainbow symbol in connection with its diversity initiatives was an "abomination to God." *Id.*,

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

307443248v.4

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA  98104-4041
(206) 946-4910

20

at *1. The company terminated the plaintiff and he asserted a claim under Title VII, claiming that his statement was an expression of his religious beliefs that the employer was required to accommodate. The district court granted summary judgment in the company's favor because Synder did not establish a "conflict" between his religious beliefs and any employment duty. "Title VII comes into play only when an employee's religious beliefs proactively require or encourage the employee to *do something* that the employer forbids or *refrain from doing something* that the employer requires." *Id.* at *6 (emphasis in original). Because Snyder submitted no evidence "that his religion requires him to send messages objecting to the use of rainbow imagery," the district court concluded that "there is no 'conflict' in the legally relevant sense between his religious practices and [the company's] anti-harassment policy." *Id.*

The same is true here. Brown cannot establish that the tenets of her Christian faith *compelled* her to post a comment on the company intranet disparaging LGBTQ equality and Alaska's support for it; or that *refraining* from commenting in an offensive manner would have conflicted with a required religious practice. In fact, she admitted at the grievance hearing that she could have brought questions or concerns about Alaska's policies to her supervisor rather than posting on Alaska's World. Wonderly Decl., Ex. I at 188:21-184:16; 193:17-194:13 (admitting that talking to her supervisor instead of posting on Alaska's World would not violate her religion). As in *Snyder*, summary judgment is appropriate.

**Second**, Brown cannot establish that she notified Alaska of the supposed conflict between its policies and her religious practice. It is undisputed that Brown never asked for an accommodation to speak about her beliefs until *after* her discriminatory Alaska's World comment. Wonderly Decl., Ex. LL at 1; Ex. I at 50:21-51:3; Ex. K at 117:14-118:24; Ex. D at 111:25-113:14.

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

That is insufficient as a matter of law. In *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012 (4th Cir. 1996), for example, plaintiff (an Evangelical Christian who was fired for sending inappropriate letters to co-workers) asserted that she informed her employer of her need for accommodation because "the letters themselves provided notice that her religious beliefs compelled her to write them." *Id.* at 1020. The court squarely rejected that argument, holding: "giving notice to co-workers *at the same time as an employee violates employment requirements* is insufficient to provide adequate notice to the employer and to shield the employee's conduct." *Id.* at 1020 (emphasis added). The court in *Chalmers* similarly rejected the notion that the employer should have accommodated the conduct by issuing a lower level of discipline, holding that "there is ***nothing in Title VII that requires employers to give lesser punishments to employees who claim, after they violate company rules (or at the same time), that their religion caused them to transgress the rules***." *Id.* (emphasis added); *accord Snyder*, 2023 WL 6370785, at *8 (rejecting argument that Snyder provided sufficient notice when he "informed [company] of the religious conflict as he was in the process of violating the policy by posting his message, and that he asked for an accommodation during the subsequent investigation."). In short, Brown's request for accommodation *after* violating Alaska's policies was too little, too late.

### b.   Alaska established undue hardship as a matter of law.

Recently, in *Groff v. DeJoy*, 600 U.S. 447 (2023), the Supreme Court clarified the undue hardship standard. It held that the lower courts had erred in understanding its earlier precedent to mean that employers need only show "'more than a de minimis cost' … to establish 'undue hardship' under Title VII." *Id.* at 468 (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977)). But *Groff* did not disturb the well-settled principle that an employer does *not* need to

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

22

307443248v.4

accommodate a religious practice if doing so could expose the employer to liability for creating a hostile work environment, *see Peterson*, 358 F.3d 599—itself a Title VII violation. As the Ninth Circuit has recently explained, "'an employer is not liable under Title VII [for failure to accommodate] when accommodating an employee's religious beliefs would require the employer to violate federal or state law' because "'the existence of such a law establishes 'undue hardship.'"" *Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1225 (9th Cir. 2023) (quotation omitted). Relatedly, *Groff* requires courts to consider "an accommodation's effect on co-workers" in the undue hardship analysis. *Groff v. DeJoy*, 600 U.S. at 2296.

In *Peterson*, for example, the Ninth Circuit held that accommodating an employee's desire to hang posters around the office containing anti-gay messages would cause an undue burden because it would "demean or degrade …members of its workforce." 358 F.3d at 607-08. Employers need not accommodate a religious practice, the Ninth Circuit explained, "if doing so would *result in discrimination* against [the plaintiff's] co-workers or deprive them of *contractual or other statutory rights*." *Id.* at 607 (emphasis added). Many cases are in accord with *Peterson*. *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006) (affirming summary judgment: undue hardship for state employer to accommodate plaintiff's "desire to discuss religion with the Department's clients" and to display religious items in cubicle because it "would create a danger of violations of the Establishment Clause of the First Amendment"); *Ervington*, 555 F.App'x at 618 (employer "was not required to accommodate [employee's] religion by permitting her to distribute pamphlets offensive to other employees"); *Chalmers*, 101 F.3d at 1021 ("if [employer] had granted [plaintiff's] request to write the [evangelizing] letters, the company would subject itself to possible suits from [co-workers] claiming that [plaintiff's] conduct violated *their* religious

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

23

307443248v.4

freedoms or constituted religious harassment") (emphasis in original); *Wilson v. U.S. West Communications*, 58 F.3d 1337, 1338 (8th Cir. 1995). The EEOC is in agreement. *See* EEOC Compliance Manual, § 12-IV(C)(6)(a) (2021) ("Since an employer has a duty under Title VII to protect employees from harassment, it would be an undue hardship to accommodate expression that is harassing.").

It is beyond dispute that Title VII prohibits discrimination based on sexual orientation and gender identity, as do the laws of various states in which Alaska operates. *Bostock v. Clayton Cty.*, 140 S.Ct. 1731 (2020); *e.g.* Or. Rev. Stat. §659A.030; Wash. Rev. Code § 49.60.180. Thus, employers like Alaska cannot permit—much less accommodate—a religious practice that would violate its other employees' statutory right to be free from a hostile work environment. Otherwise "Title VII would be at war with itself" and would impose "substantial increased costs" on Alaska's business in the form of increased liability risk. *Groff*, 143 S. Ct. at 2295-96; *see also Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1383-84 (9th Cir. 1984) (recognizing an undue hardship where an accommodation would have required the employer to risk liability for violating state law); *Matthews v. Wal-Mart Stores, Inc.*, 417 F.App'x 552, 554 (7th Cir. 2011) (accommodation to permit plaintiff to "admonish gays at work to accommodate her religion" would "place Wal–Mart on the 'razor's edge' of liability by exposing it to claims of permitting workplace harassment"). And beyond increased liability risks, accommodating Brown's desire to continue to express similarly offensive messages at work would have generated tension, hostility, and divisiveness among Alaska employees, which itself would constitute an undue burden. Thus, even if Brown could establish a prima facie case, her claim fails because the accommodation she sought would impose an undue burden.

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

24

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**V.     Summary Judgment Must be Granted on Plaintiffs' Third, Sixth and Tenth Causes of Action (Hostile Work Environment Against Alaska)**

"To allege a prima facie hostile work environment based on religion, an employee needs to plead '(1) that he was subjected to verbal or physical conduct of a harassing nature [based on his religion], (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Bartholomew v. Washington*, 2023 WL 6471627, at *6 (W.D. Wash. Sept. 21, 2023) (quoting *Kortan v. California Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000). The plaintiff "must show that h[er] religion was the basis for the … harassment." *Trujillo v. Cont'l Airlines, Inc.*, 2013 WL 10776600, at *6 (C.D.Cal. July 2, 2013).[7]

**A.     Plaintiffs Cannot Raise a Genuine Issue of Fact**

Plaintiffs' claims fail as a matter of law for multiple independent reasons. Most fundamentally, neither Plaintiff has identified **any** "verbal or physical conduct of a harassing nature" that they experienced due to her religion, much less the type of "extreme" conduct required to sustain a hostile work environment claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The record contains no evidence whatsoever that Plaintiffs were subjected to **any** disparaging or offensive comments or actions based on religion. Indeed, except for one isolated incident identified by Brown (discussed below), neither Plaintiffs' claim is even predicated on conduct that was directed at them specifically. Plaintiffs are apparently claiming that Alaska created a "hostile work environment" by not specifically highlighting or sufficiently emphasizing religion in a small number of corporate communications and trainings. Wonderly Decl., Ex. I at

---

[7] Workplace harassment under the WLAD claims are analyzed in the same way as Title VII claims, *Nichols v. Azteca Rest. Enterprises, Inc.*, 256 F.3d 864, 875 (9th Cir. 2001), as are claims arising under Oregon state law, *Harris v. Pameco Corp.*, 12 P.3d 524, 532 ( Or. 2000)).

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

84:11-85:3; Ex. C at 609:6-616:21.[8] Those allegations are legally insufficient to support a hostile work environment claim for the following reasons.

**First**, Plaintiffs cannot show that omitting "religion" from a handful of Company communications or targeting training or diversity efforts toward other protected characteristics was motivated by ***Plaintiffs' religious beliefs*** specifically. Under Title VII, the prohibition against discrimination on the basis of religion protects not only ***all*** forms of faiths, but also those who reject religion entirely, *i.e*, atheists. *Williams v. Allied Waste Serv.*, 2010 WL 3257733, at *7 (E.D. Tex. June 30, 2010) (prohibition against discrimination protects both religious and atheistic beliefs). As such, even accepting as true Plaintiffs' general theory that Alaska did not place as much emphasis on religion as it did on other protected categories, that cannot possibly be construed as harassment toward ***Plaintiffs*** based on ***their*** religious beliefs.[9]

**Second**, regardless of whether religion was, in Plaintiffs' view, appropriately emphasized in other corporate communications, it is undisputed that all of Alaska's workplace conduct policies expressly prohibit religious discrimination.  Wonderly Decl., Ex. E at 12; Ex. H at 10-11; Ex. F at 2

---

[8] Plaintiffs also point to the fact that "religion" was omitted from a plaque on a plane and from a diversity and inclusion pronouncement in April 2021; that Alaska conducted a training led by a "gender fluid" employee in the third quarter of 2021; and changed its Alaska's World commenting rules to recommend against using Alaska's world to express personal opinions, including "religion" as an example.  FAC ¶¶ 55-58, 60, 315; Wonderly Decl., Ex. C at 72:2-13, 75:10-20; Ex. I at 314:19-315:7. But each of those incidents occurred ***after*** Plaintiffs' terminations.

[9] Plaintiffs' theory also proves too much—if accepted, every Alaska employee who subscribes to any religious faith (or rejects religion entirely) would have an actionable hostile work environment claim against Alaska, which would be a facially absurd result that finds no support under Title VII. *Stagger v. Experian Info. Sols., Inc.*, 2021 WL 5299791, at *6 (N.D. Ill. Nov. 15, 2021) ("The soundness of a conclusion may not infrequently be tested by its consequences.")

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

26

307443248v.4

***Third***, Plaintiffs' theory appears to be predicated on the notion that an employer cannot specifically seek to eradicate harassment or discrimination based on certain protected categories unless it dedicates equal effort to every other protected category. But equality is not a zero sum game, and the mere fact that Alaska has, at times, focused its diversity efforts on certain protected characteristics cannot reasonably be interpreted as harassment or antipathy toward other protected characteristics. *Peterson*, 358 F.3d at 603 (employer's "efforts to eradicate discrimination against homosexuals in its workplace were entirely consistent with the goals and objectives of our civil rights statutes generally," and its "special attention to combating prejudice against homosexuality … [was] in no manner unlawful."); *see also* Wonderly Decl., Ex. B at 216:16-217:15, 261:15-263:10.

The only specific allegation of purported "harassing" conduct is Brown's claim that Tiffany Lewis, previously "instructed [her] not to speak about religion at work FAC, ¶¶376-377. But this isolated incident, even if true, does not rise to the level of severe or pervasive conduct required to sustain a hostile work environment claim. *McGinest v. GTE Serv. Corp*., 360 F.3d 1103, 1113 (9th Cir. 2004) ("Simply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment under Title VII.").

## VI. Summary Judgment Must Be Granted on Brown's Fourth and Seventh Causes of Action (Retaliation Against Alaska)

Title VII prohibits retaliation against an employee who has opposed "any practice made an unlawful *employment practice* by this subchapter…." 42 U.S.C. § 2000e–3(a) (emphasis added). In order to establish a prima facie retaliation claim under Title VII, Plaintiffs must show (1) involvement in protected activity; (2) an adverse employment action; and (3) a causal link between the two. *Payne v. Norwest. Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997). The burden then shifts to

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

27

307443248v.4

the employer to establish a legitimate non-retaliatory reason for the adverse action, after which the burden shifts to the plaintiff to show pretext.[10] Brown cannot satisfy those elements.

*First*, Brown's post on Alaska's World was not "protected activity" because no reasonable person could believe that Alaska's support for the Equality Act was an "unlawful employment practice" under Title VII. *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988) ("[O]pposed conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation.").

*Second*, even if opposing the Equality Act (or Alaska's support for it) could qualify as protected oppositional activity, the manner in which Brown expressed her opposition stripped it of any statutory protection. It is well settled in the Ninth Circuit that "[a]n employee's opposition activity is protected only if it is reasonable in view of the employer's interest in maintaining a harmonious and efficient operation." *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996) (quotation marks omitted). Accordingly, "[a]n employee is not protected ... when he violates legitimate company rules, knowingly disobeys company orders, disrupts the work environment of his employer, or willfully interferes with the attainment of the employer's goals," *Unt v. Aerospace Corp*., 765 F.2d 1440, 1446 (9th Cir. 1985), even if the underlying subject matter motivating the conduct is otherwise protected. *Jennings v. Tinley Park Cmty. Consol. Sch. Dist.*, 864 F.2d 1368, 1374-75 (7th Cir. 1988) ("substance of [plaintiff's] [salary] protest was protected," but "[h]er decision to sandbag" her supervisor "was not"); *Matima v. Celli*, 228 F.3d 68, 79-81 (2nd Cir. 2000) ("even when a complaint of discrimination is involved," employer may take an

---

[10] "[T]he framework used to analyze Title VII retaliation claims applies equally to … the WLAD." *Hotchkiss v. CSK Auto Inc*., 918 F.Supp.2d 1108, 1125 (E.D. Wash. 2013).

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

"adverse employment action ... to preserve a workplace environment that is governed by rules, subject to a chain of command, free of commotion, and conducive to the work of the enterprise."). Here, Brown's statements crossed the line into hateful and offensive conduct that violated Alaska's policies. Equating LGBTQ individuals to sexual predators in a post made on a forum directed to Alaska's entire workforce is not the type of activity that Title VII protects.

*Third*, even if Brown could establish a prima facie case, Alaska has articulated a legitimate, non-discriminatory reason for her termination—that her comment violated Alaska's anti-discrimination and workplace civility policies—and Brown cannot show that that reason is pretextual. *See* Part IV(C)(1), above.

## VII.   Summary Judgment Must Be Granted on Plaintiffs' Twelfth Cause of Action (Title VII—Disparate Impact

To establish a prima facie case of disparate impact discrimination, Plaintiffs must "(1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1190 (9th Cir. 2002). Plaintiffs' claim fails for the following reasons:

*First*, Plaintiff cannot show that the purported policy or practice it is challenging—that is, one of "disciplining employees for expressing, mentioning, or suggesting that they hold traditional beliefs on issues related to sexual morality, sexual orientation, or gender identity,"— exists. FAC ¶¶489-92. There is no evidence of any such written policy. And while Plaintiffs presumably intend to point to their own terminations as evidence of an alleged "practice," two isolated instances does not show an established policy or practice.

*Second*, the only "evidence" that this purported "policy or practice" has a disparate impact

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA  98104-4041
(206) 946-4910

29

307443248v.4

on religious individuals is, again, Plaintiffs' terminations. That evidence falls far short of the exacting evidentiary standards for proving causation (which generally requires rigorous statistical analysis) and ultimately just amounts to an attempt to recast their disparate treatment claims under the heading of disparate impact. *Shutt v. Sandoz Crop Prot. Corp.*, 944 F.2d 1431, 1433 (9th Cir. 1991) (emphasizing importance of statistical evidence to prove disparate impact claims); *Liu v. Uber Techs. Inc.*, 551 F.Supp.3d 988, 991 (N.D. Cal. 2021) ("[A]ll that [plaintiff] has alleged so far is that he himself was terminated, and the Court cannot draw an inference of disparity from a single data point").

**Third**, even if Plaintiffs could show that Alaska's "policy" has a disparate impact against Christians, Alaska has conclusively established a business necessity defense, which provides a complete defense to liability where the challenged policy has "a manifest relationship to the employment in question." *Bolden-Hardge*, 63 F.4th at 1228. Alaska enforces its anti-harassment and discrimination policies to comply with the law and foster an inclusive, productive work environment. Disciplining those who violate Alaska's policies and expose it to legal liability is a business necessity. *See Bey v. City of New York*, 999 F.3d 157, 171 (2nd Cir. 2021) (compliance with "legally binding federal regulation is, by definition, a business necessity").

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

30

1   Respectfully submitted this January __, 2024.

2

3                                        SEYFARTH SHAW LLP

4                               By:  /s/Lynn A. Kappelman
                                     Lynn A. Kappelman, *Pro Hac Vice*
5                                    Seaport East, Two Seaport Lane, Suite
                                     1200
6                                    Boston, Massachusetts 02210-2028
                                     Phone:   (617) 946-4800
7                                    Email:   lkappelman@seyfarth.com

8                               By:  /s/ Lauren Parris Watts
                                     Lauren Parris Watts, WSBA No.: 44064
9                                    999 Third Avenue, Ste. 4200
10                                   Seattle, WA 98101
                                     Phone:   (206) 946-4970
11                                   Email:   lpwatts@seyfarth.com

12                              By:  /s/ Joe Wonderly
                                     Joe Wonderly, WSBA No.: 51925
13                                   999 Third Avenue, Ste. 4200
14                                   Seattle, WA 98101
                                     Phone:   (206) 946-4928
15                                   Email:   jwonderly@seyfarth.com

16                                   *Counsel for Defendant Alaska Airlines, Inc.*

17

18

19

20

21

22

23

24

25

26

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

31

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

**CERTIFICATE OF SERVICE**

I hereby declare that on January 16, 2023, I caused a copy of ***Defendant Alaska Airline, Inc's Motion for Summary Judgment*** to be electronically filed with the Court using ECF-Filing system which will send notification of such filing to the following:

Joel B. Ard
Ard Law Group PLLC
PO Box 11633
Bainbridge Island, WA 98110
joel@ard.law
*Attorney for Plaintiffs*

Jeffrey C Mateer
David J. Hacker
Stephanie N. Taub
First Liberty Institute
2001 W. Plano Pkwy., Ste. 1600
Plano, TX 75075
jmateer@firstliberty.org
dhacker@firstliberty.org
staub@firstliberty.org
*Attorney for Plaintiffs*

Sharon Fast Gustafson
Rebecca R. Dummermuth
First Liberty Institute
227 Pennsylvania Ave. SE
Washington, DC 20003
sgustafson@firstliberty.org
bdummermuth@firstliberty.org
*Attorney for Plaintiffs*

Kathleen Barnard
Thomas C. Kaplan
Darin M. Dalmat
Alyssa Garcia
Barnard Iglitzin & Lavitt LLP
18 W. Mercer Street, Suite 400
Seattle, WA 98119
barnard@workerlaw.com;
kaplan@workerlaw.com;
dalmat@workerlaw.com;

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

32

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4

1  fernando@workerlaw.com;
   woodward@workerlaw.com;
2  garcia@workerlaw.com;
   breault@workerlaw.com;
3  valenzuela@workerlaw.com
   *Attorneys for Association of Flight*
4  *Attendants-CWA, AFL-CIO*

5
   Alidz Oshagan
6  Association of Flight Attendants - CWA
   230 S. Broad Street, 19th Floor
7  Philadelphia, PA 19102
   aoshagan@cwa-union.org
8  *Attorneys for Association of Flight*
   *Attendants-CWA, AFL-CIO*
9

10

11                                              */s/ Kyna Denton Stewart*
12                                              Kyna Denton Stewart, Legal Secretary
                                                Seyfarth Shaw LLP
13                                              999 Third Avenue, Suite 4700
                                                Seattle, WA 98104
14                                              kdentonstewart@seyfarth.com.com

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT ALASKA AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT

SEYFARTH SHAW LLP
ATTORNEYS AT LAW
999 THIRD AVENUE
SUITE 4700
SEATTLE, WA 98104-4041
(206) 946-4910

307443248v.4